UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PRIMO BROODSTOCK, INC., a
Texas corporation,

    Plaintiff,

v.                                         Case No: 2:17-cv-9-FtM-29CM

AMERICAN MARICULTURE, INC.,
a Florida corporation,
AMERICAN PENAEID, INC., a
Florida corporation,
ADVANCED HATCHERY
TECHNOLOGY, INC., ROBIN
PEARL, and CHARLES T. TUAN,

    Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff's <u>ex parte</u> Motion for Temporary Restraining Order (Doc. #2) filed on January 9, 2017. For the reasons set forth below, Plaintiff's request for a temporary restraining order is denied.

I.

On January 9, 2017 Primo Broodstock, Inc. (Plaintiff) filed a three-count complaint (Doc. #1) alleging claims of common-law conversion, trade secret misappropriation under Florida law, and "passing off" in violation of Section 1125(a) of the Lanham Act, 15 U.S.C. § 1051 <u>et seq.</u> The three claims are based on Defendants' allegedly-unlawful distribution of Plaintiff's live, genetically-engineered shrimp (the Primo Shrimp). Plaintiff asserts that Primo Shrimp, which took "nearly two decades to develop," (Doc.

#1, ¶ 24), are far superior to other shrimp because of their "higher tolerance to White Spot Syndrome Virus ('WSSV') in cold temperatures and superior growth in warmer temperatures."[1] (Id. ¶ 13.)  The Complaint requests a temporary and permanent injunction and money damages, including punitive damages.

At the same time the Complaint was filed, Plaintiff also filed the ex parte Motion for Temporary Restraining Order (Motion for TRO or Motion) currently before the Court,[2] which requests an order enjoining Defendants, for a period of fourteen days, "from shipping, selling or otherwise removing or relocating any shrimp broodstock in their possession or under their control, whether directly or indirectly, pending determination of whether such broodstock are descended or derived from Primo's broodstock." (Doc. #2, p. 36.)  The basis for this request is Plaintiff's

---

[1] According to the Complaint, Defendants had access to the Primo Shrimp pursuant to an agreement (the Grow Out Agreement) (Doc. #1-1) between Plaintiff and Defendant American Mariculture, Inc. (AMI) allowing Plaintiff to use AMI's facility for its operations. In exchange, AMI was supplied "post-larvae shrimp and immature shrimp broodstock" that AMI could "grow out" and then sell back to Plaintiff at fixed prices.  (Doc. #1, ¶¶ 21, 23.)  Under the Agreement, "any unauthorized sale, use or transfer to a secondary facility of live Primo shrimp" was grounds for damages, (id. ¶ 22), but AMI was allowed to kill the shrimp Plaintiff did not buy back and sell them on the market for profit, with Plaintiff's authorization.  (Id. at ¶ 24.)  The Agreement states that all Primo Shrimp are Plaintiff's intellectual property, and that all live Primo Shrimp belong to Plaintiff.  (Id. ¶ 22.)

[2] Plaintiff's 37-page Motion violates the 25-page limitation set forth in Middle District of Florida Local Rule 3.01(a).  Counsel should review the Local Rules, as future non-compliant filings may be stricken from the docket.

belief that distribution of live Primo Shrimp outside of Plaintiff's control will permit others to study and replicate the creature's unique, superior genetic makeup.  This will destroy the "decades of painstaking selection, testing, cross-breeding, and trial and error [that was needed for Plaintiff] to finally achieve what is recognized as the heartiest and most disease-resistant shrimp ever created."  (Id. ¶ 2.)  The Court is unaware of whether Defendants have been served with the Complaint or the Motion.

## II.

To obtain a temporary restraining order, a party must first establish that: i) it is substantially likely to succeed on the merits of its underlying claims; (2) it will suffer imminent, irreparable injury without injunctive relief; (3) such injury outweighs the harm an injunction poses to the opposing party; and (4) injunctive relief will serve the public interest.  Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005). Federal Rule of Civil Procedure 65(b) authorizes a court to grant injunctive relief ex parte – that is, against a party who has not yet received notice of the motion seeking injunctive relief and/or had an opportunity to be heard.  To obtain such relief, however, the movant must make a "clear[] show[ing] that immediate and irreparable injury, loss, or damage will result . . . before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b). The Local Rules of this District state further that an ex parte order "will be entered only in emergency cases to maintain the

status quo until the requisite notice may be given and an opportunity is afforded to opposing parties to respond to the application for a preliminary injunction." M.D. Fla. R. 4.05(a). To constitute a true "emergency," the injury alleged must be "so imminent that notice and a hearing on the application for preliminary injunction is impractical if not impossible."[3] Id. 4.05(b)(2).

