```
                 UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION
```

PRIMO BROODSTOCK, INC., a
Texas corporation,

       Plaintiff,

v.                               Case No: 2:17-cv-9-FtM-29CM

AMERICAN MARICULTURE, INC.,
a Florida corporation,
AMERICAN PENAEID, INC., a
Florida corporation,
ADVANCED HATCHERY
TECHNOLOGY, INC., ROBIN
PEARL, and CHARLES T. TUAN,

       Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on Plaintiff's Renewed Motion for Temporary Restraining Order or, Alternatively, Preliminary Injunction (Doc. #21) filed on January 26, 2017. For the reasons set forth below, Plaintiff's Motion for Temporary Restraining Order is denied, and Plaintiff's Motion for Preliminary Injunction is taken under advisement.

                                I.

This case arises out of Defendants' allegedly-unlawful marketing, breeding, and overseas distribution of live, disease-resistant shrimp (the Primo Shrimp) that were genetically engineered by Plaintiff Primo Broodstock, Inc. The factual

allegations relevant to Plaintiff's request for ex parte injunctive relief are as follows:[1]

On January 1, 2015, Plaintiff and Defendant American Mariculture, Inc. (AMI) entered into an agreement (the Grow Out Agreement) (Doc. #20-2) under which Plaintiff was permitted to use AMI's large shrimp growing facility located in St. James City, Florida to study and breed its "superior" Primo Shrimp for worldwide distribution.[2] In exchange, AMI was allowed to "grow out" the animals and then, once they had reached a certain weight, AMI would sell them back to Plaintiff at fixed prices. AMI was prohibited from selling or transferring live Primo Shrimp to others without Plaintiff's permission, but AMI could kill and sell any Primo Shrimp that Plaintiff did not repurchase. The Grow Out Agreement stated that all Primo Shrimp were Plaintiff's intellectual property,[3] and that all live Primo Shrimp were Plaintiff's physical property.

---

[1] Plaintiff's nine-count Amended Complaint (Doc. #20) asserts claims for breach of contract; conversion; defamation; trade secret misappropriation under the Defend Trade Secrets Act; trade secret misappropriation under the Florida Trade Secrets Act; unfair competition under the Lanham Act; unfair competition under Florida common law; violation of the Florida Unfair and Deceptive Trade Practices Act; and unjust enrichment.

[2] Prior to entering into the Grow Out Agreement, Plaintiff and AMI signed a non-disclosure agreement (Doc. #20-1).

[3] The Complaint alleges that Plaintiff successfully guarded against intellectual property theft by never providing purchasers with a "breeding pair" (i.e. a male and a female shrimp from the same genetic family).

The business relationship subsequently broke down. According to the Amended Complaint, in January 2016, Defendants threatened to kill all live Primo Shrimp that were at the AMI facility, and Plaintiff filed suit in state court seeking a temporary restraining order. The parties subsequently agreed to settle the dispute out of court and signed a one-page handwritten "Term Sheet" (Doc. #20-3) providing Plaintiff until April 30, 2016 (three months) to remove its live shrimp from AMI's facility. Ultimately, Plaintiff left approximately 46,000 adult shrimp at the facility because it could not afford to repurchase them, as well as 650,000 young shrimp that were too small to buy back. Plaintiff claims the parties understood that, consistent with the terms of the Grow Out Agreement, Defendants could kill and sell the dead shrimp, but could not breed or sell live shrimp.

In late July 2016, Plaintiff learned that AMI's newly-formed wholly-owned subsidiary, Defendant American Peneaid, Inc. (API), was attempting to attract buyer interest for live Primo Shrimp, particularly in China. At the time, live Primo Shrimp were available for purchase in China only through Plaintiff's exclusive distributor, Haimao Group. Plaintiff's attorney sent AMI a cease and desist letter on August 30, 2016 (Doc. #20-5). The response sent by AMI's attorney on September 16, 2016 (Doc. #20-6) rebuffed Plaintiff's claim of continued rights in the Primo Shrimp left behind and stated that the animals were instead AMI's to sell.

Despite this clear pronouncement as to Defendants' view of their ownership rights over the Primo Shrimp left at AMI's facility, and even after learning that Defendants were going to hold (or had held) a Primo Shrimp sales presentation in China on November 3, 2016, Plaintiff waited until January 9, 2017 to file its original Complaint (Doc. #1) and first ex parte Motion for Temporary Restraining Order (Doc. #2). The Motion for TRO sought to enjoin Defendants, for a period of fourteen days, "from shipping, selling or otherwise removing or relocating any shrimp broodstock in their possession or under their control, whether directly or indirectly, pending determination of whether such broodstock are descended or derived from Primo's broodstock." (Id. p. 36.) The Court denied the Motion without addressing Plaintiff's likelihood of success on its three claims, because the materials filed with the Complaint indicated that the imminent, irreparable harm Plaintiff alleged – unauthorized shipment of live Primo Shrimp for breeding to China – had seemingly already occurred, and since there was no indication that future shipments were imminent.[4] (Doc. #9, pp. 4-5.)

On January 26, 2017, Plaintiff filed the Renewed Motion for Temporary Restraining Order and Alternative Motion for Preliminary

---

[4] The Motion for TRO also failed to "set forth facts" allowing the Court to determine an appropriate bond amount. See M.D. Fla. R. 4.05(b)(4)(ii).

- 4 -

Injunction (Doc. #21) that is now before the Court.[5] The Motion claims that "plaintiff urgently needs the protections of a TRO to stop Defendants from implementing their planned exponential increase in shipments of Primo breeder shrimp following the conclusion of the Chinese Spring Festival [on February 2, 2017]." (Doc. #21, ¶¶ 13, 51.) Plaintiff specifically requests an order enjoining Defendants from, inter alia, selling, soliciting the sale of, or marketing Primo Shrimp.

## II.

Having reviewed Plaintiff's Amended Complaint, the Renewed Motion for TRO, and the various Exhibits and Affidavits attached to each, the Court must deny Plaintiff's second request for a temporary restraining order. While the Court fully appreciates that there are significant legal rights, and perhaps billions of dollars, at stake, Plaintiff has once again failed to convincingly articulate its entitlement to the extraordinary remedy of ex parte injunctive relief. Thousands of Primo Shrimp breeders have already arrived in China. (Docs. ## 20, ¶ 44; 21-5.) At the same time, there is no plausible indication that additional shipments

---

[5] While the Amended Complaint and the Renewed Motion for TRO have been served on counsel for Defendants AMI, API, and Robin Pearl, it does not appear that Defendants Advanced Hatchery Technology, Inc. and Charles T. Tuan have been properly served under Rule 4. (Docs. ## 19, 22.) Counsel for Defendants AMI, API, and Robin Pearl entered their appearance on January 17, 2017 (Doc. #16.)

will occur before Defendants have the opportunity to be heard on this matter.[6]

More importantly, even if there is an emergency, it is one Plaintiff should have sought to prevent months ago. Plaintiff knew since at least as early as mid-September that Defendants believed the live Primo Shrimp were their property to sell after being left at AMI's facility. Plaintiff also had evidence that Defendants had been actively looking (even if not yet "attempting") to sell Primo Shrimp breeders to the market since at least as early as July 2016. Yet Plaintiff did not act to protect any continued legal rights in the animals.[7] Having failed to do so, Plaintiff is not now entitled to ex parte injunctive relief. Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995) ("What showing is necessary to justify ex parte relief? First, the evidence must show that the moving party's cause will

---

[6] Plaintiff's contention that an ex parte injunction is needed because Primo Shrimp breeders will be distributed throughout China in early February is based on an English translation of a January 18, 2017 article in a Chinese aquaculture trade publication (Doc. #20-8). Rather than contain any such statement, however, the translated document says that Defendants predict the Primo Shrimp already in China "will have the baby shrimp after the Spring Festival." (Id. p. 13; see also Doc. #20, ¶ 76.)

[7] Plaintiff's failure to act is particularly inexplicable in light of the parties' contentious relationship and prior litigation history. In his affidavit, Vice President Randall Aungst explains that Primo delayed seeking injunctive relief because, until recently, there was insufficient evidence showing that AMI was attempting to sell live Primo Shrimp. (Doc. #21-2, ¶¶ 31, 49.) Maybe so, but that does not mean Primo could not have sought *declaratory relief* as to the parties' rights and obligations under the Term Sheet, after receiving the letter from AMI's attorney.

be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect."); <u>Allstate Ins. Co. v. Gardner</u>, No. 6:14-CV-681-ORL-31GJK, 2014 WL 12575828, at *2 (M.D. Fla. May 2, 2014) ("Delay in seeking a TRO undercuts the proposition that there is a threat of irreparable injury.").

The Court does, however, find it appropriate to expedite Defendants' response to, and a hearing on, Plaintiff's Alternative Motion for Preliminary Injunction. Defendants are hereby ordered to respond to Plaintiff's Motion for Preliminary Injunction **on or before 5 p.m. Tuesday, February 7, 2017**. A hearing on the Motion for Preliminary Injunction is set for **Friday, February 10, 2017 at 9:30 a.m.** in Fort Myers Courtroom 6A before Judge John E. Steele.

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's Renewed Motion for Temporary Restraining Order (Doc. #21) is **DENIED.**

2. Plaintiff's Alternative Motion for Preliminary Injunction (Doc. #21) is taken under advisement. Defendants shall file a response thereto **on or before 5 p.m. on Tuesday, February 7, 2017.**

3.   A hearing on the Motion for Preliminary Injunction is set for **Friday, February 10, 2017 at 9:30 a.m.** in Fort Myers Courtroom 6A before Judge John E. Steele.

**DONE and ORDERED** at Fort Myers, Florida, this 29th day of January, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel and Parties of Record