UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PB LEGACY, INC, a Texas Corporation and TB FOODS USA, LLC,

    Plaintiffs,

v.                        Case No: 2:17-cv-9-FtM-29CM

AMERICAN MARICULTURE, INC., a Florida corporation, AMERICAN PENAEID, INC., a Florida corporation, and ROBIN PEARL,

    Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on the defendants' Motion for Partial Summary Judgment (Doc. #120) filed on September 17, 2018. Plaintiffs filed a Response in Opposition (Doc. #126) on October 1, 2018. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us,

Inc., 611 F.3d 1308, 1314 (11th Cir. 2010) (quotation and citation omitted).  A fact is "material" if it may affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party.  Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010).  However, "'if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.'" St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant

summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**II.**

The undisputed material facts are as follows: Primo Broodstock, Inc. (Primo) operated a commercial shrimp breeding business.[1] (Doc. #120, ¶ 2; Doc. #120-1, ¶ 5.) On January 1, 2015, Primo entered into a shrimp farming agreement (the Grow-Out Agreement) with American Mariculture, Inc. (AMI), the operator of a shrimp farming facility in St. James City, Florida. (Doc. #20-2; Doc. #120, ¶ 7; Doc. #120-1, ¶ 7.) Pursuant to the Grow-Out Agreement, AMI agreed to grow post-larva "Primo shrimp" for Primo, which Primo would then sell to third parties. (Doc. #20-2, p. 2; Doc. #120, ¶ 8.) The Grow-Out Agreement also provided that, if Primo was unable to sell any of the shrimp grown by AMI, such shrimp would "be killed and sold as dead fresh or frozen shrimp product into the market" by AMI. (Doc. #20-2, p. 2; Doc. #120, ¶ 8.)

---

[1] Primo Broodstock, Inc. was the original plaintiff in this case. However, on February 17, 2017, TB Foods, USA, LLC acquired an ownership stake in Primo Broodstock, Inc. and changed its name to PB Legacy, Inc. (Doc. #86, ¶¶ 4-5.) As part of that acquisition, TB Foods, USA, LLC also acquired Primo Broodstock, Inc.'s rights in the instant litigation, and TB Foods, USA, LLC has therefore been added as a plaintiff in this case. (Id., ¶ 7; Doc. #87.) Accordingly, although the current litigation centers in large part on Primo Broodstock, Inc., the plaintiffs in this case are PB Legacy, Inc. and TB Foods, USA, LLC (collectively, Plaintiffs).

In January of 2016, Primo and AMI became involved in a dispute regarding payments Primo owed to AMI under the Grow-Out Agreement. (Doc. #120, ¶ 9; Doc. #120-1, ¶ 8.) On January 5, 2016, Robin Pearl (Pearl), the Chief Executive Officer and registered agent of AMI, sent Primo an email demanding the overdue payments. (Doc. #120, ¶ 10; Doc. #120-1, ¶ 9.) In that email, Pearl stated that if AMI did not receive payment from Primo within ten days, AMI would begin harvesting the Primo shrimp in its possession weighing more than thirty grams. (Doc. #120, ¶ 10; Doc. #120-1, ¶ 9.) On January 21, 2016, Primo filed a lawsuit against AMI in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida to enjoin AMI from harvesting Primo's shrimp. (Doc. #120, ¶ 11; Doc. #120-1, ¶ 10.)

On January 28, 2016, Pearl and Randall Aungst (Aungst), Primo's Vice President, signed a one-page handwritten "Term Sheet." (Doc. #20-3, p. 2.) In relevant part, the Term Sheet states that Primo had until April 30, 2016 to remove all of its shrimp from the AMI Facility. (Id.) Primo did not remove all of its shrimp from AMI's facility by April 30, 2016, and AMI retained the remaining shrimp. (Doc. #120, ¶¶ 15-16; Doc. #120-1, ¶¶ 14-15.)

Defendants Pearl, AMI, and American Penaeid, Inc. (collectively, Defendants) contend that when Primo failed to remove its shrimp from AMI's facility, AMI retained ownership over

the remaining shrimp and could sell the broodstock on the open market. (Doc. #120, ¶ 17; Doc. #120-1, ¶ 16.) Plaintiffs argue that when Primo failed to remove its shrimp from AMI's facility, AMI was not entitled to maintain ownership over the broodstock, but was rather only entitled to kill the remaining shrimp and sell them as dead fresh or frozen shrimp pursuant to the Grow-Out Agreement. (Doc. #20, ¶¶ 53-54.)

### III.

Plaintiffs assert claims against Defendants for breach of contract (Count I), conversion (Count II), defamation (Count III), trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Count IV), trade secret misappropriation under the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001 et seq. (Count V), unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count VI), unfair competition under Florida common law (Count VII), violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq. (Count VIII), and unjust enrichment (Count IX). Defendants now move for summary judgment as to Counts II, VII, VIII, and IX. Defendants argue they are entitled to summary judgment because those Counts are preempted by Plaintiffs' claim under the Florida Uniform Trade Secrets Act in Count V.

The Florida Uniform Trade Secrets Act (the FUTSA) "displace[s] conflicting tort, restitutory, and other law[s] of

5

[the state of Florida] providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008(1). It does not, however, affect "[o]ther civil remedies that are not based upon misappropriation of a trade secret." Fla. Stat. § 688.008(2)(b). While there is no Florida case law examining the scope of the FUTSA preemption provision, other federal district courts, with which this Court agrees, have found that "to pursue claims for additional tort causes of action where there are claims for misappropriation of a trade secret, there must be material distinctions between the allegations comprising the additional torts and the allegations supporting the FUTSA claim." New Lenox Indus., Inc. v. Fenton, 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007) (citation omitted). Thus, "the issue becomes whether allegations of trade secret misappropriation alone comprise the underlying wrong; if so, the cause of action is" preempted by the FUTSA. Allegiance Healthcare Corp. v. Coleman, 232 F. Supp. 2d 1329, 1335-36 (S.D. Fla. 2002) (quotation and citation omitted).

The central issue before the Court, therefore, is whether Defendants' alleged misappropriation of Primo's trade secrets "alone comprise[s] the underlying wrong" in Counts II, VII, VIII, and IX. Id. The Court will address each Count in turn below.

**A.  The Conversion Claim (Count II)**

Defendants argue that Count II is preempted by the FUTSA claim in Count V because there is no material distinction between Counts

6

II and V as both Counts "seek redress for the same wrongdoing . . . ." (Doc. #120, p. 8.) The Court agrees.

In both Counts II and V, Plaintiffs assert that Defendants converted Primo's breeder shrimp and subsequently aggressively bred those shrimp and brought them "to market . . . in China and other East Asian countries . . . ." (Doc. #20, ¶¶ 104, 147.) Because both Counts II and V are solely based upon Defendants' alleged misappropriation of Primo's trade secrets, the Court finds there is no material distinction between the two Counts.[2] The Court therefore finds that Count II is preempted by the FUTSA claim in Count V. Accordingly, Defendants' motion is granted as to Count II.

**B.  The Unfair Competition under Florida Common Law Claim (Count VII)**

Defendants argue that Count VII is preempted by the FUTSA claim in Count V because Count VII "relies upon and incorporates by reference the same allegations that are used to support" Count V. (Doc. #120, p. 10.) The Court disagrees.

---

[2] In their Response in Opposition, Plaintiffs assert that Count II is materially distinct from Count V because Count II seeks recovery for Defendants' alleged conversion of Primo's "tangible property," whereas Count V seeks recovery for Defendants' alleged misappropriation of Primo's "intangible" trade secrets. (Doc. #126, p. 6.) The Court finds Plaintiffs' argument unpersuasive, however, because the tangible property that Plaintiffs assert Defendants converted (the breeder shrimp) is the same intangible trade secret(s) Plaintiffs allege that Defendants misappropriated.

7

While both Counts V and VII are comprised of, and incorporate by reference, the same general factual allegations in the Amended Complaint, the Court finds that Count VII is nonetheless materially distinct from Count V. Specifically, unlike in Count V, Plaintiffs allege in Count VII that Defendants engaged in unfair competition by making "false and misleading statements" which have caused "confusion regarding the affiliation, connection, or association of Defendants to [] Primo's proprietary shrimp broodstock, Primo's tradename, and associated intellectual property rights and trade secrets of Primo." (Doc. #20, ¶ 162.)

Defendants contend that this assertion in Count VII is insufficient to constitute a material distinction from Count V because it merely alleges "conclusory allegations of harm" and not facts "that are separate and distinguishable from the alleged misappropriation and misuse of [Primo's] trade secrets." (Doc. #120, p. 10.) The Court disagrees, however, because Count VII is not solely based upon Defendants' alleged misappropriation of Primo's trade secrets. Rather, Count VII's assertion that Defendants engaged in unfair competition is predicated upon Defendants' alleged marketing practices: that Defendants allegedly made "false[] claim[s] that 'Primo abandoned over 650,000 [broodshrimp] and all its genetic material'" and made "false[] representations that Primo 'moved all of their genetic base to [AMI's Premises] in Florida,' while retaining nothing in reserve

8

at its Texas facility." (Doc. #20, ¶¶ 66, 73.) Count VII is further based upon the Amended Complaint's assertion that Defendants made these false representations "for purposes of promoting 'Primo' shrimp products" to shrimp farmers in China. (Id., ¶ 64.)

Because Count VII alleges that Defendants engaged in unfair competition by making false representations about Primo's ownership over the Primo shrimp broodstock to market Primo shrimp products in China – and does not merely allege that Defendants misappropriated Primo's trade secrets - the Court finds that Count VII is materially distinct from Count V. Defendants' motion is therefore denied as to Count VII.

**C. The Florida Deceptive and Unfair Trade Practices Act Claim (Count VIII)**

Defendants argue that Count VIII is preempted by the FUTSA claim in Count V because Count VIII alleges no facts that "differentiate it from a claim for misappropriation of trade secrets" under the FUTSA. (Doc. #120, p. 9.) The Court disagrees.

Count VIII asserts that Defendants' "false and misleading statements have caused, and will continue to cause, confusion regarding the affiliation, connection, or association of Defendants to Primo's proprietary shrimp broodstock, Primo's tradename, and associated intellectual property rights and trade secrets of Primo." (Doc. #20, ¶ 168.) Like the unfair competition

9

claim in Count VII, Count VIII relies upon, and incorporates by reference, the Amended Complaint's allegations that Defendants made false representations about Primo's business activities "for purposes of promoting 'Primo' shrimp products" to shrimp farmers in China. (Id., ¶ 64.) Because Count VIII is based upon Defendants' alleged marketing practices – and is not solely based upon Defendants' alleged misappropriation of Primo's trade secrets – the Court finds Count VIII is materially distinct from Count V.[3] Accordingly, the Court finds Count VIII is not preempted by the FUTSA claim in Count V. Defendants' motion is therefore denied as to Count VIII.

**D.   The Unjust Enrichment Claim (Count IX)**

Defendants argue Count IX is preempted by Count V because both Counts seek redress for Defendants' alleged misappropriation of Primo's trade secrets. The Court agrees.

---

[3] Citing to <u>Developmental Techs., LLC v. Valmont Indus., Inc.</u>, No. 8:14-CV-2796-MSS-JSS, 2016 WL 7320908, at *3 (M.D. Fla. July 18, 2016), Defendants argue there can be no material distinction between Counts V and VIII because both Counts rely on the same operative facts. The Court finds <u>Developmental Techs.</u> unpersuasive. There, the court found no material distinction between the plaintiff's FUTSA and Florida Deceptive and Unfair Trade Practices Act claims because both claims were solely based upon the defendants' alleged "failure to maintain the secrecy of [] information disclosed to them" pursuant to a non-disclosure agreement." <u>Id.</u> at *6. In this case, however, Count VIII – unlike Count V – is based upon Defendants' alleged marketing practices and is not solely predicated upon Defendants' alleged misappropriation of Primo's trade secrets.

In relevant part, Count IX asserts that "Defendants have benefited from the misappropriation of trade secrets, proprietary, and confidential information belonging to Primo." (Doc. #20, ¶ 173.) As Plaintiffs concede (Doc. #126, p. 9), the FUTSA provides the exclusive remedy for the "unjust enrichment caused by misappropriation" of trade secrets. Fla. Stat. § 688.004. Nonetheless, Plaintiffs assert that Count IX is not entirely preempted by Count V because Count IX also seeks recovery for Defendants' alleged "misappropriation of proprietary and confidential information, which may not rise to the level of a trade secret . . . ." (Doc. #126, pp. 9-10.) As this Court has previously found, however, "the FUTSA preempts all non-contract claims based on the misappropriation of confidential and/or commercially valuable information even if the information does not constitute a trade secret under the FUTSA." Am. Registry, LLC v. Hanaw, No. 2:13-CV-352-FTM-29CM, 2014 WL 12606501, at *6 (M.D. Fla. July 16, 2014). Accordingly, the Court finds that Count IX is preempted by the FUTSA claim in Count V. Defendants' motion is therefore granted as to Count IX.

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion for Partial Summary Judgment (Doc. #120) is **GRANTED IN PART AND DENIED IN PART.**

2. The motion is **GRANTED** as to Counts II and IX.

11

3. The motion is **DENIED** as to Counts VII and VIII.

4. The Clerk shall withhold the entry of judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___4th___ day of December, 2018.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record