## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

TB FOOD USA, LLC, a Delaware limited
liability company, and PB LEGACY, INC.,
a Texas corporation, Plaintiffs,

v.                                            CASE NO. 2:17-cv-00009-FtM-JES-UAM

AMERICAN MARICULTURE, INC., a
Florida corporation, AMERICAN PENAEID,
INC., a Florida corporation, and ROBIN
PEARL,

Defendants.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' AMENDED/CORRECTED MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION, INCORPORATED MEMORANDUM OF LAW, AND REQUEST FOR HEARING

Plaintiff, TB Food USA, LLC respectfully submits this response in opposition to Defendants' Amended/Corrected Motion to Dissolve the Preliminary Injunction, and would show the Court as follows:

### INTRODUCTION

Just over two years ago, this Court appropriately applied the Lanham Act and issued a Preliminary Injunction preventing Defendants from continuing to trade off of Plaintiffs' name (Primo) and make false claims about the nature and origins of "Primo shrimp" as part of Defendants' marketing campaigns. As nothing material has changed, Defendants no attempt to wriggle free from the Preliminary Injunction's restraints despite sworn testimony by Mr. Pearl during the May 2019 Order to Show Cause evidentiary hearing that he has no interest in using or associating Defendants' shrimp with Primo. *See* May 7, 2019, Hearing Transcript, Vol. 1 at pgs. 121, 152, 177-78, and 184-85 attached as Exhibit "A."  In fact, Mr. Pearl testified he would even agree to transform the Preliminary Injunction into a permanent injunction to demonstrate how much he wants nothing to do with Primo. If Mr. Pearl is to be taken at his word, why then did

Defendants file its initial motion and then amend thereafter? Clearly, Defendants do not need the motion for "defensive" reasons as the Court made crystal clear in its decision denying Plaintiffs' Order to Show Cause the requisite proof needed to hold Defendants in contempt for violating the Preliminary Injunction. Thus, the inescapable conclusion is that Defendants no longer want to hide in the shadows and desire to do directly and openly what the Preliminary Injunction has forbidden them to do. Defendants contention that the Chinese Trademark Board's initial ruling on Primo's invalidation petition is dispositive of the trademark issue is completely wrong. Under, Chinese law, the party dissatisfied with the Chinese Trademark Board's initial ruling/decision, is entitled to appeal to Board for reconsideration or directly to the Beijing Intellectual Property Court (the exclusive jurisdiction, a Court of Appeals) within thirty days from the receipt of the notice. Notably, Defendants fail to mention to the Court that on September 19, 2019, Plaintiff filed an appeal with the Beijing Intellectual Property Court challenging the Board's initial ruling. As the trademark challenge is still pending further action it is disingenuous to say there is a final decision pertaining to Plaintiff's invalidation proceeding. Indeed, nothing material has changed to question this Court's wisdom two years ago, and Defendants have not and cannot justify the dissolving of the Preliminary Injunction.

To begin with, Defendants' argument that the Lanham Act does not apply extraterritorially to this dispute is simply wrong. It is well-established that the Lanham Act does apply outside the borders of the United States when at least two of these factors are met: 1) defendant is a United States corporation; 2) the foreign activity had substantial effects in the United States; and 3) exercising jurisdiction would not interfere with the sovereignty of another nation. In this case, all three factors are satisfied. The Defendants are American corporate entities. Their activities had substantial effects in the United States as their postings to industry-centric Internet sites and coverage of their activities in the trade press had the effect creating confusion and harming Plaintiff's reputation with prospective business partners in the United States. Finally, despite Defendants' attempts to muddy the waters, exercising jurisdiction here would have no effect on

international comity, as maintaining an injunction to prevent Defendants' from engaging in false advertising does not implicate the validity of Defendants' alleged trademarks, and therefore does not create a risk of inconsistent results between this action and the Chinese courts' eventual determination as to whether the fraudulently obtained "Pu Rui Mo" trademark should be cancelled. Again, the matter is still pending in China. Indeed, Defendants signally fail to allege the main requirement for dissolving an injunction: establishing that doing so was required by a change of circumstances. Instead, Defendants mostly attempt to either relitigate matters that have already been decided or to try to obfuscate the real issues with a discussion of Chinese trademark law. Neither is a reason to dissolve the injunction, which was put in place due to the many misrepresentations set forth in Defendants' marketing materials, a concern that still remains valid.

Even if this Court felt inclined to delve into the merits of Defendants' position regarding the trademarks, the doctrine of laches would prevent them from doing so. Laches, in the trademark context, turns on whether the relevant statute of limitations for bringing a trademark action under state law has expired. In this case, whether the Court looks to the state law of either Florida or China, the statute of limitations to raise trademark claims has expired and laches therefore applies.

## FACTUAL AND PROCEDURAL BACKGROUND

The Preliminary Injunction in this case was the product of fiercely contested motion practice between the parties, which resulted in the Court finding that Plaintiffs had a significant likelihood of success on their claim that Defendants violated the Lanham Act's prohibitions on false advertising. Specifically, the Court agreed with Plaintiffs that Defendants' public statements that it possessed Plaintiff's "full genetic bank" of Primo shrimp "was likely false and resulted in injurious consumer confusion and/or deception." (April 27, 2017 Opinion and Order, Doc. No. 84, at p. 38). The Court also found that, despite their statements to the contrary, the Defendants took considerable pains to wrongfully associate themselves with the "Primo" trade name and to cast themselves as the only authentic source for "Primo shrimp." *Id.* at p. 39. The Court, in addition to finding that Plaintiffs had a significant likelihood of succeeding on the merits, also found that allowing Defendants to continue to make false statements regarding Primo shrimp would irreparably injure Plaintiffs' reputation and goodwill and that such injuries outweighed any potential harm the injunction might cause Defendants. *Id.* at p. 40. Finally, the Court found that "the public has an interest in ensuring that American businesses compete fairly with each other, both at home and abroad, and refrain from engaging in trade practices that confuse and deceive consumers." *Id.*

Accordingly, on April 27, 2017, the Court entered a Preliminary Injunction, enjoining Defendants from:

a. Referring to AMI's or API's shrimp as "Primo" anything, including "Primo shrimp," "Primo animals," "Primo breeders," or "Primo broodstock";

b. Stating that AMI's or API's shrimp were created by breeding a male shrimp and a female shrimp from the same Primo family line;

c. Stating that AMI or API acquired or possessed Primo's "genetic bank" or "full genetic bank" or that Primo left or abandoned its "genetic bank" or "full genetic bank" at the AMI Facility; and

d. Appearing via teleconference, videoconference, or in person at any Primo China or Dingda promotional event.

(Preliminary Injunction, Doc. No. 85, at p. 2).

Indeed, Defendants have submitted no proof demonstrating that the Preliminary Injunction is no longer needed. Moreover, the testimony adduced at the Court's recent evidentiary hearing demonstrated that Defendants' Chinese agents Charles Tuan and John Wu worked in tandem with Defendants to fraudulently obtain the trademark right to Primo's phonetic translation into Chinese "Pu Rui Mo" in China. Defendants, despite knowing full well that Wu's company had the rights to "Pu Rui Mo" at the time the Preliminary Injunction was being adjudicated, Defendants chose to keep this from the Court, presumptively for fear this would further reveal their plot and scheme to steal and misappropriate the Primo name and Plaintiffs' Primo shrimp.

**ARGUMENT**

1.   **Standard of Review**

It is well-established that in order to prevail on a motion to dissolve a preliminary injunction, a movant must demonstrate a change of circumstances that justifies the relief requested. *CWI, Inc. v. LDRV Holdings Corp.*, Case No. 8:13-cv-93-T-35MAP, 2013 U.S. Dist. LEXIS 197361, **5-6 (M.D.Fla. Oct. 16, 2013) (collecting authorities). Relitigating whether the proponent of the injunction had a substantial probability of success on the merits is not a sufficient reason to dissolve an injunction. *Id.*

2.   **The Lanham Act Applies To This Dispute**

In its attempt to evade the injunction against it, Defendants rely primarily on *Steele v. Bulova Watch Co., Inc.*, 344 U.S. 280 (1952) and *Int'l Café, S.A.L. v. Hard Rock Café Intern. (U.S.A.), Inc.*, 252 F.3d 1274, 1278 (11th Cir. 2001) for the proposition that the Lanham Act does not apply extraterritorially in this case. As these cases provide, the Lanham Act applies

extraterritorially when: 1) Defendant is a United States corporation; 2) the foreign activity had substantial effects in the United States; and 3) exercising jurisdiction would not interfere with the sovereignty of another nation.

Here, all of these factors are satisfied. There is no dispute that the Defendants are U.S. Corporations. It is also clear that Defendants' activities in China have had substantial effects in the United States, both by creating confusion among Plaintiffs' potential business partners in this country via Defendants' postings on industry-focused Yahoo Groups and their statements in trade publications. *See* Doc. No. 20 Amended Complaint, ¶¶ 59-61, 76-77, Exs. D & H. These actions threaten to harm Plaintiffs' reputation and goodwill and cannot be permitted. *See JMC Rest. Holdings LLC v. Pevida*, Case No. 14-CV-6157, 2015 U.S. Dist. LEXIS 170606 (E.D.N.Y., Dec. 22, 2015) (denying motion to dismiss Lanham Act claim on the grounds that using Grimaldi's Pizza on the grounds that press coverage of Defendants' activities in China had a substantial effect within the United States).[1]

Indeed, exercising jurisdiction in this case does not and will not interfere with China's sovereignty. Here, Defendants argue that preserving the injunction in this case would run afoul of this factor due to the Chinese Trademark Board's initial ruling (previously Defendants' argued it was the pendency of litigation in China) about the validity of the "Pu Rui Mo" trademark, which Plaintiffs vigorously contest. As demonstrated in Yan Chunde's Declaration, attached hereto as Exhibit "B," the matter is far from over and is still being litigated as on September 19, 2019 Plaintiff appealed the Board's decision to the Beijing Intellectual Property Court.   Notably, Defendants failed to mention the appeal in their Amended/Corrected Motion.

---

[1] Defendants' citation to *McBee v. Delica Co.*, 417 F.3d. 107 (1st Cir. 2005), is inapposite as it imposed a heightened standard for what constituted a "substantial effect" for Lanham Act cases where the defendant was not a U.S. corporation. *Id.* at 118-119.  At least one court in this Circuit has declined to apply the *McBee* analysis to cases where, as here, the Defendant is American. *Georgetown Trading Co., LLC v. Venturi Spirits, LLC*, Case No. 14-62277,2015 U.S. Dist. LEXIS 181134, * 3 (S.D.Fla. June 25, 2015).

More importantly, this Court's decision imposing the injunction does not address these issues in any way. Even if it did, the Court in balancing the harms amongst the Parties should maintain the status quo to avoid irreparable harm to Plaintiffs, and at bottom wait until after the Beijing Intellectual Property Court has determined and ruled on Plaintiff's challenge to the right to "Pu Rui Mo" in China.  In any event, this is unnecessary as the Preliminary Injunction stems from the Lanham Act's prohibition against making "false or misleading representations of fact" in "commercial advertising or promotion." **This is not a question that turns on whether or not Defendants have a valid mark in China, but rather on whether they misrepresented "the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."** 15 U.S.C. § 1125(a)(1)(B). Notably, it is not a prerequisite for Plaintiffs to have a valid trademark to seek Lanham Act protection against false advertisements.[2] *Zyla v. Wadsworth*, 360 F.3d 243, 251 (1st Cir. 2004).[3] As Plaintiffs have and will continue to have a Lanham Act claim against Defendants regardless of the outcome of any Chinese trademark proceeding, maintaining the injunction does not affect international comity or Chinese sovereignty as the rights extend to the entire world.[4]

Moreover, it is beyond reasonable dispute that the phonetic Chinese "Pu Rui Mo" and "Pu Li Mao" (which Defendants know Plaintiff must use in China while Plaintiff awaits the Court's ruling in China as to "Pu Rui Mo") are substantially similar which has caused and continues to cause a high likelihood of confusion in the Chinese market as Defendants' serendipitous' market

---

[2] The cases cited by Defendants on this point are not contrary. *Popular Bank of Fla. V. Banco Popular De P.R.*, 9 F.Supp.2d 1347 (S.D. Fla. 1998), involved trademark infringement, not false advertising. *Sandy's Café, LLC v. Santiago*, 2018 U.S. Dist. LEXIS 95207 (S.D.Fla. June 5, 2018), turned on the court's finding that the factual record in that case was so tangled and underdeveloped that it could not determine whether the plaintiff had a substantial chance of success on the merits.

[3] Notably, unlike in *Zyla* this is not purely a claim about the conceptual authorship of a work, but rather about the physical goods themselves, specifically whether the shrimp sold by Defendants come from the genetic line established by Plaintiffs.

[4] *Int'l Cafe* is distinguishable on this point, as that case presented the possibility of inconsistent rulings by the U.S. and Lebanon courts on the validity of certain trademarks, no such possibility exists here. *Int'l Cafe*, 252 F.3d at 1279.

share growth in China demonstrates. *See generally*, *In re Majestic Distilling Co*., 315 F.3d 1311, 1316 (Fed. Cir. 2003) ("[T]he . . . mistaken belief that [a good] is manufactured or sponsored by the same entity [as another good] . . . is precisely the mistake that §2(d) of the Lanham Act seeks to prevent."). Defendants' use of "Pu Rui Mo" is analogous to a Band-Aid brand competitor using the name Band-Aide or the use of the "Mc" prefix in combination with a generic food item. *See McDonald's Corp. v. McBagel's Inc.*, 649 F. Supp. 1268 (S.D.N.Y. 1986)).   As such, the Preliminary Injunction is necessary Court to avoid creating further confusion in the Chinese marketplace. *See* Dr. Gan's Expert Report demonstrating confusion in the Chinese Market, attached as Exhibit "C."

### 3.   Defendants Have Not Shown A Change In Circumstances Sufficient To Justify Lifting The Injunction

As discussed above, the key issue before the Court is whether there is a change in circumstances that justifies the dissolving of the Preliminary Injunction and the protection it affords to Plaintiffs.  Indeed, Defendants have not submitted any evidence demonstrating a change in circumstances warranting the dissolvement of the Preliminary Injunction.

Significantly, Defendants make the conclusory and unsubstantiated claim that the Preliminary Injunction should be dissolved because Plaintiffs had not previously sought trademark protection for "Primo" in either the United States or China. Whatever the merits of that position may be with regard to the Parties' intellectual property dispute in China, it does not reflect a change of circumstances in this action, both because this was also the case when the Preliminary Injunction was issued, and because the Lanham Act claim raised by the preliminary injunction deal with false advertising, not trademark infringement. *See, e.g., CWI,* 2013 U.S. Dist. LEXIS 197361, at *5-6. Equally unavailing is Defendants' claim that the Primo Broodstock Joint Declaration and Defendants' supposed permission to use the Chinese-language translation of "Primo" justify dissolvement. Indeed, neither contention reflects a change in circumstances nor are responsive to

the allegations of false advertising.

Defendants further claim that Plaintiffs have abandoned the use of the term "Primo." While abandonment can be a defense under the Lanham Act under certain circumstances, it is not applicable here because Plaintiffs have always intended to resume use of its intellectual property and have only been prevented from doing so because of Defendants' actions. *See Axiom Worldwide, Inc. v. HTRD Grp. H.K. Ltd.*, Case No. 8:11-cv-1468-T-33TBM, 2015 U.S. Dist. LEXIS 163588, *21 (M.D. Fla. Oct. 30, 2015) *report and recommendation adopted* 2015 U.S. Dist. LEXIS 163587 (M.D. Fla. Dec. 7, 2015) (denying motion to dissolve injunction where plaintiff's failure to resume use of trademark was due in part to defendant's interference, even where trademark had been cancelled and plaintiff had encountered financial difficulties calling its ability to resume operations into question).

### 4.    Defendants' Trademark-Related Defenses Are Inapplicable Due to Laches

Even *arguendo*, Defendants' various arguments about the validity of Plaintiff's intellectual property claims had merit, and they do not, such claims are not cognizable due to laches. It is black-letter law that a party asserting laches must show that there was: (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted. *Kason Indus. v. Component Hardware Grp., Inc.*, 120 F.3d 1199 (11th Cir. 1997). In Lanham Act cases, the touchstone for laches is the  period for bringing analogous state law claims. *Id.* at 1203. In Florida, the statute of limitations for bringing trademark claims is four years. *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, Case No. 09-cv-61490-MGC, 2011 U.S. Dist. LEXIS 59465, *12 (S.D.Fla. June 2, 2011). While in China, the statute of limitations is two years. *See* People's Republic of China Trademark Law https://www.wipo.int/edocs/lexdocs/laws/en/cn/cn195en.pdf.

In this case, Defendants have known about the trademark in China for years, but have

waited until May 2019 to raise this issue.  As set forth above, the testimony adduced at the Court's

May hearing demonstrated that Defendants' Chinese agents Charles Tuan and John Wu worked in

tandem with Defendants to fraudulently obtain the trademark right to Primo's phonetic translation

into Chinese "Pu Rui Mo" in China. Defendants, despite knowing full well that Wu's company

had the rights to "Pu Rui Mo" at the time the Preliminary Injunction was being adjudicated,

Defendants chose not to mention this to the Court for fear this would further reveal their plot and

scheme to steal and misappropriate the Primo name and Plaintiffs' Primo shrimp. As such, they

should not be permitted to raise this argument now.

## CONCLUSION

For the foregoing reasons, the Court deny Defendants' motion to dissolve the preliminary

injunction, and grant such other relief as is just and proper.

## REQUEST FOR HEARING

Under Local Rule 3.01(j) Plaintiff respectfully requests a hearing on this motion and

estimate the time required for oral argument is 20 minutes.

**Dated: November 6, 2019**

Respectfully Submitted,

By: /s/ *Brian M. Gargano*
    Brian M. Gargano
    Nguyen and Chen LLP
    11200 Westheimer Road, Suite 120
    Houston, TX 77042
    Phone: 832-767-0339
    bgargano@nguyen-chen.com
    *Counsel for Plaintiff TB Food USA, LLC*

    Vincent F. Alexander
    Florida Bar No. 68114
    Lewis Brisbois Bisgaard & Smith LLP
    110 S.E. 6th Street, Suite 2600
    Fort Lauderdale, FL 33301
    Phone: 954-939-3371
    Vincent.Alexander@lewisbrisbois.com

*Counsel for Plaintiff TB Food USA, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been filed and forwarded to

counsel for all parties listed below in accordance with the Federal Rules of Civil Procedure and the

District's ECF service rules on this 6th day of November 2019.

MELVILLE G. BRINSON III
**MELVILLE G. BRINSON III, P.A.**
8359 Stringfellow Road
St. James City, Florida 33956
Telephone: (239) 282-0551
Facsimile: (239) 282-0515
brinson@afblaw.com

PATRICK J. O'CONNOR
**O'CONNOR HERNANDEZ &**
**ASSOCIATES, P.A.**
999 Brickell Avenue, Suite 740
Miami, Florida 33131
Telephone: (305) 628-7541
poconnor@oconnorhernandez.com
 litgroup@oconnorhernandez.com

CHENÉ M. THOMPSON
**PAVESE LAW FIRM**
Post Office Drawer 1507
Fort Myers, Florida 33902-1507
Telephone: (239) 334-2195
Facsimile: (239) 332-2243
chenethompson@PaveseLaw.com
matthewroepstorff@pavese.com
kellygermanis@PaveseLaw.com

STEVE JAKUBOWSKI
Admitted *Pro Hac Vice*
**ROBBINS, SALOMON & PATT, LTD**.
180 North LaSalle, Suite 3300
Chicago, Illinois 60601
Telephone: (312) 456-0191
Facsimile: (312) 782-6690
sjakubowski@rsplaw.com

*/s/Brian M. Gargano*
Brian M. Gargano