```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION
```

PB LEGACY, INC, a Texas
Corporation and TB FOODS
USA, LLC,

    Plaintiffs,

v.                                      Case No: 2:17-cv-9-FtM-29NPM

AMERICAN MARICULTURE, INC.,
a Florida corporation,
AMERICAN PENAEID, INC., a
Florida corporation, and
ROBIN PEARL,

    Defendants.

_____

AMERICAN MARICULTURE, INC.,
a Florida corporation,

    Counter-Plaintiff,

v.

PB LEGACY, INC, a Texas
Corporation, KENNETH
GERVAIS, and RANDALL AUNGST,

    Counter/Third-Party
    Defendants.

_____

## **OPINION AND ORDER**

This matter comes before the Court on defendants' Amended Motion to Dissolve Preliminary Injunction (Doc. #228) filed on October 9, 2019. Plaintiff's Response in Opposition (Doc. #240) was filed on November 6, 2019. With the permission of the Court (Docs. #251, 260), defendants filed a Reply (Doc. #256) on November

26, 2019 and plaintiff filed a Sur-Reply (Doc. #262) on December 9, 2019. For the reasons set forth below, the motion is granted in part and denied in part.

## I.

On January 9, 2017, plaintiff Primo Broodstock, Inc. (Primo Broodstock) filed a three-count Complaint (Doc. #1) against defendants and others. A corresponding Motion for a Temporary Restraining Order (Doc. #2) sought to preclude defendants from removing or relocating any shrimp broodstock in their possession. On January 11, 2017, the Court denied the motion for a temporary restraining order. (Doc. #9.)

On January 26, 2017, Primo Broodstock filed an Amended Complaint (Doc. #20) setting forth nine causes of action against defendants and others.[1] Plaintiff also filed a Renewed Motion for Temporary Restraining Order or Alternatively Preliminary Injunction (Doc. #21) seeking an order enjoining defendants from selling, soliciting the sale of, or marketing Primo shrimp, particularly in China. On January 29, 2017, the Court denied this requested temporary restraining order, but scheduled a hearing on the request for a preliminary injunction. (Doc. #25.)

---

[1] Defendants Advanced Hatchery Technology, Inc. and Charles T. Tuan were dismissed by stipulation (Doc. #73) on March 16, 2017. On April 6, 2017, the remaining three defendants filed an Answer, Defenses and Affirmative Defenses (Doc. #81), and American Mariculture, Inc. filed a Counterclaim (Doc. #80).

On February 10, 2017, the Court conducted a hearing on plaintiff's pending motion for a preliminary injunction (Doc. #53), which was followed by supplemental briefing. (Docs. ##64, 67.) On April 27, 2017, the Court filed an Opinion and Order (Doc. #84) granting in part and denying in part plaintiff's request for a preliminary injunction. On the same day, a Preliminary Injunction (Doc. #85) was filed.

On May 10, 2017, plaintiff filed an unopposed motion to amend the Amended Complaint to reflect that plaintiff Primo Broodstock, Inc.'s name had been changed to PB Legacy, Inc. (PB Legacy) and to add TB Foods USA, LLC (TB Foods) as an additional plaintiff. (Doc. #86.) The motion recited that on February 17, 2017, TB Foods had purchased substantially all of Primo Broodstock's assets, including intellectual property assets and rights in causes of action, and that following the sale plaintiff had changed its name to PB Legacy, Inc. (Id.) The Motion was granted on May 15, 2017. (Doc. #87.)

On February 27, 2019, plaintiffs filed a motion for an order to show cause why defendants should not be held in contempt for violating the provisions of the Preliminary Injunction. (Doc. #144.) On May 7 and 8, 2019, the Court conducted an evidentiary hearing on the motion. (Docs. ##190, 191.) On May 22, 2019, the Court filed an Opinion and Order (Doc. #196) denying the motion.

Two days later, on May 24, 2019, defendants filed their Motion to Dissolve Preliminary Injunction (Doc. #197.)  An Amended Motion to Dissolve Preliminary Injunction (Doc. #228) was filed on October 9, 2019, and is the operative motion.

**II.**

The narrow scope of the Preliminary Injunction issued in this case was a far cry from that requested by plaintiff. See (Doc. #84, pp. 8-9.)  The Preliminary Injunction was premised on the unfair competition and false advertising claim under the Lanham Act (Count VI), and also referenced the unfair competition claim under Florida common law (Count VII) and the violations of the Florida Deceptive and Unfair Trade Practices Act (Count VIII). (Doc. #84, pp. 29-42.)  The operative portion of the Preliminary Injunction provides:

> 1. Defendants American Mariculture, Inc. (AMI), American Penaeid, Inc. (API), and Robin Pearl, and all officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Defendants within the meaning Federal Rule of Civil Procedure 65(c)(2), and who receive proper notice of the preliminary injunction, are enjoined from:
>
> a. Referring to AMI's or API's shrimp as "Primo" anything, including "Primo shrimp," "Primo animals," "Primo breeders," or "Primo broodstock";
>
> b. Stating that AMI's or API's shrimp were created by breeding a male shrimp and a female shrimp from the same Primo family line;

> c. Stating that AMI or API acquired or possessed Primo's "genetic bank" or "full genetic bank" or that Primo left or abandoned its "genetic bank" or "full genetic bank" at the AMI Facility; and
>
> d. Appearing via teleconference, videoconference, or in person at any Primo China or Dingda promotional event.
>
> 2. Defendants are not enjoined from stating that certain of their animals were derived from pure Primo stock whose genetic makeup was unknown to Defendants at the time.

(Doc. #85, p. 2.)

As the Court noted in its Opinion and Order explaining the issuance of the Preliminary Injunction, there is no direct Chinese translation for the English word "Primo." Rather, there are two similar phonetic words, "pu rui mo" and "pu li mao," each of which has distinct Chinese characters and different literal meanings. The prohibition in the Preliminary Injunction against referring to defendants' shrimp as "'Primo' anything" includes the English "Primo" and both Chinese phonetic words.

**III.**

At the hearing on the motion for a preliminary injunction, defendants agreed that the use of the Primo name was improper and that they did not necessarily oppose an injunction preventing the use of the "Primo" name. (Doc. # 53, p. 111.) The Court noted this position in its Opinion and Order. (Doc. #84, p. 30.) At the show cause hearing on May 7, 2019, counsel for defendants noted that defendants had agreed to the narrow preliminary injunction

- 5 -

forbidding the future use of "Primo". (Doc. #190, p. 35.) At the same hearing, defendant Robin Pearl testified that he had "no problem being barred forever and ever and ever from [using] the word Primo" (Doc. #190, p. 185) and had no problem being permanently barred from using "pu li mao." Id. Defendants now see things differently, and they seek to dissolve the entire Preliminary Injunction.[2]

**A.**

The Court has the discretionary authority to dissolve, modify, or clarify its injunction. Dillard v. Baldwin County Com'rs, 376 F.3d 1260, 1264 (11th Cir. 2004); CBS Broad. Inc. v. EchoStar Comm. Corp., 532 F.3d 1294, 1299 (11th Cir. 2008). "Before exercising its power to modify, a court must be convinced by the party seeking relief that existing conditions differ so substantially from those which precipitated the decree as to warrant judicial adjustment." Hodge v. Dep't of Hous. & Urban Dev., Hous. Div., Dade County, Fla., 862 F.2d 859, 862 (11th Cir. 1989). While not contesting the Court's authority to dissolve or modify an injunction, the parties disagree as to whether the Court should exercise that authority in this case.

---

[2] The motion to dissolve also mentions in passing that the Court should dismiss the entire Amended Complaint (Doc. #228, p. 13.) Clearly, there is no basis for such relief, even if such a request had been procedurally proper.

**B.**

Defendants assert that the Preliminary Injunction is no longer appropriate because "there can be no on-going violations." (Doc. #228, p. 3.) Specifically, defendants argue that there are four reasons to dissolve the Preliminary Injunction in its entirety: (1) Plaintiff is not the owner of, and has disavowed any interest in, the pu rui mo translation of "Primo"; (2) plaintiff has abandoned its interest in the English term "Primo"; (3) plaintiff has not made an application to trademark the term pu rui mo; and (4) defendants have permission to use the pu rui mo mark in China. Additionally, defendants assert that considerations of comity and sovereignty preclude the application of the Preliminary Injunction to events which occur in China. (Doc. #228, pp. 8-16.) The Court discusses each, although not in the same order.

**(1) Abandonment of Interest in English Term "Primo"**

Defendants assert that plaintiffs have abandoned any interest in the English term "Primo," and therefore that term cannot form a basis for a Lanham Act-based preliminary injunction. If there has been an abandonment, the Court agrees that the underlying basis for the Preliminary Injunction disappears.

Defendants provide two bases for their argument that plaintiffs have abandoned their interest in the name "Primo." First, that abandonment occurred when TBA Foods purchased Primo

Broodstock's intellectual property on February 17, 2017 and thereafter changed the company's name to PB Legacy, Inc. Second, that abandonment occurred because TB Foods could have taken action in China against persons using the pu rui mo mark without its permission, but declined to do so since it preferred to be in a court in the United States. (Doc. #228, pp. 10-12.)

Plaintiffs concede that abandonment can be a Lanham Act defense. Plaintiffs assert, however, that abandonment is not applicable in this case because they "have always intended to resume use of its intellectual property and have only been prevented from doing so because of Defendants' actions." (Doc. #240, p. 9.)

Abandonment is an affirmative defense "by which a defendant may demonstrate that a trademark plaintiff no longer holds the rights to a mark. Abandonment is trademark law's way of recognizing that '[t]rademark rights flow from use.'" Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc., 304 F.3d 1167, 1173-74 (11th Cir. 2002)(citations omitted).

> If a mark holder stops using a mark with an intent not to resume its use, the mark is deemed abandoned and "falls into the public domain and is free for all to use.... Abandonment paves the way for future possession and property in any other person." . . . Thus, a defendant who successfully shows that a trademark plaintiff has abandoned a mark is free to use the mark without liability to the plaintiff.

> . . .
>
> > Under the Lanham Act, a protectable mark or name is considered abandoned if "its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. A putative trademark infringer thus must prove two separate elements to interpose the defense of abandonment successfully: that the plaintiff has ceased using the mark in dispute, and that he has done so with an intent not to resume its use. . . .
>
> > Because proving the subjective intent of a trademark holder may prove burdensome for a defendant, the Lanham Act provides two aids for demonstrating intent. First, it provides that "[i]ntent not to resume may be inferred from circumstances." 15 U.S.C. § 1127; . . . Second, it allows a showing of three years of consecutive nonuse to create a rebuttable presumption of intent not to resume use: "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127.

Id. at 1173-74 (internal citations and punctuation omitted). "Because a finding of abandonment works an involuntary forfeiture of rights, federal courts uniformly agree that defendants asserting an abandonment defense face a 'stringent,' 'heavy,' or 'strict burden of proof.'" Id. at 1175 (citations and footnotes omitted).

Defendants' showing of abandonment is woefully inadequate. First, defendants have failed to plead an abandonment defense as to the word "Primo". See (Doc. #81.) The only reference to abandonment relates to the shrimp, not the word. (Id. at ¶ 73.) Second, even if such a defense had been pled, a company's name

change is not dispositive, and may not even be probative, of abandonment of an interest in a word. Choosing a preferred forum, even if misguided, does not speak at all to an abandonment of Lanham Act rights. Quite the contrary. The Court finds defendants have made no showing which would justify dissolution or modification of the Preliminary Injunction based upon an abandonment of an interest in the English word "Primo."

**(2) Ownership/Interest in Term Pu Rui Mo**

Defendants assert that all the documents submitted by plaintiff to show defendants' use of the term "Primo" in China used only the term "pu rui mo." This is significant, defendants argue, because prior to entry of the Preliminary Injunction, plaintiffs had disavowed any ownership, rights, or intent to use the Chinese term pu rui mo (although they failed to so inform the Court). Defendants argue that plaintiffs have no right to obtain a preliminary injunction under the Lanham Act because plaintiffs are not the owner of the pu rui mo mark, have no enforceable rights to it, and have stated they will not use the mark. (Doc. #228, pp. 8-10.) Defendants also assert that pu rui mo has become a generic term used by those involved in shrimp farming in China, and therefore cannot support a Lanham Act-based injunction. (Doc. #228, p. 11.)

Plaintiffs respond that these arguments fail because they do not represent a change of circumstance and "the Lanham Act claim

raised by the preliminary injunction deal[s] with false advertising, not trademark infringement." (Doc. #240, p. 8.)

It is true that defendants rely upon facts which existed prior to the entry of the Preliminary Injunction in now arguing that plaintiffs had disavowed any ownership, rights, or intent to use the Chinese term pu rui mo. Thus, there is literally no change of circumstance. It is also true, however, that this factual information was not presented to the Court at the evidentiary hearing prior to the issuance of the Preliminary Injunction. While not every newly-discovered fact will justify reconsideration or modification of a preliminary injunction, the Court finds that this information is of sufficient gravitas that the Court should consider it.

Nonetheless, the Preliminary Injunction is focused on a false advertising claim, not a trademark infringement claim. The issues of ownership and interest in the term pu rui mo are discussed below in the context of comity and sovereignty, but are not otherwise sufficient to dissolve or modify the Preliminary Injunction.

Defendants also assert that pu rui mo has become a generic term used by those involved in shrimp farming in China, and therefore cannot support a Lanham Act claim or injunction. This argument lacks a sufficient factual predicate to justify modifying or dissolving the Preliminary Injunction. The snippets of testimony cited by defendants are insufficient in themselves, even

when coupled with the view of a language expert, and do not outweigh the other probative evidence supporting the Preliminary Injunction.

The Court finds that defendants have made no showing which would justify dissolution or modification of the Preliminary Injunction based upon the lack of ownership of the pu rui mo term or its alleged generic meaning in China.

**(3) Defendants Have Permission to Use pu rui mo**

In a variation of the prior argument, defendants assert that in addition to the mark pu rui mo being owned and controlled by someone other than plaintiffs, defendant American Penaeid, Inc. and its customers have been granted the right to use pu rui mo by its true Chinese owner (Wudi Tenfly Agriculture Co., Ltd.) in China. According to defendants, this permission, coupled with plaintiffs' disclaimer of ownership, means there should be no prohibition on the use of this term by defendants or their customers[3] in China. (Doc. #228, pp. 12-13.)

As with the prior argument, the Court finds this to be insufficient in itself to modify or dissolve the Preliminary Injunction. The issues of ownership and interest in the term pu rui mo, and the permission of Wudi Tenfly to use the term, are discussed below in the context of comity and sovereignty, but are

---

[3] The Court has already stated that the Preliminary Injunction does not apply to customers. (Doc. #196, p. 13.)

not otherwise sufficient to dissolve or modify the Preliminary Injunction.

**(4) No Application for Protection of "Primo"**

Defendants assert that Kenneth Gervais, the president of Primo Broodstock, testified by deposition that at no time had he ever sought trademark protection for "Primo" either in the United States or China. Thus, defendants argue, plaintiffs cannot establish the mandatory element of proof for a Lanham Act claim - ownership and control of an enforceable mark for either pu rui mo or the English term Primo in China. (Doc. #228, pp. 11-12.) Defendants argue that this precludes plaintiffs' Lanham Act claims and any preliminary injunction based on such claims.

Defendants recognize that the Eleventh Circuit has stated that even if a mark is not federally registered, "the use of another's unregistered, i.e., common law, trademark 'can constitute a violation of [section 43(a) of the Lanham Act].'" Crystal Entm't & Filmworks, Inc. v. Jurado, 643 F.3d 1313, 1320 (11th Cir. 2011). They argue, however, that this does not apply here since "American Common law does not apply to trademarks in China." (Doc. #228, p. 12.) While this statement is undoubtedly true, it does not provide a basis to dissolve the Preliminary Injunction. As both sides agree, a false advertising claim can be established without a valid trademark. The Court finds that defendants have made no showing which would justify dissolution or

modification of the Preliminary Injunction based upon the failure to seek trademark protection of the term Primo.

**(5) Comity and Sovereignty Considerations**

Finally, defendants argue that issues of comity and interference with the sovereignty of China require dissolution of the Preliminary Injunction.  It was disclosed at the show-cause hearing in May, 2019, that there was and is litigation in China in which plaintiffs are attempting to invalidate the mark pu rui mo held by Wudi Tenfly Agriculture Co., Ltd., claiming it was fraudulently obtained and should be cancelled.  That litigation recently resulted in an adverse decision against plaintiffs by the National Intellectual Property Office in China, but plaintiffs have filed an appeal, which is pending.  The current status of the litigation is that Wudi Tenfly Agriculture Co., Ltd. is recognized as the owner of the pu rui mo mark in China.  Defendants assert that Wudi Tenfly has given its permission to use the term pu rui mo in China to American Penaeid, Inc.

Defendants assert that the decision in China is inconsistent with the portion of the Preliminary Injunction prohibiting defendants from using the pu rui mo mark, and that plaintiffs are simply trying to use an American court to skirt the rulings of a lawful proceeding in China. (Doc. #228, pp. 14-15.)  Defendants assert that the Preliminary Injunction, when applied to this conduct in China, exceeds the extraterritorial power of the Court.

The Court agrees that a portion of the Preliminary Injunction must be modified in light of the ongoing legal proceedings in China.

In Steele v. Bulova Watch Co., the Supreme Court addressed the issue of "whether a United States District Court has jurisdiction to award relief to an American corporation against acts of trade-mark infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States." Steele v. Bulova Watch Co., 344 U.S. 280, 281 (1952). After examining the Lanham Act, the Court held: "Where, as here, there can be no interference with the sovereignty of another nation, the District Court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction." Id. at 289. The Eleventh Circuit has held that Steele stands for the proposition "that the Lanham Act conferred jurisdiction over extraterritorial disputes involving trademark infringement and unfair competition when: 1) Defendant is a United States corporation; 2) the foreign activity had substantial effects in the United States; and 3) exercising jurisdiction would not interfere with the sovereignty of another nation." Int'l Cafe, S.A.L. v. Hard Rock Cafe Intern. (U.S.A.), Inc., 252 F.3d 1274, 1278 (11th Cir. 2001).

Addressing these elements, the Court concludes that the first two, but not the third element, have been satisfied. Both sides

- 15 -

agree that the first element is satisfied.  (Doc. #228, p. 5; Doc. #240, p. 2.)

As to the second element, plaintiffs respond that defendants' activities in China have had substantial effects in the United States by their postings on industry-focused Yahoo Groups and statements in trade publications.  The Court agrees that plaintiffs have made a sufficient showing to support the Preliminary Injunction.

As to the third element, plaintiffs assert there is no interference with China's sovereignty because there is no final order in the China case, and an appeal is still pending. Additionally, plaintiffs argue that the Preliminary Injunction is not inconsistent with any possible ruling in China because their Lanham Act claims do not turn on whether or not the pu rui mo mark is valid in China, but whether defendants misrepresented facts about its shrimp contrary to 15 U.S.C. § 1125(a)(1)(B). Plaintiffs assert that this does not require that they have a valid trademark in the product.  Finally, plaintiffs argue that because of the similarity in the phonetic pu rui mo and pu li mao, the Preliminary Injunction remains necessary to avoid creating further confusion in the Chinese marketplace. (Doc. #240, pp. 5-8.)

The Court finds that defendants have the better argument as to the comity and sovereignty issues.  One of the effects of the Preliminary Injunction is to preclude defendants from using the

word pu rui mo in China to describe shrimp.  But the proceedings in China have determined that the word pu rui mo in connection with shrimp is a mark which does not belong to plaintiffs, but in fact belongs to someone else (Wudi Tenfly).  Wudi Tenfly is represented to have given defendant permission to use the term, which defendant could not do under the Preliminary Injunction.  The inconsistency between the determinations made in China and a portion of the Preliminary Injunction is clear.

While the legal proceedings in China are not yet final, even potential interference with pending litigation in China would weigh against jurisdiction.  Hard Rock Café, 252 F.3d at 1279.  Additionally, the prevailing party in the China proceedings is entitled to the benefit of the favorable ruling unless and until it is overturned by the further proceedings in China.  Plaintiffs essentially ask the Court to stay the effect of the decision in China, which clearly would constitute the type of improper interference with the judicial system of another country which is foreclosed by Steele.  The Court finds that defendants have demonstrated that the Preliminary Injunction should be modified, at least on a temporary basis, to exclude the term pu rui mo from its scope.  If plaintiffs prevail in their appeal in China, they can request that the Preliminary Injunction be again modified to reflect pu rui mo.

### (6) Laches

Finally, plaintiffs argue that laches prevents defendants from raising trademark-related defenses. (Doc. #240, pp. 9-10.) But plaintiffs simultaneously assert they are not relying on trademark claims, and the Court finds no reason it may not consider dissolution or modification of the injunction at this stage of the proceedings.

Accordingly, it is hereby

**ORDERED**:

1. Defendants' Amended Motion to Dissolve Preliminary Injunction (Doc. #228) is **GRANTED in part and DENIED in part**. Until further order of the Court, the Preliminary Injunction (Doc. #85) shall not be construed to forbid defendants' use of the term pu rui mo in China.

2. The Motion to Dissolve Preliminary Injunction (Doc. #197) is **DENIED as moot**.

**DONE and ORDERED** at Fort Myers, Florida, this 9th day of January, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record