UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PB LEGACY, INC, a Texas
Corporation and TB FOODS
USA, LLC,

    Plaintiffs,

v.                                      Case No: 2:17-cv-9-FtM-29NPM

AMERICAN MARICULTURE, INC.,
a Florida corporation,
AMERICAN PENAEID, INC., a
Florida corporation, and
ROBIN PEARL,

    Defendants.
_____

AMERICAN MARICULTURE, INC.,
a Florida corporation,

    Counter-Plaintiff,

v.

PB LEGACY, INC, a Texas
Corporation, KENNETH
GERVAIS, and RANDALL AUNGST,

    Counter/Third-Party
    Defendants.
_____

## **OPINION AND ORDER**

    This matter comes before the Court on counter/third-party defendants PB Legacy, Inc. and Kenneth Gervais' Motion for Partial Summary Judgment (Doc. #235) filed on October 30, 2019. Counter-plaintiff American Mariculture, Inc. filed a Response in

Opposition (Doc. #259) on November 26, 2019. For the reasons set forth below, the motion is granted in part and denied in part.

I.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198

F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**II.**

The relevant undisputed material facts are as follows: At all relevant times, Primo Broodstock, Inc. (Primo) operated a commercial shrimp breeding business[1] and American Mariculture, Inc. (AMI) operated a large indoor grow-out facility for shrimp in St. James City, Florida. Because Primo had great success in breeding shrimp with dramatically improved survival rates, it decided to market its disease-resistant shrimp on a global scale. This required more grow-out space than Primo's Texas facility provided,

---

[1] Primo Broodstock, Inc. was the original plaintiff in this case. However, on February 17, 2017, TB Foods, USA, LLC acquired ownership of Primo Broodstock, Inc. and changed its name to PB Legacy, Inc. (Doc. #86, ¶¶ 4-5.) While PB Legacy, Inc. is now a named plaintiff in this case, the Court refers to Primo Broodstock, Inc. where appropriate.

and brought Primo into discussions with AMI.  To facilitate these discussions, on December 11, 2014, Primo and AMI, through their corporate officers, executed a Mutual Nondisclosure Agreement (NDA).  The discussions proved fruitful, and on January 1, 2015, Primo entered into a three-year shrimp farming Agreement (the Grow-Out Agreement) with AMI.  (Doc. #20-2.)  Among other things, the Grow-Out Agreement provided that AMI would grow-out post-larva "Primo shrimp" for Primo at its facility, which Primo would then harvest and sell to third parties.  (Doc. #20-2, p. 3.)

In January of 2016, Primo and AMI became involved in a dispute regarding Primo's performance under the Grow-Out Agreement and AMI's billing.  At some point between January 1 and January 20, 2016, Kenneth Gervais (Mr. Gervais), the President of Primo, and Randall Aungst (Mr. Aungst), the Vice President of Primo, informed Robin Pearl (Mr. Pearl), the AMI Chief Executive Officer, that Primo had contracted to sell 100,000 Primo shrimp to a Chinese company, which would result in $750,000 in revenue for AMI pursuant to the Grow-Out Agreement.  (Doc. #80, pp. 3-4; Doc. #235, p. 3.)  The transaction never materialized, Primo did not harvest or sell the shrimp, and AMI never received payment.  AMI therefore notified Primo that it intended to harvest the Primo shrimp at its facility.  (Doc. #80, p. 4; Doc. #235, pp. 2-3.)  Primo filed suit against AMI in state court to enjoin AMI from harvesting its shrimp.  (Id.)

On January 28, 2016, Mr. Pearl and Mr. Aungst met to resolve the state-court litigation and their disputes under the Grow-Out Agreement. (Doc. #80, pp. 4-5; Doc. #235, p. 3.) As a result of that meeting, Mr. Pearl and Mr. Aungst signed a one-page, untitled handwritten document (the Term Sheet). (Id.) The Term Sheet contains nine numbered bullet points; three other unnumbered bullet points were also written on the page. In part, the Term Sheet stated that Primo had until April 30, 2016 to remove all of its shrimp from AMI's facility. (Doc. #80-2, p. 2.)

Primo did not remove the shrimp from AMI's facility by April 30, 2016. AMI retained the Primo shrimp and began breeding and selling the shrimp on the open market. (Doc. #80, p. 5; Doc. #235, p. 3.)

Primo filed this federal action against defendants AMI, American Penaeid, Inc. (API), and Mr. Pearl on January 9, 2017. (Doc. #1.) A nine-count Amended Complaint (Doc. #20) includes a claim that AMI breached both the NDA and the Grow-Out Agreement (Count I).

On April 6, 2017, defendants filed an Answer and Affirmative Defenses which included the defenses that both the NDA and the Grow-Out Agreement were no longer valid contracts because the Term Sheet had terminated those contracts, or represented an accord and satisfaction of both, or was a novation of both. (Doc. #81, p. 20, ¶¶ 1-3.)

5

Also on April 6, 2017, AMI filed a four-count Counterclaim (Doc. #80) against PB Legacy and non-parties Mr. Gervais and Mr. Aungst.[2]  In Count I, AMI seeks a declaratory judgment against Primo and Mr. Gervais delineating certain rights under the Term Sheet, which it refers to as a Settlement Agreement; in Count II, AMI sues Primo and Mr. Gervais for breach of contract (the Term Sheet/Settlement Agreement) for failing to remove the shrimp from AMI's facility by April 30, 2016; in Count III, AMI sues Primo, Mr. Gervais, and Mr. Aungst for fraudulent inducement for making false statements which induced AMI to continue to maintain Primo's shrimp broodstock at its expense instead of harvesting the shrimp; and in Count IV, AMI sues Primo in the alternative for breach of the Grow-Out Agreement (assuming that agreement was not terminated by the Term Sheet/Settlement Agreement) for failing to ship developed broodstock, failing to provide shrimp breeders, failing to implement a breeding program, and failing to make timely payment of amounts due.

### III.

Mr. Gervais now moves for summary judgment on Counts I and II, and both PB Legacy and Mr. Gervais move for summary judgment on Count III, of the Counterclaim.  As to Counts I and II, Mr.

---

[2] Technically, the claims against Mr. Gervais and Mr. Aungst would be third-party complaints.  See Fed. R. Civ. P. 14(a)(1).

Gervais argues he is entitled to summary judgment because he "cannot be held personally responsible" under the Term Sheet because he "did not sign the Term Sheet . . . in his individual capacity." (Doc. #235, p. 5.)  As to Count III, PB Legacy and Mr. Gervais argue they are entitled to summary judgment because (1) AMI failed to plead its fraudulent inducement claim with particularity; and (2) "there is no proof whatsoever that [Mr.] Gervais and [Mr.] Aungst's representations were false."[3]  (Doc. #235, p. 13.)  The Court will address each claim in turn.

**A.   Counts I and II:  Mr. Gervais' Personal Liability**

Count I of the Counterclaim seeks a declaratory judgment defining AMI's rights under the Term Sheet.  Specifically, AMI seeks a declaration "(i) that Point 8 of the Settlement Agreement required Primo to remove all of its animals from AMI's facilities by April 30, 2016; and (ii) that the Settlement Agreement establishes that the subject shrimp broodstock was the property of AMI as of the date of execution of the Settlement Agreement."  (Doc. #80, p. 7.)[4]  Count II asserts that Primo and Mr. Gervais

---

[3] PB Legacy and Mr. Gervais also argue they are entitled to summary judgment on Count III because AMI's claim is legally inapplicable because it "contradicts a subsequent written contract."  (Doc. #235, p. 12.)  For the reasons set forth *infra*, however, the Court need not reach that issue.

[4] For purposes of this motion, the Court need not concern itself with the seeming inconsistency of these two positions, i.e.,

7

breached the Term Sheet/Settlement Agreement by failing to remove the Primo shrimp from AMI's facility by April 30, 2016.

Mr. Gervais argues he is entitled to summary judgment on these claims because he cannot be held individually liable since he "did not sign the Term Sheet . . . in his individual capacity." (Doc. #235, p. 5.) Actually, Mr. Gervais did not sign the document at all, but Mr. Aungst did so, and added the words "on behalf of Ken Gervais" under his signature. AMI contends that "[t]he addition of 'on behalf of Ken Gervais' under Randall Aungst's signature was intentional and made it clear that Kenneth Gervais was personally bound to the [Term Sheet] through his agent Randall Aungst." (Doc. #259, p. 6.)

Initially, the Court notes that even if Mr. Gervais is deemed to have signed the Term Sheet in his personal capacity (discussed further below), there is no basis for him to be a proper defendant in the declaratory judgment action. AMI does not seek any declaration which affects Mr. Gervais in his personal capacity. Rather, it seeks a declaration that *Primo* was required to remove the shrimp by a certain date, a declaration which would not impact Mr. Gervais in a personal capacity. The only other declaration which AMI seeks is that the remaining shrimp broodstock was the

---

the shrimp were Primo's until April 30, 2016, and the shrimp were AMI's as of January 28, 2016.

property of AMI. Mr. Gervais has never claimed that the shrimp were his personal property, and he therefore has no adverse personal interest in this declaration either. Accordingly, Mr. Gervais in his personal capacity would not be a proper defendant under Count I, and judgment will be entered dismissing Count I as to Mr. Gervais in his personal capacity.

The breach of contract claim in Count II does require the Court to determine whether the signature binds Mr. Gervais in his personal capacity. If the contract[5] does not bind Mr. Gervais personally, he can have no liability for its alleged breach, and also is not a proper defendant in the Count I declaratory judgment action.

Under Florida law,[6] "[a] corporate officer may not be held individually liable on a contract unless he signed in an individual capacity . . . ." White-Wilson Med. Ctr. v. Dayta Consultants, Inc., 486 So. 2d 659, 661 (Fla. 1st DCA 1986). "[T]he mere signing of an agreement as a corporate officer does not impose personal liability on that officer . . ." Bugware, Inc. v. Williams, 188 So. 3d 49, 51 (Fla. 1st DCA 2016)(citation omitted). Rather, it

---

[5] In his motion, Mr. Gervais does not contest that the Term Sheet is a contract. Therefore, the Court assumes for purposes of this motion only that the Term Sheet is a binding contract.

[6] The parties agree that the Counterclaim's state law claims are governed by Florida law.

9

has long been Florida law that determining whether a corporate officer signed a contract in an individual or corporate capacity is determined by the content of the contract as a whole. Falsten Realty Co. b. Kirksey, 137 So. 267, 269-70 (Fla. 1931); MacKendree & Co., P.A. v. Pedro Gallinar & Associates, P.A., 979 So. 2d 973, 976 (Fla. 3d DCA 2008). Thus, a contract's meaning "is not to be gathered from any one phrase, but from a general view of the whole writing, with all of its parts being compared, used, and construed, each with reference to the others." Specialized Mach. Transp., Inc. v. Westphal, 872 So. 2d 424, 426 (Fla. 5th DCA 2004)(citation omitted).

The document at issue is a one-page untitled handwritten document containing nine-bullet points and three additional unnumbered bullet points. It is signed by Robin Pearl without any corporate title referenced, and by Mr. Aungst "on behalf of Ken Gervais," also without any corporate title referenced as to either Mr. Aungst or Mr. Gervais. Mr. Gervais does not dispute that Mr. Aungst signed as his agent, so Mr. Gervais is deemed to have signed the document, without any corporate title reference (as did Mr. Pearl). The absence of a corporate title is not dispositive of whether the parties intended personal liability, since the document as a whole and the context in which it was signed must be examined. Westphal, 872 So. 2d at 426(citation omitted).

The context of the untitled document includes the two prior written contracts between two corporate entities. In December, 2014, the Mutual Nondisclosure Agreement (NDA) was executed between AMI and Primo. (Doc. #20-1.) The NDA is a four-page typed document signed by Robin Pearl as "President" of AMI and by Kenneth Gervais as "Primo Broodstock, Inc." (Id. p. 4.) The first paragraph of the NDA states that the contract is between the two corporate entities, Primo and AMI. (Id. p. 2.) On January 1, 2015, AMI and Primo entered into the Grow-Out Agreement. (Doc. #20-2.) The Grow-Out Agreement is a four-page typed document signed by Robin Pearl as "President" of AMI and by Kenneth Gervais as "President" of Primo. Again, the first paragraph of the Grow-Out agreement states that it is between the corporate entities Primo and AMI. (Id. at p. 2.) None of the parties assert that personal liability attaches to either of these contracts, and the Court agrees.

The Term Sheet contains no language relating to individual duties or liabilities of either Mr. Gervais or Mr. Pearl, but instead only recites corporate actions to be performed by Primo and/or AMI. For instance, the crux of AMI's breach of contract claim is that "Mr. Gervais breached the [Term Sheet] by failing to remove all Primo animals from AMI facilities by April 30, 2016." (Doc. #80, p. 7.) However, the Term Sheet contains no language requiring *Mr. Gervais* to remove such animals from AMI's facility.

Instead, the Term Sheet states that "AMI will give Primo [until] April 30th, 2016 to remove all animals." (Doc. #20-2, p. 2.)

The Court finds no ambiguity in the Term Sheet as to Mr. Gervais' lack of individual liability because AMI's interpretation is not "reasonably inferred from the [language] of the" agreement. Commercial Capital Res., LLC v. Giovannetti, 955 So. 2d 1151, 1153 (Fla. 3d DCA 2007). The Term Sheet does not "contain any specific language subjecting [Mr. Gervais] to [individual] liability . . . and does not explicitly indicate an intention for [Mr. Gervais] to" personally guarantee the agreement. Porlick, Poliquin, Samara, Inc. v. Compton, 683 So. 2d 545, 547 (Fla. 3d DCA 1996).

Similarly, Mr. Pearl signed the Term Sheet as "Robin Pearl," without specifying his signing capacity, and the Term Sheet does not indicate that Mr. Pearl agreed to individual liability under the agreement. Although AMI argues otherwise, the Term Sheet contains no language evidencing an intent to ascribe separate meanings to Mr. Pearl's and Mr. Aungst's non-descriptive signature lines. The fact that AMI "ascribe[s] [such a] different meaning[] to the language" in the Term Sheet signature lines "does not mean the language is ambiguous." Kipp v. Kipp, 844 So. 2d 691, 693 (Fla. 4th DCA 2003)(citation omitted).

Because the Court finds no ambiguity in the Term Sheet based upon the signature lines, the Court must "give full force to the plain and clear language of the governing documents and not turn

to parol evidence to interpret the language." Lambert v. Berkley S. Condo. Ass'n, Inc., 680 So. 2d 588, 590-91 (Fla. 4th DCA 1996)(citations omitted).

For the foregoing reasons, assuming the Term Sheet is a valid contract, the Court finds that Mr. Gervais cannot be held individually liable under its provisions. Mr. Gervais is therefore entitled to summary judgment on Counts I and II. Whetstone Candy Co. v. Kraft Foods, Inc., 351 F.3d 1067, 1073 (11th Cir. 2003)(Absent limited exceptions not present here, "a contract does not bind one who is not a party to the contract, or who has not in some manner agreed to accept its terms." (citations omitted)(applying Florida law)).

**B.   The Fraudulent Inducement Claim (Count III)**

Count III asserts a claim for fraudulent inducement against PB Legacy and Mr. Gervais. It alleges that Mr. Gervais and Mr. Aungst, on behalf of Primo, falsely represented to AMI that Primo "held a valid contract for the sale of . . . shrimp broodstock to China," which would have "result[ed] in $750,000.00 in revenues to AMI." (Doc. #80, p. 8.) Count III further alleges that Mr. Gervais and Mr. Aungst made such false representations in order to "cause AMI to continue to maintain Primo's shrimp broodstock" at its facility. Id. Both PB Legacy and Mr. Gervais now move for summary judgment on Count III, arguing that (1) AMI failed to plead its claim with particularity; and (2) "there is no proof whatsoever

13

that [Mr.] Gervais and [Mr.] Aungst's representations were false." (Doc. #235, p. 13.)

### (1) Whether Count III Was Pled With Particularity

The "essential elements" of a claim for fraudulent inducement under Florida law are: "(1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment." Rose v. ADT Sec. Servs., Inc., 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008)(citation omitted). PB Legacy and Mr. Gervais assert that AMI failed to plead its fraudulent inducement claim with particularity because AMI has only made "self-serving and conclusory" allegations that Mr. Gervais and Mr. Aungst knew or should have known that their statements regarding a contract for the sale of shrimp broodstock in China were false. (Doc. #235, p. 10.) The Court disagrees.

Rule 9(b) of the Federal Rules of Civil Procedure requires that a party plead "the circumstances constituting fraud" with "particularity." Fed. R. Civ. P. 9(b). "Particularity means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." U.S. ex rel. Atkins v. McInteer, 470 F.3d

1350, 1357 (11th Cir. 2006)(citations and quotations omitted). In other words, a party alleging fraud must plead facts as to "the who, what, when where, and how: the first paragraph of any newspaper story." Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006)(citation and quotations omitted).

The Court finds that Count III meets the heightened pleading standard set forth in Rule 9(b). Count III asserts that in a meeting with Mr. Pearl on or about January 6, 2016, Mr. Gervais and Mr. Aungst, on behalf of Primo, falsely alleged that Primo had entered into a contract for the sale of shrimp broodstock in China, which would have resulted in $750,000 in revenue for AMI. (Doc. #80, p. 8.) Count III further alleges that Mr. Gervais and Mr. Aungst made such false representations in order to cause "AMI to continue to maintain Primo's shrimp broodstock at" its facility. (Id.) Thus, Count III sufficiently alleges facts as to "the who, what, when where, and how." Garfield, 466 F.3d at 1262 (citation and quotations omitted). Therefore, this portion of the motion is denied.

### (2) Falsity of Statement of Material Fact

As noted *supra*, to succeed on a claim for fraudulent inducement under Florida law, a plaintiff must establish that the defendant made "a false statement of material fact." Rose, 989 So. 2d at 1247(citation omitted). PB Legacy and Mr. Gervais argue they are entitled to summary judgment on Count III because "there

15

is no proof whatsoever that [Mr.] Gervais and [Mr.] Aungst's representations were false." (Doc. #235, p. 13.) The Court agrees.

In its Counterclaim, AMI alleges that Mr. Gervais and Mr. Aungst falsely represented that Primo had entered into a contract for the sale of 100,000 Primo shrimp broodstock in China. AMI also alleges in its Counterclaim that Primo "sent AMI a copy of the China sales agreement . . . ." (Doc. #80, p. 4.) While it is undisputed that this Primo shrimp broodstock sale in China never materialized, AMI has set forth no evidence establishing that Primo had not entered into the shrimp broodstock contract in China, or that the copy of "the China sales agreement" that Primo sent to AMI was fabricated, or that $750,000 would not go to AMI if the contract had been performed. Because AMI has not set forth evidence creating a disputed issue of material fact as to this element of its fraudulent inducement claim, PB Legacy and Mr. Gervais are entitled to summary judgment on Count III. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.").

Accordingly, it is now

**ORDERED:**

1. PB Legacy, Inc. and Kenneth Gervais' Motion for Partial Summary Judgment (Doc. #235) is **GRANTED IN PART AND DENIED IN PART**.

   (a) The motion is **granted** as to Count I, which is dismissed as to Kenneth Gervais in his personal capacity.

   (b) The motion is **granted** as to Count II, which is dismissed as to Kenneth Gervais in his personal capacity.

   (c) The motion is **denied** as to the assertion that Count III of the Counterclaim fails to satisfy the pleading standards.

   (d) The motion is **granted** as to Count III and judgment is entered in favor of PB Legacy, Inc. and Kenneth Gervais for failure of counterclaim plaintiff to present any evidence as to an essential element of fraudulent inducement.

2. The Clerk shall withhold the entry of judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___23rd___ day of January, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record