UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TB FOOD USA, LLC, a
Delaware Limited Liability
Company,

       Plaintiff,

v.                                     CASE NO. 2:17-cv-9-FtM-29NPM

AMERICAN MARICULTURE, INC.,
a Florida Corporation,
AMERICAN PENAEID, INC., a
Florida Corporation, and
ROBIN PEARL,

       Defendants.
_____

AMERICAN MARICULTURE, INC.,
a Florida Corporation,

       Counter-Plaintiff,

v.

PB LEGACY, INC., a Texas
Corporation, KENNETH GERVAIS,
and RANDALL AUNGST,

       Counter/Third-Party
       Defendants.
_____

**OPINION AND ORDER**

      This matter comes before the Court on Defendant American Mariculture, Inc.'s Motion for Partial Relief from the Court's Opinion and Order on Summary Judgment (Doc. #308) filed on June 8, 2020. Plaintiff filed a Response in Opposition (Doc. #311) on June 29, 2020, joined in by PB Legacy. (Doc. #312.) Defendants filed a

Reply (Doc. #315) on August 6, 2020, and on August 17, 2020, Plaintiff filed a Sur-Reply. (Doc. #318.)

**I.**

Pursuant to Fed. R. Civ. P. 60(b)(6), defendant American Mariculture, Inc. (AMI or defendant) seeks relief from a portion of the Court's Opinion and Order (Doc. # 306) resolving summary judgment motions.  Rule 60(b)(6) provides that a party may seek relief from a final judgment, order, or proceeding when there is "any reason that justifies relief." FED. R. CIV. P. 60(b)(6).  A Rule 60(b)(6) movant "must persuade the court that the circumstances are sufficiently extraordinary to warrant relief." Toole v. Bexter Healthcare Corp., 235 F.3d 1307, 1317 (11th Cir. 2000) (quoting Booker v. Singletary, 90 F.3d 440, 442 (11th Cir. 1996)). Moreover, "[t]he party seeking relief has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984).

The reason that justifies relief, AMI asserts, is that the summary judgment Opinion and Order sua sponte decided an issue not raised by any party without providing the notice and opportunity to be heard required by Rule 56(f).  Rule 56(f) provides in relevant part:

> **(f) Judgment Independent of the Motion**. After giving notice and a reasonable time to respond, the court may:

> **(1)** grant summary judgment for a nonmovant;
>
> **(2)** grant the motion on grounds not raised by a party; or
>
> **(3)** consider summary judgment on its own after identifying for the parties' material facts that may not be genuinely in dispute.

FED. R. CIV. P. 56(f). Where a legal issue has been "fully developed, and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided." Morningstar Healthcare, LLC v. Greystone & Co., Inc., 294 F. App'x 542, 544 (11th Cir. 2008) (quoting Artistic Entm't. Inc. v. City of Warner Robins, 331 F.3d 1196, 1202 (11th Cir. 2003)). Additionally, AMI asserts that even if the Court properly considered the issue, it reached the wrong result.

For the reasons set forth below, the motion is denied.

## II.

The Court's April 10, 2020 Opinion and Order set forth the underlying facts in some detail (Doc. #306, pp. 3-11), which the Court adopts and incorporates herein without repeating. As relevant to the current motion, three written documents are important: On December 14, 2014, the relevant parties entered into a Mutual Non-Disclosure Agreement (the NDA). On January 1, 2015, the relevant parties entered into a Grow-Out Agreement. On January 28, 2016, in an effort to resolve disputes which had arisen, Randal Aungst, the vice president of Primo, and Robin Pearl, AMI's Chief Executive Officer, signed a one-page, untitled

3

handwritten document (which the Court will herein refer to as the Settlement Term Sheet). (Doc. #20-3; Doc. #120, ¶ 11; Doc. #120-1, ¶ 10.)

AMI's current motion relates to Count I of the Amended Complaint, which alleges a breach of contract claim against AMI. Specifically, Count I asserts that the NDA and the Grow-Out Agreement were valid, binding and enforceable contracts which AMI breached. (Doc. #20, ¶¶ 83-97.) In its Answer, AMI denied that it had breached either contract. (Doc. #81, ¶¶ 83-97.) As part of its Defenses and Affirmative Defenses, AMI stated that the breach of contract count failed to state a claim because both the NDA and the Grow-Out Agreement "were terminated by the Settlement [Term Sheet]," and stated that the Settlement Term Sheet constituted a novation of both prior agreements. (Doc. #81, p. 20.)

AMI moved for summary judgment as to Count I, arguing in relevant part that it did not breach the NDA and the Grow-Out Agreement as alleged in Count I of the Amended Complaint because these contracts were no longer in effect. (Doc. #252, pp. 9-11; Doc. #20, pp. 21-23.) Specifically, AMI asserted the NDA was superseded by the Grow-Out Agreement, thereby extinguishing AMI's obligations under the NDA. (Doc. #252, pp. 9-10.) AMI then asserted that the Grow-Out Agreement was terminated by the Settlement Term Sheet, thus ending AMI's obligations under the Grow-Out Agreement.

4

(Id.) In support of these assertions, AMI pointed to explicit provisions of the Settlement Term Sheet and the parties' subsequent performance. The Settlement Term Sheet is reproduced below:

> ✓ ① $40k Now   Allow Release of up 4k Animals
> ✓ ② Workmans Comp — 7 days proof.
> ✓ ③ Health certificat for Animal Reseller — employee promotions
> ✓ ④ Indemnitys. (mutual Release About)
>   ⑤ 35k on or before 2/15/16 → Allow 6k Animals to ship. Before pmnt
> ✓ ⑥ Release Lawsuit + mutuale release. Terminate Agreet. Past Prest + Futur
>   ⑦ Ami will not Destroy Animals.
>   ⑧ Ami will give Prino April 30th 2016 to Remove all Animals.
>   ⑨ Cool on all future shipments
>     — Ami to provide Bill of Sale
>     — Hatches use only April 30 2016
>
> [signature] 1/28/2016
> [signature] 1-28-16
> On behalf of Ken Gervais

5

AMI argued that certain provision of the Settlement Term Sheet ("Release lawsuit. Terminate agreement.  Mutual release past, present + future") demonstrated that both parties understood the Settlement Term Sheet to constitute an "enforceable agreement" between them that was a "final and complete statement of terms" governing the parties' relationship.  (Doc. #252, pp. 10-11.)  Thus, according to AMI, its only surviving obligations were set forth in the Settlement Term Sheet.  (Id.)  Count I, however, did not allege that AMI breached the Settlement Term Sheet.  (Doc. #20, pp. 21-23.)  Thus, AMI argued, it was entitled to summary judgment on Count I.  (Doc. #252, pp. 9-11; Doc. #308, p. 3.)

Plaintiff's Corrected Joint Response in Opposition to Defendants' Motion for Final Summary Judgment asserted there were genuine issues of material fact regarding the Settlement Term Sheet, and that "[i]ndeed, a fair reading and review of the Term Sheet alone begs the question, is the Term Sheet an enforceable agreement?" (Doc. #273, p. 22.) Pursuing the theme that the Settlement Term Sheet was not an enforceable agreement, Plaintiff stated that "[a]lthough a general understanding may have existed between Primo [PB Legacy] and Defendants as to the termination of their business relationship in the January 2016 Term Sheet, the essential specific terms pertaining to the winding down of their relationship were not addressed or resolved."  (Id. at 23.) Addressing partial performance, Plaintiff stated "[t]he mere fact

6

the Parties partially performed some of the Term Sheet's provisions (the portions above the dividing line on the Term Sheet) is not dispositive on the issue of whether the Term Sheet itself is an enforceable agreement . . .." (Id.)  Finally, Plaintiff maintained that "[i]t is beyond reasonable dispute there is a plethora of documents and testimony in the record since the inception of the case demonstrating and underscoring the lack of mutual assent and clear divide as to what was actually agreed to under the Term Sheet." (Id.)

In the Opinion and Order (Doc. #306), the Court stated that "[e]ssentially, AMI asserts that the Term Sheet is a new contract which terminated the Grow-Out Agreement, while TB Food asserts that the Term Sheet is not a contact at all." (Id., p. 24.) The Court recognized that Defendant's assertion - that it was entitled to summary judgment as to Plaintiff's breach of contract (Count I) claim because the Settlement Term Sheet terminated the Grow-Out Agreement - was implicitly premised on the argument that the Settlement Term Sheet had to be an enforceable "subsequent agreement." (Id., pp. 22-23.)

The Court first determined that the Grow-Out Agreement did not supersede the NDA, finding each agreement addressed different subject matters. (Doc. #306, p. 22.) Accordingly, the Court denied Defendants' Motion for Final Summary Judgment as to the alleged breach of the NDA in Count I. (Id.)

7

The Court then rejected AMI's assertion that the Settlement Term Sheet is an "enforceable" contract which displaced AMI's duties under the Grow-Out Agreement. (Id., p. 28.) The Court found the Settlement Term Sheet did not include essential specific terms pertaining to the parties' purported agreement. (Id., pp. 22, 28.) Consequently, the Court found the Settlement Term Sheet did not supersede the Grow-Out Agreement as a "subsequent agreement" and therefore denied, in part, Defendants' Motion as to Count I. (Id., pp. 23-24, 28.)

Additionally, the Court considered whether the Settlement Term Sheet was a valid "modification" of AMI's responsibilities under the Grow-Out Agreement, which demonstrated that AMI did not breach the Grow-Out Agreement. (Doc. #306, pp. 23-24, 28-29.) The Court found disputed issues of material fact concerning this issue, and therefore denied the Defendants' Motion for Final Summary Judgment on that ground. (Id., pp. 28-29.)

### III.

Defendant argues that the Court went beyond the arguments of the parties and decided sua sponte that the Settlement Term Sheet does not constitute an enforceable agreement. (Doc. #308, pp. 2-7.) Defendant argues that no party affirmatively sought a determination that the Settlement Term Sheet was unenforceable. (Id., p. 2.) Rather, Defendant maintains its argument was that the Settlement Term Sheet superseded the Grow-Out Agreement and the

8

NDA, while Plaintiff simply argued there are genuine issues of material fact regarding whether the Term Sheet constitutes an enforceable agreement between the parties. (Id., pp. 2-3.) Because the grant of summary judgment was independent of the motion before the Court, defendant argues, the notice and response requirements of F. R. Cv. P. 56(f) were applicable but were not afforded by the Court. (Id., pp. 8-10.)

Plaintiff responds that the Court did not sua sponte grant summary judgment because it ruled on an issue that was a key "component of the arguments of the parties," that being, whether the Settlement Term Sheet was an enforceable agreement which superseded the NDA and Grow-Out Agreement. (Doc. #311, pp. 2-3.)

The Court did not violate Rule 56(f). Plaintiff and Defendant disagreed about whether the Settlement Term Sheet terminated AMI's obligations under the Grow-Out Agreement. If the Court was to resolve whether AMI was correct in its assertion that it no longer had obligations under the Grow-Out Agreement, it necessarily follows that the Court was required to resolve whether the Settlement Term Sheet was an enforceable "subsequent agreement." Thus, the Court ruled on a "component of the arguments made by both parties," by resolving the effect of the Settlement Term Sheet. Morningstar, 294 F. App'x at 544.

AMI had adequate notice and opportunity to argue the issue of whether the Settlement Term Sheet was a valid, enforceable

9

"subsequent agreement." Indeed, AMI raised the issue in its summary judgment motion, asserting that the Settlement Term Sheet "constituted an enforceable agreement between them." (Doc. #252, pp. 10-11.) Plaintiff responded that, at the very least, "there is a genuine issue of material fact as to whether the January 2016 Term Sheet constitutes an enforceable agreement," and that a "fair reading" of the Settlement Term Sheet called into question whether the Term Sheet was an enforceable contract. (Doc. #273, pp. 22-23.) Plaintiff emphasized that it believed the Settlement Term Sheet was missing essential specific terms, and that there was a "lack of mutual assent and clear divide as to what was actually agreed to under the Term Sheet." (Id., p. 23.) Defendant replied, setting forth certain facts and concluding:

> Based on the foregoing, a **preponderance of the evidence demonstrates that the Settlement Agreement [Term Sheet] was and is a valid agreement that released the parties from any prior claims, including Plaintiffs' Count I for breach of contract.**

(Doc. #282, pp. 6-7.)(emphasis added.)

AMI also characterized the Settlement Term Sheet as "a **novation** of both prior agreements." (Doc. #81, p. 20.) (emphasis added). A novation is defined as a "mutual agreement between the parties for the discharge of a valid existing obligation **by the substitution of a new valid obligation**." Aronowitz v. Health-Chem Corp., 513 F.3d 1229, 1237 (11th Cir. 2008) (emphasis added). Under Florida law, "[t]o prove the substitution of the new contract for

10

the old, four elements must be shown: (1) the existence of a previously valid contract; (2) the agreement of the parties to cancel the first contract; (3) the agreement of the parties that the second contract replace the first; and (4) the **validity of the second contract**." Thompson v. Jared Kane Co., 872 So. 2d 356, 361 (Fla. 2d DCA 2004) (emphasis added).

### IV.

In the alternative, Defendant argues the Court's finding that the Settlement Term Sheet is not a valid subsequent agreement was simply wrong, and is contradicted both by Plaintiff's allegations and the available evidence. (Doc. #308, pp. 10-19.) Defendant points to Plaintiff's descriptions of the Settlement Term Sheet in the initial and amended complaints. (Id., pp. 10-12.) The initial and amended complaints which state, in part:

> 28. On January 28, 2016, Primo and AMI signed a one-page handwritten list of terms by which they would settle their differences and disengage from one another (the "Term Sheet").
>
> 29. While not a model of clarity, the Term Sheet is fairly interpreted as providing that the parties would wind down operations and terminate their business relationship on April 30, 2016.

(Doc. #1, p. 9.)

> 48. The Term Sheet was intended to provide an outline for a more formal and detailed agreement by which the parties would wind down their relationship and terminate the Grow-Out Agreement on April 30, 2016, or 20 months earlier than originally contemplated by the Grow-Out Agreement. No further agreement was executed by the parties, however.

11

> 49. In the Term Sheet, (i) AMI and Primo agreed to terminate the Grow-Out Agreement early and provide mutual releases of one another, (ii) Primo agreed to dismiss the lawsuit, leave the premises by April 30, 2016, pay $40,000 up front and $35,000 three weeks later, and provide AMI certain labor and health related documentation requested by AMI, and (iii) AMI agreed it would not destroy any Primo broodshrimp prior to April 30, 2016.

(Doc. #20, pp. 10-11.) While these statements provide evidence of the parties' intent to "wind down their business relationship and terminate the Grow-Out Agreement" in the future, they do not change the fact that the Settlement Term Sheet was lacking essential terms to the parties' alleged agreement, and thus, as a matter of law, is not an enforceable contract. <u>Jacksonville Port Auth., City of Jacksonville v. W.R. Johnson Enters., Inc.</u>, 624 So. 2d 313, 315 (Fla. 1st DCA 1993)("[I]f there has been no agreement as to essential terms, an enforceable contract does not exist.").

The Court found the form and substance of the Settlement Term Sheet were inconsistent with "the degree of formality attending similar contracts" intended to settle complex business disputes and litigation, and to terminate a contractual relationship involving hundreds of thousands of dollars. (Doc. #306, pp. 25-26.) In sum, the Court concluded "it is not reasonable to believe that the one-sheet handwritten, sometimes cryptic note sets forth all terms to terminate a contract with a business which just ten

12

months later sold for over $2.7 million." (Id., p. 26.) The Court continues to be of that view.

Additionally, the Court examined "the relationship of the parties" in finding that the Settlement Term Sheet lacked essential terms of a termination agreement. (Doc. #306, pp. 26-27.) Given the parties' business history of executing two written agreements (the NDA and Grow-Out Agreement), as compared to the sparse language of the Term Sheet, the Court concluded this omission provided further evidence that the Term Sheet was lacking one of the most essential terms to the parties' alleged agreement. (Id., pp. 26-27.) It is well-settled under Florida law, "where the essential terms of an agreement remain open, subject to future negotiation, there can be no enforceable contract." See CSX Transp., Inc. v. Prof'l Transp., Inc., 467 F. Supp. 2d 1333, 1340 (M.D. Fla. 2006) (quoting Suggs v. DeFranco's, Inc., 626 So. 2d 1100, 1101 (Fla. 1st DCA 1993)).

Robin Pearl's February 7, 2017 affidavit and Randall Aungst's January 26, 2017 and February 28, 2017 affidavits do not remedy the omission of essential terms in the Settlement Term Sheet. Similarly, the newly submitted email exchange between Plaintiff's counsel, Roger Miller, and Robin Pearl (Doc. #308-1), even if properly considered, does not change the result.[1] Indeed, on

---

[1] Notably, Defendants provided no reason as to why the January 29, 2016 email between Mr. Miller and Mr. Pearl was not provided

13

January 29, 2016, just one day after execution of the Settlement Term Sheet, Mr. Miller stated in an email to Mr. Pearl "I understand we are close to an agreement," and Mr. Miller stated that he was working on "draft revised agreements." (Doc. #308-1, p. 3.) Subsequent emails show the two individuals continue to bicker over the terms of their "agreement." (Doc. #308-1, pp. 1-7.) If anything, Mr. Pearl and Mr. Miller's email exchange further demonstrates the parties were not in agreement about the terms of the Settlement Term Sheet.

Defendant also argues that the Settlement Term Sheet is a binding contract because of the parties performance under it, such as AMI allowing the release of Primo's animals and granting Plaintiff until April 30, 2016 to remove all animals, and Plaintiff, on the other hand, paying $40,000.00 to AMI, along with providing proof of workers' compensation insurance and health certificates for animals. (Doc. #308, pp. 17-19); See Stouffer Hotel Co. v. Teachers Ins. Annuity Ass'n, 737 F. Supp. 1553, 1559 (M.D. Fla. 1990) (holding that several factors, including whether there has been partial performance, must be evaluated to determine whether a preliminary commitment should be considered binding). Partial performance, however, is just one aspect in determining

---

earlier. It is noted that a motion for reconsideration should not be used to "present evidence that could have been raised prior to the entry of judgment." Bey v. Carrington Mortg. Servs., LLC, 805 F. App'x 981, 984 (11th Cir. 2020).

whether a contract exists and is binding; see also Midtown Realty, Inc., 712 So. 2d at 1252 (also considering the type of contract, the relationship of the parties, and degree of formality attending similar contracts in determining whether a contract encompasses all essential terms and is therefore binding). The Court continues to find that the parties' performance under the Term Sheet cannot overcome the deficiencies of the purported agreement as "neither a contract nor any of its provisions come into existence" when essential terms are lacking. Gibson v. Courtois, 539 So. 2d 459, 460 (Fla. 1989).

Accordingly, it is hereby

**ORDERED**:

Defendants' Motion for Partial Relief (Doc. #308) from the Court's Opinion and Order on Summary Judgment is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this ___31st___ day of March 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record

15