UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TB FOOD USA, LLC, a
Delaware Limited Liability
Company,

    Plaintiff,

v.                                  CASE NO. 2:17-cv-9-FtM-29NPM

AMERICAN MARICULTURE, INC.,
a Florida Corporation,
AMERICAN PENAEID, INC., a
Florida Corporation, and
ROBIN PEARL,

    Defendants.
_____

AMERICAN MARICULTURE, INC.,
a Florida Corporation,

    Counter-Plaintiff,

v.

PB LEGACY, INC., a Texas
Corporation, KENNETH GERVAIS,
and RANDALL AUNGST,

    Counter/Third-Party
    Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on Defendants American Mariculture, Inc., American Penaeid, Inc. and Robin Pearl's Motion to Dismiss Count IV of the Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. #345) filed on January 4, 2021. Plaintiff TB Food USA, LLC and Counter/Third-Party Defendant PB

Legacy, Inc. filed a Response in Opposition (Doc. #346) on January 18, 2021. For the reasons set forth below, the motion is denied.

I.

This matter concerns ongoing disputes between Plaintiff TB Food, USA, LLC (Plaintiff or TB Food), Counter and Third-Party Defendant PB Legacy, Inc. (PB Legacy), and Defendants American Mariculture, Inc. (AMI), American Penaeid, Inc. (API), and Robin Pearl (collectively, the Defendants) that arose out of a business relationship between Primo Broodstock, Inc. (now known as PB Legacy, Inc.) and AMI.[1] (Doc. #1, ¶¶ 20-22.) The business relationship involved AMI providing a large indoor grow-out facility in Florida for Primo's commercial shrimp breeding business. (Id.)

An Amended Complaint filed on January 26, 2017, included a claim that AMI engaged in trade secret misappropriation under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 (Count IV). (Doc. #20, ¶¶ 127-145.) Defendants assert that this court lacks subject matter jurisdiction over Count IV because the alleged misappropriations occurred prior to the May 11, 2016 effective date of the DTSA. Plaintiff and PB Legacy respond that the Amended Complaint, pleadings, and the evidentiary record before the Court

---

[1] On February 17, 2017, TB Food purchased substantially all of Primo Broodstock, Inc.'s assets, and after the sale, Primo caused its name to be changed to PB Legacy, Inc. (Doc. #86, ¶¶ 4-5.)

2

show that unlawful disclosure and use of Plaintiff's trade secrets (broodstock shrimp) occurred after May 11, 2016 and continue to this day. (Doc. #346, pp. 2-4.)  Additionally, Plaintiff argues that even if a trade secret was acquired or developed prior to May 11, 2106, Plaintiff may recover under the DTSA where use or disclosure of a trade secret occurred after DTSA's effective date. (Id., pp. 7-8.)

## II.

"Federal courts exercise limited subject matter jurisdiction, empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress." Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). "When a plaintiff files suit in federal court, [he or] she must allege facts that, if true, show federal subject matter jurisdiction over her case exists." Travaglio v. Am. Exp. Co., 735 F.3d 1266, 1268 (11th Cir. 2013) (citing Taylor, 30 F.3d at 1367). A "nonfrivolous allegation of jurisdiction generally suffices to establish jurisdiction upon initiation of a case." Perry v. Merit Systems Protection Bd., 137 S.Ct. 1975, 1984 (2017). Jurisdiction "is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [a plaintiff] could actually prevail." Bell v. Hood, 327 U.S. 678, 682 (1946). Jurisdiction may be defeated, however, where the alleged claim clearly appears to be "immaterial,

[or] made solely for the purpose of obtaining jurisdiction, or where the claim is wholly insubstantial and frivolous." Id. at 682-83. "A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, . . .." Kontrick v. Ryan, 540 U.S. 443, 455 (2004). Defendants make a facial challenge to Count IV, asserting Plaintiff's DTSA claim alleges the trade secret misappropriation occurred in April 2016, prior to the DTSA's effective date, and therefore cannot state a cause of action.

### III.

"To state a claim under the DTSA, . . . a plaintiff must allege facts showing (1) that the plaintiff possessed a 'trade secret,' (2) that the plaintiff "took reasonable measures" to protect the trade secret, and (3) that the defendant used or disclosed the trade secret despite a duty to maintain secrecy." Prov Int'l, Inc. v. Rubens Dalle Lucca, No. 8:19-cv-978-T-23AAS, 2019 U.S. Dist. LEXIS 187060, at *6 (M.D. Fla. Oct. 29, 2019). Section 1839(3) broadly defines a "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering information . . . " that (1) the owner "has taken reasonable measures to keep" secret and (2) that derives "independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure

or use of the information."[2] 18 U.S.C. § 1839(3)(A), (B); see Fla. Beauty Flora Inc. v. Pro Intermodal L.L.C., No. 20-20966-CIV-ALTONAGA/Goodman, 2021 U.S. Dist. LEXIS 92178, at *11 (S.D. Fla. May 14, 2021). A misappropriation occurs when: "(1) a person acquires the trade secret while knowing or having reason to know that he or she is doing so by improper means; (2) a person who has acquired or derived knowledge of the trade secret discloses it without the owner's consent; or (3) when a person who has acquired or derived knowledge of the trade secret uses it without the owner's consent." Fla. Beauty Flora Inc., 2021 U.S. Dist. LEXIS 92178, at *11-12. In other words, "[t]he DTSA contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." Id. The DTSA applies to "any misappropriation of a trade secret ... for which any act occurs on or after the date of the enactment of [the] Act." Fin. Info. Techs., Inc. v. iControl Sys., United States, LLC, No. 8:17-cv-190-T-23MAP, 2018 U.S. Dist. LEXIS 118315, at *10 (M.D. Fla. June 12, 2018) (quoting Pub. L. No. 114-153, § 2(e), 18 U.S.C. § 1836).

---

[2] In a previous motion for summary judgment, Defendants challenged whether Primo's shrimp broodstock fell under the DTSA's statutory definitions of "trade secret." (Doc. #306, pp. 35-36.) This Court denied Defendants' motion as to Count IV, along with Counts V through VIII. (Id., pp. 36-39.)

5

**IV.**

Here, the Amended Complaint alleges that:

> 138. All of Primo's trade secrets have independent economic value, are confidential, are not publicly known or available, and are proprietary to Primo.
>
> 139. Primo provided its trade secrets to AMI and Pearl pursuant to the NDA and Grow-Out Agreement solely for the limited purposes contemplated by those agreements.
>
> 140. AMI and Pearl knew they were subject to a duty to maintain the secrecy of and limit the use of Primo's trade secrets.
>
> 141. Primo has enacted a number of measures to guard its proprietary methods and to guard against theft.
>
> 142. Defendants have misappropriated Primo's trade secrets **following** the **termination of the Grow-Out Agreement on April 30, 2016** by acting in concert to effectuate a scheme involving (i) the continuing conversion of all live Primo breeder shrimp in their possession, which are exclusive intellectual property of Primo, (ii) the aggressive breeding of hundreds of thousands of Primo's breeder shrimp from the initial genetic strains received by AMI under the Grow-Out Agreement, (iii) the bringing of the Primo breeder shrimp to market as quickly possible, particularly in China and other East Asian countries, and (iv) the enlisting of some of the largest shrimp breeders and distributors in China and the Far East to swiftly implement this scheme.
>
> 143. Defendants' acts of misappropriation have been taken with knowledge that Primo's trade secrets are proprietary to it and that they were disclosed to and shared with AMI and Pearl pursuant to the NDA and Grow-Out Agreement, which established AMI's and Pearl's duty to maintain the secrecy of Primo's trade

6

>     secrets and limit their use only to actions in
>     furtherance of their commercial relationship
>     with Primo.

(Doc. #20, ¶¶ 138-43)(emphasis added).

Contrary to Defendants argument, the Court does not find that paragraph 142 implies that all misappropriation occurred on April 30, 2016, or prior to May 11, 2016. Rather, it only states that misappropriation occurred *following* April 30, 2016, the termination of the Grow-Out Agreement. Indeed, the Amended Complaint provides numerous instances of misappropriation, all of which occurred after May 11, 2016.  (See Doc. #346, p. 4.)  For example, on May 25, 2016, defendant Robin Pearl, President of API, posted a message on *Yahoo!* stating that (1) API terminated its relationship with Primo;[3] (2) that the Primo shrimp are now owned by API and have been renamed "API High Vigor Animals"; (3) API has about 50,000 fully mature breeders in the 30 to 45 gram range available for immediate shipment; and (4) that API's genetic program is already hard at work selecting future generations and will be able to supply next generation animals starting in 2 months, and for many years thereafter. (Doc. #20, ¶¶ 59-61; Doc. #20-4, pp. 2-4; Doc. #346, p. 4.) Likewise, the Amended Complaint asserts that misappropriation occurred in September 2016, after Primo sent AMI and Mr. Pearl a cease and desist letter on August

---

[3] Plaintiff maintains that API never had a relationship with Primo. (Doc. #20, ¶ 60.)

30, 2016. AMI's attorney responded on September 16, 2016, denying that Primo had any rights in the animals left behind with AMI by stating that "[s]ince . . . [Primo] made no effort to take delivery of any of the animals in my client's stock tanks . . . by April 30, 2016, those animal[s] became my client's to sell." (Doc. #20, ¶¶ 62-63; Doc. #20-6, pp. 2-3; Doc. #346, p. 4.) Finally, the Amended Complaint alleges that in October 2016, Defendants and their agents in China solicited attendance by shrimp farmers and made a presentation, informing attendees that after April 30, 2016, AMI had acquired and now owned any of Primo's animals left on AMI premises and that AMI "would be able to do whatever we wanted to do with them." (Doc. #20, ¶¶ 64-66; Doc. #346, p. 4.) This misappropriation is alleged to have continued on January 10, 2017, when API shipped 1,940 Primo shrimp from its Florida facility to a China-based company named "Primo (China) Broodstock Co., Ltd." (Doc. #20, ¶¶ 74-75; Doc. #346, p. 4.) Taking these allegations in the Amended Complaint as true, Plaintiff has provided sufficient factual allegations to plausibly demonstrate misappropriation of trade secrets on and after May 11, 2016. See Fla. Beauty Flora Inc., 2021 U.S. Dist. LEXIS 92178, at *11-12.

Any alleged misappropriation occurring between the April 30, 2016 termination of the Grow-Out Agreement and prior to the DTSA's enactment on May 11, 2016, cannot be the basis for liability under the DTSA since the statute does not apply retroactively. See Fin.

Info. Techs., Inc., 2018 U.S. Dist. LEXIS 118315, at *10; see also Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994) (holding that "absent clear congressional intent," courts must presume that statutes do not operate retroactively). Viable claims may exist, however, for Defendants' disclosure or use of trade secrets acquired before May 11, 2016. See, e.g., Agilysys, Inc. v. Hall, 258 F. Supp. 3d 1331, 1348-49 (N.D. Ga. 2017)(finding that where alleged misappropriation occurred prior to May 11, 2016, the plaintiff's DTSA claims were not barred since the defendant continued to used, possess and disclose plaintiff's proprietary information); Brand Energy & Infrastructure Servs. v. Irex Contr. Grp., No. CV 16-2499, 2017 U.S. Dist. LEXIS 43497, 2017 WL 1105648, at *4 (E.D. Pa. Mar. 24, 2017) (finding that the plaintiff could pursue its DTSA claim because the amended complaint alleged multiple uses of the trade secrets that continued to occur after the DTSA's effective date); Adams Arms, LLC v. Unified Weapon Sys., No. 8:16-cv-1503-T-33AEP, 2016 U.S. Dist. LEXIS 132201, at *17-19 (M.D. Fla. Sep. 27, 2016) (recognizing that under the DTSA, a party may have a viable claim even where the misappropriation occurs both before and after DTSA's effective date).

　　The Amended Complaint, as well as the record, does not establish that Count IV is immaterial, or made solely to obtain federal jurisdiction, or is wholly insubstantial or frivolous. See

Bell, 327 U.S. at 682-83. Therefore, the Court has jurisdiction over Count IV, and the Court denies the motion to dismiss.

Accordingly, it is hereby

**ORDERED**:

Defendants' Motion to Dismiss Count IV of the Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. #345) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __7th__ day of October, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record