**UNITED STATES DISTRICT
COURT MIDDLE DISTRICT OF
FLORIDA FORT MYERS
DIVISION**

TB FOOD USA, LLC, a Delaware
limited liability company,

Plaintiff,

v.                                                          CASE NO. 2:17-cv-00009-FtM-JES-UAM

AMERICAN MARICULTURE, INC., a
Florida corporation, AMERICAN PENAEID,
INC., a Florida corporation, and ROBIN
PEARL,

Defendants.

_____/

AMERICAN MARICULTURE, INC., a
Florida corporation,

Counter-Plaintiff, v.

PB LEGACY, INC., a Texas
corporation.

Counter and Third-Party Defendant.

_____/

**<u>PLAINTIFF TB FOOD USA, LLC'S BENCH BRIEF ON THE
ADMISSIBILITY OF TB FOOD'S DEMONSTRATIVE EXHIBITS</u>**

As the Court is aware, Plaintiff TB Food USA, LLC's live pleadings include claims that

AMI breached both the NDA and the Grow-Out Agreement, as well as claims for defamation;

trade secret misappropriation under 18 U.S.C. §1836 and the Florida Trade Secret Act; and unfair

competition under 15 U.S.C. § 1125 and Florida Common Law. In turn, AMI filed a Counterclaim

against PB Legacy and certain non-parties that have since been dismissed. AMI also seeks a

declaratory judgment delineating certain rights under the Term Sheet and further alleges breach of

1

contract (the Term Sheet) for failure to remove Primo shrimp from AMI's facility by April 30, 2016, fraudulent inducement, and, in the alternative, breach of the Grow-Out Agreement.

Given the various parties, claims, counterclaims, defenses, expert and financial evidence, and the sheet number of documents that speak to the proofs in this case, demonstrative aides are essential is assisting the jury in understanding the evidence to be presented to them during trial. To this end, TB Food seeks to utilize certain demonstrative aids and exhibits at trial, specifically during its opening statement. Demonstrative exhibits not offered as exhibits were produced to Defendants on October 31, 2021. Demonstrative exhibits consisting of certain TB Food trial exhibits, which Defendants produced during discovery, have been objected to by Defendants only on the basis of relevance or hearsay.

### A.  Legal Standard Generally

Federal Rules of Evidence 611 and 1006 address the admission of demonstrative exhibits.  Summaries intending to educate a jury are admitted under Rule 611, which affords the courts "control over the mode … [of] presenting evidence."  Fed. R. Evid. 611. Because such summaries are not substantive evidence, courts often allow more discretion to a party in presenting its unilateral view of the evidence. "For instance, such exhibits may include witnesses' conclusions or opinions or reveal inferences drawn in a way that would assist the jury."  *United States v. White*, 737 F.3d 1121, 1135 (7th Cir. 2013).

Under Rule 1006, summary exhibits can be substituted for actual evidence "to prove the content of voluminous writings … that cannot be conveniently examined in court."  Fed. R. Evid. 1006.  Four elements for admission of such evidence are:

(1) the summarized material must be "voluminous" and not conveniently subject to examination in court;

(2) the summary or chart must be an accurate compilation of the voluminous records;

(3) the records summarized must be otherwise admissible into evidence; and

(4) the underlying documents must be made available to the opposing party for examination and copying.

*United States v. Tsoa*, 2013 U.S. Dist. LEXIS 165895, *11 (E.D. Va. Nov. 20, 2013) (citing *United States v. Janati*, 374 F.2d 263, 272 (4th Cir. 2004)).

While the volume of documents themselves has been found to warrant a demonstrative summary (see *United States v. White*, 737 F.3d 1121 (7th Cir. 2013)), Courts have also likened a case's complexity with volume. "The complexity and length of the case as well as the number of witnesses and exhibits is also considered in determining whether summary evidence is appropriate." *Tsoa*, 2013 U.S. Dist. LEXIS 165895, at *12 (internal quotations omitted)(The court admitted a summary exhibit under Rule 1006 of underlying records totaling less than 100 pages, noting that "while the volume of material is not overwhelming, the evidence is certainly complex.")

The instant case has been ongoing for over four years. Numerous parties, non-parties, and experts have been deposed, many of which will present at trial either live or by deposition. Thousands of pages of documents have been exchanged through the course of discovery, hundreds of which will be utilized during trial. These records will contain agreements and e-mails and audits and industry practices and financial records, for instance, that the jury will need assistance in navigating. While most of the evidence will also be presented during trial, an explanation and/or summary of what evidence TB Food believes to be at the crux of its case will assist the jury in understanding the more complex evidence that is forthcoming.

The requirement to make the records underlying any summary, including charts, graphs, and diagrams, available at a reasonable time and place has been satisfied when the records are produced even days before trial. *United States v. Isaacs*, 593 F.3d 517, 527-28 (7th Cir. 2010); *see*

3

*also Valjean Mfg. v. Michael Werdiger, Inc.*, 2007 U.S. App. LEXIS 20475, *4 (2d Cir. Aug. 27, 2007). Here, the 2019 Market Shares chart for Broodstock Companies that TB Food intends to use at trial was included in a published industry article, which was produced to Defendants during the course of discovery. No objection has yet been raised to the use of this document. As for the underlying records used to prepare the spreadsheet of AMI's financial data that TB Food intends to use during its opening, such records were produced by the Defendants themselves. No objection has yet been raised to the use of this document. However, Defendants have objected to the underlying financial on the basis of relevancy. Notably, Rule 1006 does not mandate the production of the summary itself before trial. *See Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 30 (1st Cir. 2011) ("Rule 1006 provides that only the underlying documents, not the summaries themselves, must be produced to the opposing party.").

**B.  TB Food's Demonstratives are Relevant**

Demonstrative evidence must be relevant under Rules 401 and 402. Whether to allow the use of a demonstrative exhibit is a matter within the trial court's discretion. The general test for admitting demonstrative evidence is whether it will help the jury understand some relevant issue in the case. To set the foundation for the use of demonstrative evidence, TB Food need only show that the (1) the demonstrative exhibit relates to a piece of admissible substantive proof; (2) the exhibit fairly and accurately reflects the substantive proof; and (3) the exhibit is sufficiently illustrative to potentially assist the jury.

Demonstrative exhibits that summarize underlying objective facts are rarely excluded.  In *United States v. Chhibber*, 741 F.3d 852 (7th Cir. 2014), the court of appeals affirmed the district court's admission of four summary charts of defendant's medical records finding that "the charts accurately portrayed the data culled from his records, and were not misrepresented to

4

the jury as anything other than what they actually were." *Id.* at 856. Similarly, the Seventh Circuit Court of Appeals affirmed the admission of a "representative" summary chart where "it simply catalogued instances of objective characteristics and added those instances together to create totals." *United States v. White*, 737 F.3d 1121, 1136 (7th Cir. 2013).

Here, TB Foods seeks to use the following as demonstratives during its opening arguments:

i.      Shrimp Lifecycle diagram;
ii.     Spreadsheet showing AMI/API's financials;
iii.    Plaintiff's Trial Exhibit 206;
iv.     Plaintiff's Trial Exhibit 208;
v.      Plaintiff's Trial Exhibit 260;
vi.     Plaintiff's Trial Exhibit 265; and
vii.    Plaintiff's Trial Exhibit 268.

To comply with the foundational requirements of the rules of evidence governing demonstrative tools, TB Food also intends to reference, but not introduce, the following exhibits during its opening:

i.      Plaintiff's Trial Exhibit 229;
ii.     Plaintiff's Trial Exhibit 230;
iii.    Plaintiff's Trial Exhibit 231;
iv.     Plaintiff's Trial Exhibit 232;
v.      Plaintiff's Trial Exhibit 233;
vi.     Plaintiff's Trial Exhibit 234;
vii.    Plaintiff's Trial Exhibit 235;
viii.   Plaintiff's Trial Exhibit 236;
ix.     Plaintiff's Trial Exhibit 237;
x.      Plaintiff's Trial Exhibit 238;
xi.     Plaintiff's Trial Exhibit 239;
xii.    Plaintiff's Trial Exhibit 240;
xiii.   Plaintiff's Trial Exhibit 241;
xiv.    Plaintiff's Trial Exhibit 242;
xv.     Plaintiff's Trial Exhibit 243;
xvi.    Plaintiff's Trial Exhibit 391;
xvii.   Plaintiff's Trial Exhibit 392;
xviii.  Plaintiff's Trial Exhibit 414 (produced on 10/31/2021);
xix.    Plaintiff's Trial Exhibit 415 (produced on 10/31/2021);
xx.     Plaintiff's Trial Exhibit 416 (produced on 10/31/2021); and
xxi.    Plaintiff's Trial Exhibit 417 (produced on 10/31/2021).

These demonstrative items and/or the documents underlying the same have been improperly objected to on the basis of relevancy for the following reasons, to-wit:

*Ex. 206      Letter to R. Pearl/API from Aquaculture Pathology Lab, dated April 12, 2016.*

This document was produced by the Defendants and is relevant to TB Food's breach of the GOA and NDA. It shows that Pearl sent Plaintiff's broodstock to the University of Arizona for challenge testing (aka "use") without Plaintiff's permission.

*Ex. 208      E-mail chain between R. Pearl and BIM dated March 21,2016 and April 18-19, 2016.*

This document was produced by the Defendants and is relevant to TB Food's breach of the GOA and NDA. It shows that Pearl was selling Primo animals without Plaintiff's permission and prior to April 30, 2016, when Defendants have alleged the shrimp were abandoned.

*Ex. 265      E-mail chain between R. Pearl and R. Pimentel regarding Breeder Contract for Brazil, dated June 25, 2017. (partially in Spanish).*

This document was produced by the Defendants and is relevant to TB Food's breach of the GOA and NDA, as well as Plaintiff's trade secret claim. This document constitutes a Party admission that the Primo shrimp germplasm and genetics are highly valuable and secret and analogizes them to a formula like Coca-Cola. In this e-mail, Pearl also discusses the significance of a genetic lock and the significance of being able to unlock family lines. Therefore, this exhibit is relevant to address Defendants' defense that Primo did not have a trade secret whereby no agreement could be violated.

*Ex. 268      Draft Sanitary Audit of AMI Hatchery in Miami, USA, dated November 2017.*

This document was produced by the Defendants and is relevant to TB Food's breach of the GOA and NDA, as well as Plaintiff's trade secret claim. This document constitutes a Party admission that API was founded at or around the time AMI devised its plan to take the Primo animals and that Defendants then used Primo's genetic lines by soliciting Dr. Franklin Perez's

expertise in genetics to unlock the family lines that Plaintiff had locked in pairs to protect its trade secret.

*Ex. 260     E-mail chain among R. Pearl, J. Beck, W. Douglas concerning API meeting with Berezan Shrimp Co., dated August 3-31, 2016.*

This document was produced by the Defendants and is relevant to TB Food's breach of the GOA and NDA, as well as Plaintiff's trade secret claim. This document (1) constitutes a Party admission that API is the only company that has SPF APE stocks available and (2) shows that Defendants took active steps to unlocked the Primo families because Primo's germplasm is unique such that simply crossing API shrimp (Primo descendants) with other stock does not yield the same results.

In addition, Defendants seek to exclude the following financial exhibits that underly the summary spreadsheet sought to be introduced by TB Food during its opening statement for the purpose of assisting the jury in understanding Defendants' financial position before they committed the acts complained of in this litigation and thereafter:

Ex. 229        AMI Balance Sheet as of December 31, 2017.

Ex. 230        AMI Balance Sheet as of December 31, 2018.

Ex. 231        AMI Balance Sheet as of June 30, 2019.

Ex. 232        AMI P&L for 2016.

Ex. 233        AMI P&L for 2017.

Ex. 234        AMI P&L for 2018.

Ex. 235        AMI P&L for January-June 2019.

Ex. 236        API P&L for 2016.

Ex. 237        API P&L for 2017.

Ex. 238        API P&L for 2018.

| Ex. 239 | API P&L for January-June 2019. |
| Ex. 240 | API Commercial Invoice dated November 6, 2017. |
| Ex. 241 | API Commercial Invoice dated November 6, 2017. |
| Ex. 242 | API Commercial Invoice dated May 21, 2018. |
| Ex. 243 | API Commercial Invoice dated March 22, 2018. |
| Ex. 391 | AMI Consolidated P&L 2016-2019 |
| Ex. 392 | AMI Consolidated Balance Sheet-2016-2019 |
| Ex. 414 | AMI Consolidated P&L (August 2018-July 2019) |
| Ex. 415 | AMI Consolidated P&L (August 2019-July 2020) |
| Ex. 416 | AMI Consolidated P&L (August 2020-July 2021) |
| Ex. 417 | AMI Consolidated Balance Sheet as of July 31, 2020 |

Notably, these financial documents were produced by the Defendants. They speak directly to the financial motivation behind Defendants' breach of the NDA, breach of the GOA, their misappropriation of trade secrets, their unfair competition. AMI was formed in 2013 and was operating at a loss until 2017. The foregoing financials and the summary derived from the same will assist the jury in understanding the real numbers at stake in this litigation and the resulting loss sustained by Plaintiff. Without such demonstration, the jury will likely be confused by how TB Foods has quantified Defendants' unjust enrichment, disgorgement, lost profits, and lost market share. Therefore, they are certainly relevant to the matters at issue in this litigation. In *Tsoa*, 2013 U.S. Dist. LEXIS 165895, at *12, the court admitted a summary exhibit under Rule 1006 of underlying records totaling less than 100 pages, noting that "while the volume of material is not overwhelming, the evidence is certainly complex."

In consideration of the forgoing, Defendants' objections to the foregoing exhibits, demonstrative and otherwise, on the basis of relevance lack merit and should be overruled.

**C.  TB Food's Exhibit 390 is not Hearsay.**

While it is true that a demonstrative summary exhibit cannot summarize or include inadmissible hearsay, the hearsay exceptions contained in Rules 803 – 804 are equally applicable when dealing with demonstrative exhibits. *See e.g., United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999). ("The obligation of establishing the applicability of a hearsay exception for [summarized] records falls upon the government as the proponent of the evidence.").

*Ex. 390     SPF L. vannamei broodstock Report by www.skretting.com (2020)*
https://shrimpinsights.com/about-willem-van-der-pijl-0
https://shrimpinsights.com/blog/broodstock-my-20202021-market-review-and-outlook

This exhibit is a report prepared by WILLEM VAN DER PIJL in which statements and admissions by Robin Pearl were recorded. The report captured statements made by Pearl about API's market share in 2019, among other things.  It is a recorded recollection and present sense impression of Pearl relating to claims at issue in this litigation. It is not hearsay because Pearl will be present at trial to testify. The use of this report in opening statements will simply serve as a summary of the evidence to come from the witness. To quell Defendants' objection, an appropriate remedy would be for the Court to instruct the jury that opening statements are not evidence.

In consideration of the foregoing, TB Food respectfully requests that the Court sustain its objections and exclude the Defendants' exhibits accordingly, and for such other and further relief to which TB Food may be entitled.

Respectfully Submitted,

By: */s/ Brian M. Gargano*

Brian M. Gargano (admitted *pro hac vice*)
Nguyen and Chen LLP

9

11200 Westheimer Road, Suite 120
Houston, TX 77042
Phone: 832-767-0339
bgargano@nguyen-chen.com

and

Chené M. Thompson / FB# 541540
Pavese Law Firm
Post Office Box 1507
Fort Myers, FL 33902-1507
Telephone No.: (239) 334-2195
Primary: CheneThompson@paveselaw.com
Secondary: KellyGermanis@paveselaw.com

*Counsel for Plaintiff TB Food USA, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that in accordance with the Federal and Local rules the foregoing document is being filed on this 31st day of October 2021 via the Court's CM/ECF filing system, which will serve a copy electronically on all counsel of record.

*/s/ Brian M. Gargano*
Brian M. Gargano