IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TB FOOD USA, LLC, et al.,

   Plaintiffs,

v.

CASE NO.: 2:17-cv-9-FtM-29CM

AMERICAN MARICULTURE, INC., et al.,

   Defendants.

_____

AMERICAN MARICULTURE, INC., et al,

   Counter - Plaintiff,

v.

PB LEGACY, INC., et al.,

   Counter- and Third-Party Defendants.

_____

## AMERICAN MARICULTURE, INC.'S FIRST REQUEST FOR PRODUCTION DIRECTED TO TB FOOD USA, LLC

Pursuant to Federal Rules of Civil Procedure 26 and 34, AMERICAN MARICULTURE, INC. hereby requests that TB FOOD USA, LLC produce all documents and materials identified herein for inspection and copying at the offices of Melville G. Brinson III, P.A. 8359 Stringfellow Road, St. James City, Florida 33956. These requests for the Production of Documents ("Requests" or "Document Requests") are to be interpreted in accordance with the Definitions and Instructions below.

## DEFINITIONS

Unless otherwise indicated, the following definitions shall be applicable to these Requests:

   A.   "Affiliate" means (i) any relative of a person or (ii) any person or entity that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person or entity specified.

   B.   "AMI" means American Mariculture, Inc., Defendant and Counter-Plaintiff herein.

TB Food USA, LLC, et al, v. American Mariculture, Inc., et al.
American Mariculture, Inc.'s First Request for Production to TB Food, USA
Case No. 2:17-cv-9-FtM-29CM

    C.    "Any" "each" and "every" are understood to include and encompass "all."

    D.    "API" means American Penaeid, Inc., Defendant herein

    E.    "Counter-Defendants" means PB Legacy, Inc., Kenneth Gervais, and Randall Aungst, counter- and third-party defendants herein.

    F.    "Chinese Litigation" means any action pending in any court in the People's Republic of China relating to (i) the sale, use, grow-out, or other disposition of Primo Shrimp or Hybrid Shrimp, (ii) purported contractual arrangements involving Primo, or (iii) use of the tradename "Primo."

    G.    "Complaint" means that certain "Amended Complaint for Injunctive and Other Relief and Demand for Jury Trial," filed January 26, 2017, ECF Doc. #20, including all attachments thereto and as any of the foregoing may be amended from time to time with permission of the Court.

    H.    "Communication(s)" means any oral or written transmission or receipt of information (in the form of facts, ideas, inquiries or otherwise) and encompasses every medium of transmittal, including oral, written, graphic, electronic, and any Document evidencing such communication, including correspondence, memoranda, notes or logs or telephone conversations, electronic mail, diaries, daily calendars, or other records of exchanges between persons. Communications with any entity includes communications by or with its relatives, subsidiaries, divisions, subdivisions, Affiliates, parents, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, financial advisor, investment banker, or any other person acting on its behalf.

    I.    "Counterclaim" means AMI's counterclaim against Primo, Kenneth Gervais and Randall Aungst, filed April 6, 2017, ECF Doc. #80, including all attachments thereto and as any of the foregoing may be amended from time to time with permission of the Court.

    J.    "Court" means the United States District Court for the Middle District of Florida, Fort Myers Division, or such other court as may exercise jurisdiction over the Complaint or this case.

    K.    "Defendants" means API, AMI, and Pearl.

    L.    "Document(s)" is intended to have the broadest possible meaning under Fed. R. Civ. P. 26 and 34, and includes, without limitation, any written, printed, typed, photocopied, photographed, recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, graphs, charts, photographs, recordings, images, pictures, sounds or symbols, or any combination thereof. For the avoidance of doubt, "Document" means anything which may be considered to be a document or tangible thing, and includes without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records,

{00062994.DOC} {00062994.DOC} {00062994.DOC} {00062994.DOC} {00062994.DOC} {00062994.DOC}

TB Food USA, LLC, et al, v. American Mariculture, Inc., et al.
American Mariculture, Inc.'s First Request for Production to TB Food, USA
Case No. 2:17-cv-9-FtM-29CM

reports and/or summaries of investigations, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or communications, electronic mail/messages and/or "e-mail," instant messaging, text messages, questionnaires, surveys, charts, graphs, photographs, films, tapes, disks, data cells, printouts of information stored or maintained by electronic data processing or word processing equipment, all other data compilations from which information can be obtained (by translation, if necessary, by You through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as CDs, DVDs, memory sticks, floppy disks, hard disks and magnetic tapes and any preliminary versions, as well as drafts or revisions of any of the foregoing. If any document has been modified by the addition of notations or otherwise, or has been prepared in multiple copies that are not identical, each modified or non-identical copy is a separate "document." The definition of "Document" or "documents" must be construed to include "Communication" or "Communications" and "Electronically stored information" as defined herein.

M. "Electronically stored information" includes all "electronically stored information" as that term is used in Federal Rules of Civil Procedure 26(a)(l)(ii) and 34(a)(l ). "Electronically stored information" includes writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form. Without limitation of the foregoing, "electronically stored information" includes email with attachments, word processing documents, spreadsheets, graphics and presentation documents, instant messages, audio and visual files, and voicemail, without deletion or alteration of meta-data, in its native form.

N. "Florida Injunction Litigation" means that certain action commenced in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida, Civil Division on January 20, 2016, and captioned *Primo Broodstock, Inc. v. American Mariculture, Inc.*, Case No. 16-CA-4443.

O. "Genetic program" means any program, process, or analysis relating to the genetic structure or components of shrimp used in any way for breeding purposes.

P. "Grow-Out Agreement" means that certain agreement dated January 1, 2015, by and between Primo and AMI.

Q. "Hybrid Shrimp" means any shrimp developed by Defendants that resulted from any combination of Primo Shrimp and non-Primo Shrimp.

R. "Including" means "including but not limited to" and "including without limitation.

S. "NDA" means that certain Mutual Nondisclosure Agreement dated

TB Food USA, LLC, et al, v. American Mariculture, Inc., et al.
American Mariculture, Inc.'s First Request for Production to TB Food, USA
Case No. 2:17-cv-9-FtM-29CM

December 11, 2014, by and between AMI and Primo.

    T.    "Pearl" means Robin Pearl, defendant herein.

    U.    "Person" means any natural or artificial person, including, without limitation, (a) legal entities, predecessors in interest, and successors in interest, (b) agents, assigns, representatives (including financial advisors), attorneys, and other persons acting on behalf of that person, party or business organization, and (c) (for non-natural persons) all officers, directors, current and former employees, and subsidiaries and divisions of such persons.

    V.    "Primo" means Primo Broodstock, Inc., a Texas corporation, now named PB Legacy, Inc., plaintiff herein.

    W.    "Primo Shrimp" means any shrimp sent or delivered by or on behalf of Primo to AMI, API, or Pearl, including shrimp sent pursuant to the Grow-Out Agreement.

    X.    "Relating to" means anything pertaining to, regarding, concerning, alluding to, responding to, connected with, commenting on, in respect of, about, discussing, showing, describing, mentioning, analyzing, studying, reflecting, evidencing, containing, assessing, constituting, or evidencing, in whole or in part, the given subject.

    Y.    "Termination Agreement" means that certain handwritten document dated January 28, 2016, and attached as Exhibit C to the Complaint.

    Z.    "Texas Injunction Litigation" means that certain action commenced in the District Court of Waller County, Texas, 506th Judicial District, on January 26, 2016, and captioned *Neil Gervais, Individually and Derivatively on Behalf of Primo Broodstock, Inc., v. Kenneth Gervais*, Case No. 16-01-23560.

    AA.    "You" and "Your" refers to the each of the Defendants, and any of its Affiliates, predecessors, successors, or subsidiaries and any Person or Persons acting in a representative capacity, including members, agents, directors, employees, partners, consultants, representatives, legal counsel, financial advisors, investment bankers, or any other Person or Persons acting or purporting to act on behalf of such entities.

## INSTRUCTIONS

    A.    For purposes of interpreting or construing the scope of these Requests, the terms used must be given the most expansive and inclusive interpretation, unless specifically limited in the Request.

    B.    The Documents requested herein must be produced as they are kept in the usual course of business or organized and labeled according to the number of the document request.

    C.    Any Document that exists in electronic form must be produced in its native

TB Food USA, LLC, et al, v. American Mariculture, Inc., et al.
American Mariculture, Inc.'s First Request for Production to TB Food, USA
Case No. 2:17-cv-9-FtM-29CM

format, including (a) all versions and revisions of the Document, (b) all metadata associated with that Document and (c) all related information required to access or review that Document. If a Document exists in both physical (i.e., "hard copy") form and electronic form, then the Document must be produced in both forms. Documents stored electronically must be produced in electronic format in standard production format including a load file with optical character recognition and single page TIFF files.'

D.   The duty to produce Documents is not limited or affected by the fact that the same Document is available through another source. All Documents should be produced that are not subject to an objection and are known by, possessed or controlled by, or available to you or any of your attorneys, consultants, representatives, employees, officers, directors, partners, or other agents.

E.   Should you obtain any other Documents or information which would supplement or modify the Documents or information supplied by you in response to these Requests, you are directed, pursuant to Federal Rule of Civil Procedure 26(e), to give timely notice of such Documents and information and to furnish the additional Documents or information without delay.

F.   You should construe these requests as follows: (a) the singular includes the plural and the plural includes the singular; (b) the masculine, feminine or neutral pronoun includes the other genders; (c) the conjunctions "and" and "or" should be read either disjunctively or conjunctively to bring within the scope of the request all information that might otherwise be construed to be outside its scope; (d) the words "any" and "all" include each and every; (e) the present tense of a verb includes its past tense and vice versa; and (f) the terms "includes" or "including" are not limiting, and phrases following such terms are not intended to be exhaustive of the materials sought by the Request and do not in any way limit the scope of the Request.

G.   Except as otherwise specified, these Requests require you to produce all responsive documents generated on or after January I , 2013, that are within your possession, custody, or control, including documents (a) that are in the hands of a third-party over whom you have the power to obtain or compel access, (b) documents that are stored in any medium whatsoever, including electronic form, and (c) information stored in intangible form that can be converted or reduced to tangible form.

## REQUESTS FOR PRODUCTION

1.   All Documents relating to AMI's or PEARL's learning of or knowledge of PRIMO or PRIMO SHRIMP in 2013 or 2014.

2.   All Documents created relating to PRIMO or PRIMO SHRIMP.

3.   All Documents relating to PRIMO's entering into the NDA, including all business or financial plans, models, or projections related thereto.

TB Food USA, LLC, et al, v. American Mariculture, Inc., et al.
American Mariculture, Inc.'s First Request for Production to TB Food, USA
Case No. 2:17-cv-9-FtM-29CM

4. All Documents relating to PRIMO's entering into the Grow-Out Agreement, including all business or financial plans, models, or projections related thereto.

5. All Documents relating to any alleged breaches by Primo of the Grow-Out Agreement.

6. All Documents relating to the genetic program referenced in the second recital of the Grow-Out Agreement.

7. All Documents relating to the genetic testing program referenced in the fourth recital of the Grow-Out Agreement.

8. All Documents relating to the receipt, use, grow-out, sale, or other disposition by AMI after January 1, 2015, of shrimp that were or were claimed by any Person to be PRIMO Shrimp or Hybrid Shrimp.

9. All Documents relating to the receipt, use, grow-out, sale, or other disposition of shrimp received by or delivered to any of the Defendants from or on behalf of Primo.

10. All Documents, relating to the termination or wind-down of the business relationship between PRIMO and AMI.

11. All Documents relating to any offers, negotiations, or agreements by any of the Defendants for the sale of Primo Shrimp or Hybrid Shrimp that were located at AMI's facility on April 30, 2016.

12. All Documents relating to the Florida Injunction Litigation.

13. All Documents relating to the Texas Injunction Litigation.

14. All Documents relating to any Chinese Litigation.

15. All Documents relating to the execution of the Termination agreementt.

16. All Documents relating to the alleged obligations of Primo or AMI under the Termination Agreement, including all Documents relating to any actions of Primo and AMI alleged to have been undertaken relating to the Termination Agreementt.

17. All Documents relating to the meaning or interpretation of the Termination Agreement.

18. All Documents relating to the receipt, use, grow-out, sale, or other disposition of all Primo Shrimp shipped or delivered by or on behalf of Primo to AMI between December 11, 2014, and the present.

19. All Documents relating to the use, grow-out, sale, or other disposition by AMI or API of all Hybrid Shrimp.

TB Food USA, LLC, et al, v. American Mariculture, Inc., et al.
American Mariculture, Inc.'s First Request for Production to TB Food, USA
Case No. 2:17-cv-9-FtM-29CM

20. All Documents related to the establishment by PRIMO of any genetics program for shrimp broodstock.

21. All Documents relating to the use by PRIMO of Primo Shrimp or Hybrid Shrimp in any genetic program.

22. All Documents relating to any development, grow-out, sale, or other disposition of any product by AMI or API that in any way used or claimed to use Primo Shrimp or Hybrid Shrimp.

23. All Documents related to any communications with any person relating to the use, grow-out, sale, or other disposition of Primo Shrimp or of Hybrid Shrimp after January 1, 2016.

24. All Documents relating to any foreign (*i.e.*, non-US) based distributor, joint venturer, marketer, researcher, seller, or shipper (or any of their respective agents, customers, or prospective customers) regarding the sale, distribution, grow-out, or other disposition of shrimp broodstock developed by PRIMO that in any way used or claimed by any Person to use Primo Shrimp or Hybrid Shrimp.

25. All Documents relating to any foreign (*i.e.*, non-US) based distributor, joint venturer, marketer, researcher, seller, or shipper (or any of their respective agents, customers, or prospective customers) regarding the sale, distribution, grow-out, or other disposition of shrimp broodstock developed by PRIMO that in any way made any statements as to the survival rate of the shrimp (including without limitation, Primo (China) Broodstock Co., Ltd., Hainan Dingda Agriculture Company, Ltd., Tangshan Jun Zheng Hatchery, and Advanced Hatchery Technology, Inc., and Franklin Perez).

26. All Documents relating to any foreign (*i.e.*, non-US) based distributor, joint venturer, marketer, researcher, seller, or shipper (or any of their respective agents, customers, or prospective customers) regarding the sale, distribution, grow-out, or other disposition of shrimp broodstock developed by AMI or API that in any way made any statements as to resistance of the shrimp to disease or pathogens.

27. All Documents relating to the entry by PRIMO into the business of developing mature shrimp breeders for shipment, grow-out, sale, or other disposition.

28. All Documents relating to the application of PRIMO to obtain any Federal Fish and Wildlife Permit issued in favor of API and dated on or about January 20, 2016.

29. All Documents relating to the origins, breeding records, family logs, and spawn, post-larvae, and breeder production records maintained at any time by any of the Defendants of all breeder shrimp that were or were claimed by any Person to be derived in whole or part from Primo Shrimp or from Hybrid Shrimp.

TB Food USA, LLC, et al, v. American Mariculture, Inc., et al.
American Mariculture, Inc.'s First Request for Production to TB Food, USA
Case No. 2:17-cv-9-FtM-29CM

30. All Documents relating to the origins, breeding records, family logs, and spawn, post-larvae, and breeder production records maintained after January 1, 2015, by any of the Defendants of all breeder shrimp as to which any Defendant made claims as to the resistance of the shrimp to disease or pathogens.

31. All breeding reports or genetic testing reports relating to any Primo Shrimp or to any Hybrid Shrimp.

32. All Communications after January 1, 2016, between or among any of the parties to this litigation and any of the following persons or entities (including any of their agents, representatives, translators, or Affiliates) relating to any of the allegations in your Complaint

    a. Charles Tuan;
    b. Neil Gervais;
    c. Kenneth Gervais;
    d. Randall Aungst;
    e. Luting Wu;
    f. Tzachi Samocha;
    g. Roger Miller;
    h. Franklin Perez;
    i. Fusheng Huang;
    j. Mr. Liang Dingmin;
    k. John Wu;
    l. Nick Carpenter;
    m. Jorge Tamayo
    n. Carlos Elizade;
    o. C. Dix. Harrell;
    p. Dr. Katharine Starzel;
    q. Irina Maskaykina;
    r. Daniel Gruenberg;
    s. Linda Thornton;
    t. Kathy Tang-Nelson;
    u. Tim Morris;
    v. Hainan Dingda Agriculture Company, Ltd.;
    w. Tangshan Jun Zheng Hatchery;
    x. Tangshan Li Feng Hatchery;
    y. Primo (China) Broodstock Company, Ltd
    z. Advanced Hatchery Technology, Inc.
    aa. John E. Lyhus – Primo Trademark registration attorney
    bb. Christine C. Martin – Primo Trademark registration attorney
    cc. Gary Woods – Woods shrimp Arizona
    dd. Su Li Rong or Su Lirong – VP of Tianbang
    ee. Daniel Yu Zhang – Ningbo Tech Bank VP of mergers and acquisitions
    ff. Paul Jeffer – Lead person of LWBJ M&A firm did the original Primo Tianbang m&A company

TB Food USA, LLC, et al, v. American Mariculture, Inc., et al.
American Mariculture, Inc.'s First Request for Production to TB Food, USA
Case No. 2:17-cv-9-FtM-29CM

    gg.    Chen Guoliang – chairman of Haimao
    hh.    Yingwei Zhao Lei GM of Tianbang Dynamics and Conservation
    ii.    Bill Johnson – Registered agent of Primo Broodstock incorporation
    jj.    Wu Jiajun – General marketing manager of Tianbang Stock feeds division
    kk.    Leslie Knoesen – operator of new Primo facility in Fellsmere Florida
    ll.    Tianbang
    mm.    LWBJ – M&A firm
    nn.    Ningbo Tech Bank
    oo.    Hainan Enterprise
    pp.    Guangdong Haimao Industrial Oc., Ltd. Aka Haimao Industrial
    qq.    Zhanjiang Haimao Aquaculture Technology Co.,Ltd.
    rr.    Guangdong Haimao Aquatic Seed Industry Technology Oc., Ltd.
    ss.    Guangdong Golden Cape Aquatic Seed Industry Technology Co., Ltd.
    tt.    Zhanjiang Haimao Aquatic Feed Co., Ltd.

33. All Documents relating to any sales, marketing, or informational materials issued by PRIMO or any agent, distributor, or customer of PRIMO relating to the development, testing, grow- out, sale, or other disposition of shrimp broodstock developed by PRIMO.

34. All Documents comparing actual to projected performance by PRIMO from January 1, 2013, through the present.

35. All Documents relating to investment related presentations, circulars, or offering memoranda issued by PRIMO continuing through the present that were distributed to AMI's or API's existing or prospective investors, managers, lenders, or shareholders, members, or board of directors.

36. All Documents relating to research, development, testing, marketing, or sale of shrimp broodstock by or on behalf of PRIMO that in any way were or were claimed by any Person to RESULT Primo Shrimp or Hybrid Shrimp.

37. All Documents that may be offered as exhibits at trial or in any deposition.

38. All resumes over the past five (5) years relating to each person whom you expect to call as an expert witness at trial.

39. All transcripts of any expert witness who testified as a witness at trial or by deposition in the preceding five years.

40. All Documents concerning any expert witness's retention or compensation.

TB Food USA, LLC, et al, v. American Mariculture, Inc., et al.
American Mariculture, Inc.'s First Request for Production to TB Food, USA
Case No. 2:17-cv-9-FtM-29CM

41. All Documents concerning any interviews of, or statements by, any person concerning the subject matter of the Complaint or the subject matter of the Counterclaims.

42. All publications, papers, and treatises authored by each person whom you expect to call as an expert witness at trial.

43. Any and all Documents any Defendant intends to introduce into evidence or otherwise use at intend to use at trial or rely upon with introduction into evidence.

44. All Documents, records, reports, analyses, and any other item of any nature or type evidencing the development process you described in the General Allegations of your Complaint.

45. Each and every document including but not limited to bill of sale, cancelled check, contract, correspondence, or any other writing of any nature or type including but not limited to evidence of payment or receipt of payment for the sale described in Plaintiff's <u>Unopposed Motion for Amendment of Pleadings I To Reflect Plaintiff's Name Change to PB Legacy, Inc. and II to Add TB Foods USA, LLC as an Additional Plaintiff</u>, Document 86, Page 2 of 4.

46. With respect to that certain sale described in Plaintiff's <u>Unopposed Motion for Amendment of Pleadings 1 to Reflect Plaintiff's Name Change to PB Legacy, Inc., and II to Add TB Foods USA, LLC as an Additional Plaintiff</u>, Document #86, Pages 2 and 4, produce any document evidencing any assets retained by PB LEGACY INC. including hard assets, causes of action or rights to causes of action, and any other intellectual property assets or other assets which may be described including but not limited to those described or listed on Page 2 of said Document #86. If any of the assets were sold to any person or entity other than TB FOODS, specifically identify the person or entity, the asset sold, and whether the sale constituted exclusive ownership or use rights or shared ownership or use rights. If ownership or use rights were shared, produce any documents specifically identifying with whom and the percentage or arrangement.

47. Produce any documents reflecting whether any party other than TB FOODS or PB LEGACY owns any assets formerly owned by PRIMO.

48. Any and all documents purported to be or referencing any offers or proposals made to ROBIN PEARL by RANDALL AUNGST on behalf of PRIMO or any other person or entity relating to the GOA.

49. Produce all disease testing documents from the date of the signing of the GOA through the end of May 2016.

50. Produce all endorsed export health certificates and/or USDA and Fish and Wildlife certificates held between the signing of the GOA and the end of May 2016.

TB Food USA, LLC, et al, v. American Mariculture, Inc., et al.
American Mariculture, Inc.'s First Request for Production to TB Food, USA
Case No. 2:17-cv-9-FtM-29CM

51. Produce all documents relating to shipping in any way, shape or form for all shipments to AMI and from AMI to PRIMO between the date of the signing of the GOA and the end of May 2016.

52. Produce any and all records reflecting production data during the period of time in which the GOA was in effect between its initial execution and the date of the signing of the Termination Agreementt.

53. Produce any Nondisclosure Agreement entered into between TB FOOD USA, LLC, PB LEGACY, INC., or PRIMO with any employees or former employees of any of these three companies, with any customer or customers of any of these three companies and with any contractors or sub-contractors providing services to any of these three companies.

54. Any and all documents purporting to be or referencing any offers or proposals made to ROBIN PEARL by RANDALL AUNGST on behalf of PRIMO, or any other person or entity, relating to the GOA.

55. Any and all documents which discussed possible terms and conditions for what eventually became the GOA. This includes any initial drafts, proposals, counterproposals, or documents discussing the GOA prior to its execution.

56. Any documents referencing any shipment of shrimp breeders to AMI facilities and any documents purporting to representing a breeding program for AMI and its facilities. In addition, any documents relating to request for payments, payment of any type for any reason from AMI and any evidence of payments made to AMI. Also include the documents including shipping records of any shrimp breeders provided to AMI by PRIMO.

57. Any documents indicating any intent by AMI to harvest and sell shrimp brood stock and any documents from PRIMO to AMI either authorizing or denying authorization to do so.

58. Any documents, records, notes, or any other tangible item in any way relating to the January 6, 2016 meeting between Mr. Pearl, Mr. Gervais, and Mr. Aungst, specifically but not limited to any such documents regarding claims of breaches of the GOA by PRIMO and AMI's intent to harvest the shrimp brook stock as permitted thereunder, which said meeting occurred on Pine Island, Florida.

59. Any and all documents or records purporting to document any representation made to Mr. Pearl at the above-referenced meeting purporting to indicate the amount for each animal shipped in accordance with the alleged or claimed contract for the sale of 100,000 animals of shrimp broodstock to a Chinese company, to be shipped from AMI facilities with payment to AMI pursuant to the terms of the GOA.

60. Any notice thereafter by AMI to PRIMO or any of the parties herein of any attempt to harvest shrimp broodstock.

{00062994.DOC} {00062994.DOC} {00062994.DOC} {00062994.DOC} {00062994.DOC} {00062994.DOC}

TB Food USA, LLC, et al, v. American Mariculture, Inc., et al.
American Mariculture, Inc.'s First Request for Production to TB Food, USA
Case No. 2:17-cv-9-FtM-29CM

61.  Any response to any such notice made by PRIMO, Mr. Gervais, Mr. Aungst, particularly any such documentation demanding that AMI refrain from harvesting said shrimp broodstock.

62.  Any notes, memos, memoranda, or other item of tangible nature or type relating in any way to the meeting on or about January 29, 2016 discussing a resolution to the suit filed by PRIMO in Circuit Court, In and For Lee County, Florida. This includes any proposals, counterproposals, or discussions relating to the resolution of said lawsuit or any aspect of said lawsuit. Also produce a copy of the Settlement Agreement reached and any other documents you contend in any way modify or revise this Settlement Agreement. If none, so state.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via electronic mail this 11th day of June 2018 to Chene M. Thomson, Esq. and Matthew B. Roepstorff, Esq., Pavese Law Firm, chenethompson@paveselaw.com, matthewroepstroff@paveselaw.com, Michellecornele@paveselaw.com, and Kellygermanis@paveselaw.com, Susan K. Spurgeon, Esq., Pennington, P.A., susan@penningtonlaw.com; sue@penningtonlaw.com, and to Steven R. Jakubowski, Esq., Robbins, Salomon & Patt, Ltd., sjakubowski@rsplaw.com.

Melville G. Brinson III Florida Bar No. 494003
**MELVILLE G. BRINSON III, P.A.**
8359 Stringfellow Road
St. James City, Florida 33956 Telephone: +1 (239) 282-0551
Facsimile 239.282.0515 Email: brinson@afblaw.com

Patrick J. O'Connor Florida Bar No. 0715778
**HARPER MEYER PEREZ HAGEN O'CONNOR ALBERT & DRIBIN LLP**
201 South Biscayne Boulevard, Suite 800
Miami, Florida 33131
Telephone: 305.577.3443
Facsimile: 305.577.9921 Email: clgroup@harpermeyer.com
Counsel for AMI