Plaintiff argues that without an immediate injunction, the genetically-superior Primo Shrimp "will flood the market and destroy everything Primo and its President, Ken Gervais, have scrupulously worked to protect over the past 16 years." (Doc. #2, ¶ 58.) Plaintiff contends further that once this occurs, "it will be very difficult - if not impossible - to put the genie back in the bottle." (Id. ¶ 87.)

The allegations in the Complaint and the attached Exhibits - which are all this Court has to go on at this stage - do not

---

[3] In addition to supporting the substantive elements of a claim for injunctive relief, a motion seeking a temporary restraining order must "set forth facts on which the Court can make a reasoned determination as to the amount of security which must be posted pursuant to Rule 65(c)." M.D. Fla. R. 4.05(b)(4)(ii). Rule 65(c) states that a Court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Plaintiff's Motion for TRO does not contain any facts from which the Court may make a "reasoned determination" regarding the amount of security needed. This procedural deficiency would alone constitute sufficient grounds to deny the Motion. Intrepid Glob. Imaging 3D, Inc. v. Athayde, No. 3:07-CV-1106J-33HTS, 2007 WL 4198428, at *1 (M.D. Fla. Nov. 26, 2007).

justify an award of ex parte injunctive relief. Rather than establish that this case presents a true emergency, the materials before the Court indicate that live Primo Shrimp have been available for distribution since at least as early as July 2016,[4] and were expected to be distributed in China last month (in December 2016). (Docs. # 1, ¶ 54; 1-9, ¶ 12; 1-10, ¶ 27.) In other words, the genie is likely already out of the bottle.

Moreover, even if no distribution of Primo Shrimp has yet taken place, the Complaint fails to allege any specifics regarding future shipments of live Primo Shrimp. Consequently, there is no reasoned basis for concluding that the harm Plaintiff anticipates is "so imminent" that ex parte injunctive relief is warranted. Centennial Bank v. Servisfirst Bank Inc., No. 8:16-CV-88-T-36JSS, 2016 WL 7366936, at *3 (M.D. Fla. Jan. 22, 2016) (denying motion for temporary restraining order where plaintiff failed to offer "concrete evidence" showing that breach of non-compete agreement was imminent); Kotori Designs, LLC v. Living Well Spending Less, Inc., No. 2:16-CV-637-FTM-99CM, 2016 WL 4375274, at *4 (M.D. Fla. Aug. 17, 2016) (denying plaintiff's ex parte motion to enjoin shipment of product alleged to infringe plaintiff's trademark

---

[4] In July 2016, Plaintiff learned that Defendant Robin Pearl, managing director of API, "had posted a lengthy message on [a] Yahoo! Groups message board frequented by people in the shrimp industry" stating that API had acquired ownership of a number of Primo Shrimp and had about 50,000 "available for immediate shipment." (Id. ¶¶ 7, 39, 40.) Pearl also expressed API's desire to bring the Primo Shrimp "to the world market." (Id. ¶ 41.)

where allegedly-infringing product had already been commercially available for several months); <u>Chase Manhattan Bank v. Dime Sav. Bank of N.Y.</u>, 961 F. Supp. 275, 276 (M.D. Fla. 1997) (denying motion for temporary restraining order seeking to enjoin violation of no-solicitation agreement where solicitations had been occurring for months and there was no showing that "it would be 'impractical if not impossible' to provide a notice and hearing"). Plaintiff's request for an <u>ex</u> <u>parte</u> order enjoining Defendants from distributing all shrimp in Defendants' possession for a period of fourteen days is, therefore, denied.[5]

Accordingly, it is hereby

**ORDERED:**

Plaintiff's Motion for Temporary Restraining Order (Doc. #2) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this 11th day of January, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

---

[5] Because Plaintiff has not shown that, absent <u>ex</u> <u>parte</u> relief, Plaintiff will suffer immediate, irreparable harm, the Court need not address whether Plaintiff has established the other three elements of a claim for injunctive relief. <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000) (stressing that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper").