# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

TB FOOD USA, LLC, a Delaware
limited liability company,

Plaintiff,

v.                                                      CASE NO. 2:17-cv-00009-FtM-JES-UAM

AMERICAN MARICULTURE, INC., a
Florida corporation, AMERICAN PENAEID,
INC., a Florida corporation, and ROBIN
PEARL,

Defendants.
_____/

AMERICAN MARICULTURE, INC., a
Florida corporation,

Counter Plaintiff,

v.

PB LEGACY, INC., a Texas
corporation.

Counter and Third-Party Defendant.
_____/

**PLAINTIFF TB FOOD USA, LLC'S AND THIRD-PARTY DEFENDANT PB LEGACY,
INC.'S JOINT RESPONSE IN OPPOSITION TO DEFENDANTS' "RENEWED"
MOTION FOR SANCTIONS**

Plaintiff TB Food USA, LLC ("TB" or "Plaintiff") and Third-Party Defendant PB Legacy,

Inc. ("PB Legacy") jointly file this response in opposition to Defendants' "Renewed" Motion for

Sanctions ("MOTION") [Doc. #487], and would respectfully show[1] the Court as follows:

---

[1] On November 16, 2021, the Parties submitted to the Court the full set of exhibits. As such, only the referenced trial
transcripts shall be filed with this motion.

## ARGUMENT

### A. LEGAL STANDARD

*i.    Motion for Reconsideration*

On November 15, 2021, Defendants orally moved under FRCP 37 for sanctions at trial, namely "dismissal of all claims against defendants" and "for an award of all attorneys' fees and costs in this proceeding" based upon essentially the exact grounds and arguments they set forth in the MOTION *Compare* TRIAL TRANSCRIPT NOV. 15, at pp. 6-24 *with* [Doc. # 487]. As the Court denied Defendants' oral motion for sanctions [*see* TRIAL TRANSCRIPT NOV. 15, at pp. 10-11, 22, 24], Defendants' "renewed" MOTION is and should be treated by the Court as a motion for reconsideration.

Although the Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration, a party may challenge a judgment or order under Rules 59(e) or 60(b). *See Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000).[2] Whether under Rule 59(e) or Rule 60(b), a motion for reconsideration "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Bey v. Carrington Mortg. Servs., LLC*, 805 F. App'x 981, 984 (11th Cir. 2020) (quoting Richardson v. Johnson, 598 F.3d 734, 740 (11th Cir. 2010)); *see also Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005); *Mays v. U.S. Postal Serv.* 122 F.3d 43,46 (11th Cir. 1997). Indeed, "reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Wendy's Int'l, Inc. v. Nu-Cape*

---

[2] In the Eleventh Circuit, courts employ the same standards for evaluating Rule 54(b) motions for reconsideration as they do for considering Rule 60(b) motions for relief from judgment. *See Maldonado v. Snead*, 168 Fed. Appx. 373, 386-387 (11th Cir. 2006) (applying same abuse-of-discretion standard of review to both Rule 54(b) and Rule 60(b) motions for reconsideration, and endorsing district court's application of Rule 60(b) standard requiring new evidence in evaluating a Rule 54(b) motion for reconsideration); *see also Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366 (S.D. Fla. 2002) (applying Rule 60(b) motion for reconsideration standards to motion for reconsideration of a non-final judgment).

*Constr., Inc.*, 169 F.R.D. 680, 685 (M.D. Fla. 1996).  Under any of the subsections, Rule 60(b) relief can be characterized as extraordinary, such that "a motion thereunder may be granted only under exceptional circumstances." *Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 27 (1st Cir. 2005).

"Thus, a motion for reconsideration should be granted in the Eleventh Circuit only if (1) an intervening change in controlling law occurs, (2) newly discovered evidence arises, or (3) the need to correct a clear error or prevent manifest injustice exists. *Jeld-Wen, Inc. v. Nebula Glasslam Int'l*, No. 07-22326-CIV, 2008 U.S. Dist. LEXIS 135439, at *10-11 (S.D. Fla. 2008).

 *ii.*  *FRCP 26(a) and (e)*

"Rule 26 of the Federal Rules of Civil Procedure provides the general provisions governing discovery." *Bielawski v. Davis Roberts Boeller & Rife, P.A.*, No. 2:18-cv-758-FtM-29MRM, 2020 U.S. Dist. LEXIS 84189, at *6 (M.D. Fla. 2020) (J. Steele).

"Rule 26(a) requires each party to provide an initial disclosure containing "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--**that the disclosing party <u>may use to support its claims or defenses</u>, unless the use would be solely for impeachment.**"" *Id.* (citing FED. R. CIV. P. 26(a)(1)(A)(i)) (emphasis added). Indeed, "there is no requirement to disclose anything that the disclosing party will not use, which may include much that is harmful to its case." *Stamps v. Encore Receivable Management, Inc.*, 232 F.R.D. 419, 421 (N.D. Ga. 2005); *see also* FED. R. CIV. P. 26(a)(1) advisory committee's note (2000) ("A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use").

Rule 26(e) imposes a duty on a party to supplement or correct its prior disclosures and discovery responses: A) in a timely manner if the party learns that in some material respect the

disclosure or response is incomplete or incorrect, and **if the additional or corrective information has not otherwise been made known to the other parties during the discovery process** or in writing; or B) as ordered by the court. *Bielawski,* 2020 U.S. Dist. LEXIS 84189 at *6-7 (citing FED. R. CIV. P. 26(e)) (emphasis added).

    *iii.    Rule 37 Sanctions*

"Rule 37 of the Federal Rules of Civil procedure governs the failure to make discovery disclosures and potential sanctions." *Id.* at *7.  The party seeking sanctions under Rule 37 bears the burden of establishing that an opposing party failed to comply with Rule 26 or a discovery order. *Deepgulf Inc. v. Moszkowski*, 333 F.R.D. 249, 253 (N.D. Fla. 2019) (citing *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017); *Andazola v. Logan's Roadhouse, Inc.*, Civil Action No. CV-10-S-316-NW, 2012 U.S. Dist. LEXIS 67738, at *14 (N.D. Ala. 2012).  If the moving party meets this burden, the "district court has broad discretion in determining whether a party's failure to disclose discovery materials is either substantially justified or harmless under Rule 37(c)(1)." *Bielawski,* 2020 U.S. Dist. LEXIS 84189 at *7. "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Id.* "When determining whether a failure was substantially justified or harmless, reviewing courts consider "the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted."" *Id.* at *8.

When a party claims that it has substantial justification for its actions, the court should ask whether reasonable people "could differ as to whether the party was required to comply with the disclosure request." *Ellison v. Windt*, Case No. 6:99-cv-1268-Orl-KRS, 2001 U.S. Dist. LEXIS 1347, at *4 (M.D. Fla. 2001) "The proponent's position must have a reasonable basis in law and

fact" and "[t]he test is satisfied if there exists a genuine dispute concerning compliance." *Id.* at *4-5 (quoting *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995)). However, "[a] harmless failure to disclose exists when there is no prejudice to the party entitled to receive the disclosure." *Bielawski,* 2020 U.S. Dist. LEXIS 84189 at *8 (quoting *Baldeo v. Dolgencorp, LLC*, 2014 WL 4749049, *3 (M.D. Fla. 2014)). Moreover, when a party fails to promptly seek enforcement of his/her/its rights, any prejudice suffered arises largely from the party's own inaction. *See Ellison*, 2001 U.S. Dist. LEXIS 1347, at *7.

As for possible sanctions, "Rule 37(c) provides that if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."" *Bielawski,* 2020 U.S. Dist. LEXIS 84189 at *8. Other available sanctions under Rule 37(c) include "assessing reasonable fees and expenses caused by the late disclosure, an adverse jury instruction, striking pleadings, and dismissing the case." *See Cutlass Collieries, LLC v. Jones*, No. 20-CV-80001-RLR, 2021 U.S. Dist. LEXIS 247809, at *3 (S.D. Fla. 2021). Significantly, the plain language of Rule 37 does not provide as a sanction the setting aside of a jury's verdict.[3] Defendants have not shown otherwise.[4]

---

[3] **Rule 37(b)(2)(A) only authorizes the following as possible sanctions**: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination. **Rule 37(c)(1) only authorizes the following as possible sanctions**: 1) preclusion of a party to use information or a witness to supply evidence on a motion, at a hearing, or at a trial; 2) requiring payment of the reasonable expenses, including attorney's fees, caused by the failure; 3) informing the jury of the party's failure; 4) to impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

[4] Defendants' request to set aside the Jury's verdict falls under FRCP 59(a) and 60. See FED. R. CIV. P. 59(a) and 60(b)(3). As such, Defendants' Motion for Sanctions is merely duplicative as Defendants clearly attempt to have multiple bites of the apple. *Compare* [Doc. # 483] *with* [Doc. #487]. Thus, the Court should outright deny Defendants' request in the instant motion to set-aside the Jury's verdict under FRCP 37. Moreover, for the reasons articulated in Plaintiff's Response in Opposition to Defendants' Motion for a New Trial under FRCP 59, the "sanction" of setting

"In considering whether a sanction should be imposed—and what sanction should be imposed—courts should consider:

1.  the purposes to be served by the imposition of sanctions, including deterrence of future discovery violations, punishment of current violations, compensation of the offended party, and conservation of the court's time and resources;
2.  the importance of the materials that were not produced—from the perspective of the offended party's ability to litigate the case—and what prejudice, if any, the offended party suffered;
3.  if the offended party suffered prejudice, the monetary cost suffered, if any;
4.  whether the discovery caused important events to be delayed (such as a trial) and, if so, the extent of the delay;
5.  whether the offending party violated a specific order of the court instructing it to provide the offended party with an item or materials;
6.  whether the discovery violation(s) placed a burden on the district court and, if so, the extent of the burden;
7.  whether the offending party committed a single discovery violation or multiple violations;
8.  the offending party's asserted justification for its conduct, if any, and its legitimacy;
9.  whether the discovery violation was committed willfully, in bad faith, inadvertently, or due to a party's inability or excusable neglect;
10. whether the discovery violation(s) is attributable to the client, counsel, or both;
11. whether the offending party was warned that sanctions or a specific sanction might be imposed, but disregarded such warning;
12. whether any lesser sanction would substantially serve the same purposes as a more severe sanction; and
13. whether the requested sanction would be just in light of the particular circumstances of the case and whether it is proportional to the harm inflicted."

*Deepgulf Inc.*, 333 F.R.D. at 253-254 (internal citations omitted).

Although under Rule 37 the sanction of dismissal is an option, less drastic remedies should be considered. *United States v. One 2004 26' Angler Vessel*, No. 2:06-cv-671-FtM-29SPC, 2008 U.S. Dist. LEXIS 9491, at *2 (M.D. Fla. 2008) (J. Steele) (citing *Mene v. Marriott Int'l, Inc.*, 238 Fed. Appx. 579, 581-82 (11th Cir. 2007)). "For such a harsh sanction as dismissal, [the Eleventh Circuit] require[s] that the record clearly reflect a willful pattern of delay and obstruction of the

---

aside the Jury's hard-earned verdict and ordering a new trial is completely unjustified, unwarranted, and should be denied. [*See* Doc. # 502-along with attached exhibits].

orderly progress of the case." *Id.* (quoting *Nwabeke v. Torso Tiger, Inc.*, 194 Fed. Appx. 669, 670 (11th Cir. 2006)); *see also United States v. Certain Real Property Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997) (holding that Rule 37 sanctions such as dismissal or entry of default are only appropriate when the offending party's conduct amounts to a flagrant disregard or willful disobedience of discovery orders).

In short, the Eleventh Circuit has long held that only where the non-compliant party displays a flagrant disregard for the court and the discovery process, the severe sanction of dismissal or default judgment is not an abuse of discretion. *See Aztec Steel Co. v. Fla. Steel Co.*, 691 F.2d 480, 481-482 (11th Cir. 1982); *see also Societe Internationale pour Participations Industrielles Et Commerciales, S.A. v. Roger*s, 357 U.S. 197, 212 (1958) (To impose the ultimate sanction of default or dismissal requires a finding of bad faith on the part of the non-complying party); *In re E.E.O.C. v. Troy State University*, 693 F.2d 1353-1354, 1358 (11th Cir. 1982) (Holding dismissal of a plaintiff's case with prejudice is a sanction of last resort, applicable only in extreme circumstances, and a discovery violation caused by simple negligence, misunderstanding, or inability to comply will not justify a default judgment or dismissal).

## B.  Defendants' Claim that Plaintiff Violated Rule 26(a) is Meritless

Defendants baselessly claim that Plaintiff had a duty under Rule 26(a) to disclose to them the names and contact information of Henry Uy ("Uy") and Feedmix Specalist Inc. II ("Feedmix"). Indeed, Rule 26(a)'s plain language unequivocally demonstrates otherwise: "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--**that the disclosing party <u>may use to support its claims or defenses</u>, unless the use would be solely for impeachment.**" Fed. R. Civ. P. 26(a)(1)(A)(i).  As "there is no requirement to disclose anything that the disclosing party will

not use, which may include much that is harmful to its case",[5] Defendants' claim to the contrary is not supported by any authority and is completely without merit.

## C.  DEFENDANTS' CLAIM THAT PLAINTIFF VIOLATED THE COURT'S INTERESTED PERSONS ORDER IS ALSO MERITLESS

Defendants next risibly claim Plaintiff had a duty under the Court's Interested Persons Order to disclose to them the names of Uy and Feedmix.  Notably absent from Defendants' papers is any legal authority supporting their claim. The Court's Interested Persons Order, [Doc. # 14], asks Plaintiff (at the time, Primo Broodstock, Inc.) to disclose (1) parties with an interest in the outcome; (2) publicly traded companies whose stock price may be substantially affected by the outcome; (3) the name of any entity likely to be an active participant in the proceedings; and (4) the name of each victim of the alleged wrongful conduct.  It is beyond reasonable dispute that Uy and Feedmix do not qualify under any of these categories: they have no entitlement to any recovery by Plaintiff in this action, so they have no interest in the action nor would their stock price be affected if they have one (upon information and belief, Feedmix is not publicly traded).  They obviously have not been active participants in this litigation and have not been victimized by Defendants' conduct.  As such, it is beyond reasonable dispute that Feedmix and Uy are not "interested persons" within the context of this case.

## D.  PLAINTIFF COMPLIED WITH ITS DISCOVERY OBLIGATIONS

Hypocritically, it is Defendants who wrongfully withheld information in this case, as for example, they previously represented to this Court that they could not provide financial information for API after mid-2019. [*See* Doc. #s 376, at pp. 7-9, 485-1]. The testimony of Jerry Beck made clear that this representation was false. *See* TRIAL TESTIMONY NOV. 16, at pp. 135-136.

---

[5] *Stamps*, 232 F.R.D. at 421-422. Notably absent from Defendants' papers is any legal authority whatsoever supporting their claim.

i.     *Defendants' Interrogatory Responses*

In any event, Defendants disingenuously claim that Plaintiff did not disclose to them that: 1) Uy and Feedmix were persons with knowledge of each and every aspect of the development of Primo broodstock shrimp in response to interrogatory #5; and 2) that Uy and Feedmix had any ownership or use right with regard to any asset in the Asset Purchase Agreement ("APA")-in response to interrogatory #14. [Doc. # 487, at ¶ 24; 487-9].

As to interrogatory #5, first, it is beyond reasonable dispute that neither Uy nor Feedmix were or could have been persons with knowledge of **each and every aspect of the development** of Primo broodstock.  At most, Uy and Feedmix had knowledge of how Primo's broodstock was originally acquired and imported into the United States, but not about how Primo subsequently developed their broodstock.  Second, Plaintiff interposed valid objections to interrogatory #5 based on its scope, relevance, Florida's statutory privilege for trade secrets and confidentiality. Defendants neither challenged these objections nor moved to compel a further response. [Doc. #487-9, at pp. 5-6]. Third, there was no reason to supplement or correct this answer as neither Uy nor Feedmix would qualify as being responsive given neither fit the parameters of Interrogatory # 5.

As to interrogatory #14, first, both Neil and Ken Gervais have consistently testified that Primo had full ownership and use rights over its shrimp with the limited exception that under the Grow-Out Agreement AMI could grow-out the shrimp and harvest them as table shrimp. *See* TRIAL TESTIMONY NOV. 1, at pp. 101-103, 113; TRIAL TESTIMONY NOV. 2, at pp. 45-47; 167-169; 181; TRIAL TESTIMONY NOV. 3, at pp. 8, 10-12; TRIAL TESTIMONY NOV. 4, at pp. 110-112; 200-201; TRIAL TESTIMONY NOV. 15, at pp. 69-70, 76, 97, 99, 107.[6]  Second, as Rule 33(d) permits, Plaintiff

---

[6] The documentary evidence has conclusively demonstrated the same as it is in accord with the Jury's findings.

fully answered interrogatory #14 by producing the APA, and Defendants never objected or took issue with the response even after receiving the transcript of Neil Gervais' deposition testimony on December 6, 2019.  Third, there was no reason to supplement or correct this answer as neither Uy nor Feedmix would qualify as being responsive given neither fit the parameters of interrogatory # 14.[7]

Accordingly, Defendants' claim that Plaintiff did not comply with its discovery obligations as to interrogatory #s 5 and 14 is completely unavailing.

ii.    *Defendants' Requests For Production*

Equally disingenuous is Defendants' claim Plaintiff was required to produce emails prior to 2013 including those that involved Uy or Feedmix in response to Request for Production # 2-all documents created relating to Primo or Primo shrimp; Request for Production # 20-all documents related to the establishment by Primo of any genetics program for shrimp broodstock; Request for Production # 24-any documents relating to any foreign based joint venture for any sale distribution, grow-out or other disposition of shrimp broodstock developed by Primo; Request for Production # 25-" " that in any way used or claimed by an Person to use Primo Shrimp or Hybrid Shrimp; Request for Production # 27-All Documents relating to the entry by Primo into the business of developing mature breeders for shipment, grow-out, sale, other disposition; Request for Production # 44-All documents…and any other time of any nature or type evidencing the development process described in the General Allegations of the Complaint; and Request for Production # 47-documents reflecting whether any party other than Plaintiff owns any assets formerly owned by Primo. [*See* Doc. # 487, at ¶¶ 25-28; 487-10].

---

[7] Consistent with their testimony, neither Ken nor Neil had a reasonable belief that Uy and Feedmix had any ownership or rights to the shrimp as the Primo shrimp was borne out of their hard work and investment.

First, despite their cavils about Plaintiff's purported failure to produce the documents on which Defendants' motion primarily relies upon, it is beyond reasonable dispute Defendants never asked for them.  The documents at issue date from 2011 and 2012, and therefore were not responsive to their document request, **which expressly limited its scope to documents generated on or after January 1, 2013**. *See* AMI'S FIRST REQUEST FOR PRODUCTION, attached hereto as **Exhibit A**, at Instruction G; *see also*, [Doc. # 487-10, at p. 4 (acknowledging instruction calling for production of documents after January 1, 2013, and agreeing to so limit its production)]; TRIAL EXHIBITS 419, KKK, LLL, MMM, OOO, PPP, QQQ.

Second, Plaintiff properly objected to Request for Productions #s 2, 20, 24, 25, 27, 44, and 47 as these requests were all overly broad and unduly burdensome on their face and failed to identify with reasonable particularity the set of documents or materials requested and required Plaintiff to either guess or move through mental gymnastics as to what documents relate to or are in regard to each request.[8] As such, Plaintiff did its best in accordance with Rule 26 to sufficiently respond to Defendants' overly broad requests and produced documents which Plaintiff did its best to reasonably determine as to which documents are responsive, relevant and proportional to the needs of the case.  Defendants never took issue with Plaintiff's objections and production even after receiving the transcript of Neil Gervais' deposition testimony on December 6, 2019. Defendants also never filed a motion to compel.

---

[8] *See generally Lipari v. U.S. Bancorp N.A.*, 2008 WL 4642618 (D. Kan. October 16, 2008) ("This Court has held on numerous occasions that a discovery request is overly broad and unduly burdensome on its face if it uses an omnibus term such as "relating to," "pertaining to," or "concerning" to modify a general category or broad range of documents or information." [S]uch broad language 'requires the respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request.' As a result, such a request 'violates the basic principle of Federal Rule Civil Procedure 34(b)(1)(A) that document requests 'must describe with reasonable particularity each item or category of items' to be produced.'").

Third, at Neil's December 6, 2019, deposition, Neil made Defendants well aware that Primo acquired its founding stocks in conjunction with a company in the Philippines (presumably Feedmix), but that the Filipino company decided not to proceed with those animals. *See* DEPOSITION TESTIMONY OF N. GERVAIS DEC. 6, 2019, at pp. 67:13-68:21; 70:25-71:15; 117:22-118:21, attached hereto as **Exhibit B**. Defendants' failure to follow up on Neil's deposition testimony and propound written discovery requests on Neil (as a non-party), or take further depositions (including of Ken) is fatal to Defendants' disingenuous claim that "critical" discovery was withheld from them. Defendants' failure to follow up on Neil's deposition testimony properly or adequately makes clear that, to the extent, Defendants were surprised about the association between Ken, Neil, the Filipino Company, and Primo's obtainment of shrimp from Ecuador for creating Primo's founding stocks, it was the product of Defendants' own lack of diligence.

Fourth, there was no reason for Plaintiff to supplement or correct its production given that it reasonably believed it produced all responsive documents, as well as Instruction G of the Request for Production, which expressly made clear that only documents created after 2013 were responsive.

Defendants' further disingenuously claim that Ken Gervais (while he was a third-party Defendant) was required to produce emails prior to 2013 including those that involved Uy or Feedmix in response to Request for Production # 2-Documents created before December 11, 2014, relating to Primo or Primo Shrimp and Request for Production # 33-Documents relating to the origins, breeding records.... maintained at any time by any of the Defendants of all breeder shrimp that were claimed by any Person to be derived in whole or part from Primo Shrimp or from Hybrid Shrimp. [*See* Doc. # 487, at ¶¶ 29; 487-111].

However, it is beyond reasonable dispute that Defendants never asked for the documents they now complain about not receiving.  As with the Request for Production served upon Plaintiff, the Request for Production served upon Ken **which expressly limited its scope to documents generated on or after January 1, 2013**. *See* AMI's First Request for Production as to ken Gervais, attached hereto as **Exhibit C**, at Instruction G; *see also*, [Doc. # 487-11, at p. 4 (acknowledging instruction calling for production of documents after January 1, 2013, and agreeing to so limit its production)]. Since the documents at issue date from 2011 and 2012, it necessarily follows that they were not responsive to Defendants' Request for Production. *See* Trial Exhibits 419, KKK, LLL, MMM, OOO, PPP, QQQ.

Ken also properly objected to Request for Productions #s 2 and 33 as these requests were all overly broad and unduly burdensome on their face and failed to identify with reasonable particularity the set of documents or materials requested and required Ken to either guess or move through mental gymnastics as to what documents relate to or are in regard to each request.[9] Defendants never took issue with Ken's objections and production even after receiving the transcript of Neil Gervais' deposition testimony on December 6, 2019. Defendants never filed a motion to compel or supplemental discovery requests.  Thus, Defendants' failure to follow up on Neil's deposition testimony including taking a further deposition of Ken is fatal to Defendants' disingenuous claim that "critical" discovery was withheld from them. Defendants' feigned surprise about the association between Ken, Neil, the Filipino Company, and Primo's obtainment of shrimp from Ecuador for creating Primo's founding stocks, makes clear that their "surprise" was the product of Defendants' own lack of diligence.

---

[9] *See* Footnote 8.

Accordingly, Defendants' claim that Plaintiff did not comply with its discovery obligations as to the Request for Productions is wholly risible.

### E. PLAINTIFF'S ALLEGED FAILURE TO DISCLOSE DISCOVERY MATERIALS IS EITHER SUBSTANTIALLY JUSTIFIED OR HARMLESS

Sanctions under Rule 37 are not merited when a failure to disclose discovery materials is either substantially justified or harmless.  It is well-established that a party's conduct in discovery is substantially justified when it is a response to a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action. *See Clay v. Platinum Homes, Ltd. Liab. Co.,* No. 3:16-cv-31-MCR-GRJ, 2017 U.S. Dist. LEXIS 53911, at *4-5 (N.D. Fla. 2017) (*citing Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993). "The proponent's position must have a reasonable basis in law and fact" and "[t]he test is satisfied if there exists a genuine dispute concerning compliance." *Ellison, 2001 U.S. Dist. LEXIS 1347* at *4-5 (quoting *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995)).

 Here, the alleged failure to disclose discovery material is substantially justified, as each of the actions Defendants complain of were reasonable.  For example:

- Since Ken and Neil have a consistent, good-faith belief that Primo owned its founding stocks and that Feedmix did not, there was no reason to include them in the Interested Persons Order;

- Plaintiff reasonably believed (and continues to believe) that Uy and Feedmix were not "interested persons" for purposes of the Interested Persons Order;

- Plaintiff's position that it was not required to include references to documents and witnesses it did not intend to rely on at trial is supported by Rule 26(a)'s plain language, case law, and the Advisory Committee's notes to Rule 26;

- Plaintiff's exclusion of the documents from its responses to Defendants' interrogatories was based on its reasonable belief that they were not responsive to those interrogatories, as well as its legally sound (and unchallenged) objections to them;

- Plaintiff's exclusion of Uy and Feedmix from its answers to Defendants' interrogatories were based on its reasonable belief that this information was not responsive to those interrogatories, as well as its legally sound (and unchallenged) objections to them; and

- Plaintiff's and Ken's exclusion of the documents from its responses to Defendants' Requests for Production were based on their reasonable belief that they were not created within the timeframe Defendants requested documents for, as well as their legally sound (and unchallenged) objections to them.

Turning to whether Plaintiff's alleged non-disclosure was harmless, factors to consider are the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted. *See Lips v. City of Hollywood*, 350 Fed. App'x 328, 340 (11th Cir. 2009). Here, all three factors lead to the conclusion that the alleged non-disclosure was harmless. Plaintiff's explanation for its alleged failure to disclose is set forth above.  Turning to the remaining factors:

First, the information at issue was not important.  As discussed at length in PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR NEW TRIAL UNDER FRCP 59 [Doc. # 502], the testimony made no material substantive difference to the outcome as Primo's ownership of its founding stocks is not a relevant test under the Florida Uniform Trade Secrets Act ("FUTSA"), FLA. STAT. 688.001-688.009, or the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.,* The relevant inquiry under FUTSA is whether a party seeking relief for misappropriation of a trade secret possessed a trade secret (which the Jury found Plaintiff did), not whether it owned it.  *See, e.g., Advanced Fluid Sys., Inc. v. Huber*, 958 F.3d 168, 177-178 (3d Cir. 2020); *DTM Research, L.L.C. v. AT & T Corp*., 245 F.3d 327, 331-332 (4th Cir. 2001); *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017); *Candy Craft Creations, LLC v. Gartner*, CV 212-091, 2015 WL 1541507 (S.D. Ga. Mar. 31, 2015); *Metso Minerals Industries, Inc. v. FLSmidth-Excel LLC*, 733 F. Supp. 2d 969, 976 (E.D. Wis. 2010); *Fast Capital*

*Marketing, LLC v. Fast Capital LLC*, CIVIL ACTION No. H-08-2142, 2008 WL 5381309 (S.D. Tex. Dec. 24, 2008).  Similarly, under the DTSA Primo had equitable title to its trade secrets, as Feedmix sat on its rights for ten years, long past the expiration of the statute of limitations to challenge Primo's alleged conversion. *See, e.g.*, FLA. STAT. § 95.11(3)(h) (Florida has a four-year statute of limitations for "taking, detaining or injuring personal property"); TEX. CIV. PRAC. & REM. CODE §16.003(a) (Texas has a two-year statute of limitations for conversion of physical property).[10] *See* 18 U.S.C. § 1839(4) (defining owner as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed.").

Second, Defendants have not been prejudiced as the information at issue was presented at trial.  *See Davis by Davis v. Jellico Community Hosp. Inc.*, 912 F.2d 129, 134 (6th Cir. 1990); *Lopez v. Aramark Unif. Career Apparel, Inc.*, 426 F. Supp. 2d 914, 974-976 (N.D. Iowa 2006); *Matthews v. Summers*, No. CV-14-00062-PHX-JAT, 2016 U.S. Dist. LEXIS 21768, at *5 (D. Ariz. 2016). Defendants therefore had ample opportunity to present the testimony of the witnesses, apprise the jury of the alleged inconsistencies in their testimony, and urge them to judge the truth or falsity of the evidence offered. *See Franklin v. Thompson*, 981 F.2d 1168, 1171 (10th Cir. 1992); *see also Stepanovich v. Bradshaw,* No. 2:14cv270-PAM-MRM, 2017 U.S. Dist. LEXIS 222251 (M.D. Fla. 2017); *Nosewicz v. Janosko,* Civil Action No. 16-cv-00447-PAB-KLM, 2020 U.S. Dist. LEXIS 126157 (D. Colo. 2020); *Othman v. City of Chi.,* No. 11-cv-5777, 2016 U.S. Dist. LEXIS 18519 (N.D. Ill. 2016); *Gilreath v. Cumberland Cty. Bd. of Educ.*, 304 F.R.D. 481, 485-486 (E.D.N.C. 2015); *Wolde-Giorgis v. Christiansen*, 438 F. Supp. 2d 1076 (D. Ariz. 2006).

---

[10]  The DTSA defines "owner" of a trade secret as "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. § 1839(4). Further, "trade secrets can be jointly owned and, in fact, a joint owner can bring a claim for trade secret misappropriation against the other owner." *Genesis 1 Oil Servs. LLC v. Wismann Grp., LLC*, No. 8:20-cv-02114-JLS-ADS, 2021 U.S. Dist. LEXIS 54940, at *15-16 (C.D. Cal. 2021)

Accordingly, it is beyond dispute that Defendants had a full opportunity to present their case at trial and did so.  To the extent that Defendants have been prejudiced, it is largely of their own making as it is a result of their own inaction. Any harm from that inaction is properly chargeable to Defendants and therefore not a proper basis for sanctions. *See Ellison*, 2001 U.S. Dist. LEXIS 1347, at *7.

F.   **DEFENDANTS HAVE NOT AND CANNOT MEET THEIR BURDEN TO WARRANT THE COURT TO RECONSIDER ITS RULING DENYING DEFENDANTS' ORAL MOTION FOR SANCTIONS**

As discussed above, this motion should properly be evaluated under the standards for a motion for reconsideration, as Defendants unsuccessfully moved for sanctions at trial.  Indeed, such a motion should only be granted if (1) an intervening change in controlling law occurs, (2) newly discovered evidence arises, or (3) the need to correct a clear error or prevent manifest injustice exists. *See Jeld-Wen*, 2008 U.S. Dist. LEXIS 135439, at *10-11 (S.D. Fla. 2008).

To begin with, it is beyond dispute that since the time the Jury's verdict was entered there is no allegation that an intervening change in controlling law occurred.  The other two factors fare no better.  Taking each in turn:

Here, no newly discovered evidence has arisen since Defendants moved for sanctions at trial. It is well-established that parties cannot introduce previously unsubmitted evidence on a motion to reconsider absent a showing that the evidence was not available during the pendency of the motion. *See Mays*, 122 F.3d at 46. Here, basically all of the evidence supporting Defendants' motion was previously available, as it consists mainly of prior testimony, discovery responses, court filings and documents received from Feedmix and Uy prior to moving for sanctions at trial.[11]

---

[11] The only potential exception to this is Uy's declaration. However, Uy's testimony could and should have been obtained before Defendants first moved for sanctions at trial, as they were in contact with Mr. Uy for at least five days before filing their motion. In any event, Plaintiff has already objected to the use of his declaration. *See* PLAINTIFF'S OBJECTIONS TO ROBIN PEARL'S POST-TRIAL AFFIDAVIT AND HENRY UY'S POST-TRIAL DECLARATION SUBMITTED IN SUPPORT OF DEFENDANTS RULE 59(A) MOTION [Doc. # 501].

Finally, for the reasons set forth above, the Court's prior denial of the motion for sanctions was correct and not clear error. Similarly, since any non-disclosure was both harmless and substantially justified, there can be no manifest injustice in the Court's prior ruling.

## G. THE COURT SHOULD NOT IMPOSE HARSH SANCTIONS UPON PLAINTIFF UNDER RULE 37

To the extent that sanctions against Plaintiffs are justified, and they clearly are not, Defendants' suggested remedies of dismissal or a new trial are inappropriately harsh under the circumstances. Such remedies are appropriate only where there have been willful and bad faith disregard of discovery orders. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1555 (11th Cir. 1986); *Miranda v. Aramark Educ. Servs.,* No. 3:05-cv-1245-J-33HTS, 2007 U.S. Dist. LEXIS 51847, at *4-5 (M.D. Fla. 2007).

Here, Plaintiff's alleged discovery failings, if any, were neither willful nor committed in bad faith.  Rather, at worst, they were the product of Plaintiff's reasonable interpretations of its discovery obligations and the Court's Interested Persons Order, and any harm was exacerbated by Defendants' dilatory tactics.  Accordingly, no sanction is warranted.

## H.  THIS MOTION IS DUPLICATIVE OF DEFENDANTS' MOTION FOR A NEW TRIAL

Given Rule 37's plain language, unless the Court issues the death penalty and last resort sanction of dismissing Plaintiff's claims, Rule 37 cannot serve as a means to set aside the Jury's verdict. Indeed, Defendants have not demonstrated any legal authority in which a court under Rule 37 issued the specific sanction of setting aside a jury's verdict.  As such, despite Defendants' request in the alternative to dismissal, for the Court under Rule 37 to issue the sanction of setting aside the Jury's verdict, the Court should not and cannot do so.  Moreover, Defendants' MOTION is merely duplicative of their Motion for New Trial as Defendants clearly attempt to have multiple "bites at the apple." *Compare* [Doc. # 483] *with* [Doc. #487]. Lastly, for the reasons articulated in

Plaintiff's Response in Opposition to Defendants' Motion for a New Trial under FRCP 59, the "sanction" of setting aside the Jury's hard-earned verdict and ordering a new trial is completely unjustified, unwarranted, and should be denied. [*See* Doc. # 502-along with attached exhibits].

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff and PB Legacy hereby request that Defendants' Renewed Motion for Sanctions be denied in its entirety and that the Court grant Plaintiff and PB Legacy such other relief as is just and proper.

Dated: January 12, 2022

Respectfully submitted,

By: /s/ *Brian M. Gargano*
    Brian M. Gargano (admitted *pro hac vice*)
    BOGC LEGAL PLLC
    3040 Post Oak Blvd.
    Suite 1800-150
    Houston, TX 77056
    Phone: 713-970-1066
    Brian.Gargano@bogclegal.com

    *Counsel for Plaintiff TB Food USA, LLC*

    and

By: /s/ *Chene M. Thompson*-with permission
    Chené M. Thompson / FB# 541540
    PAVESE LAW FIRM
    Post Office Box 1507
    Fort Myers, Florida 33902-1507
    Telephone No.: (239) 334-2195
    Primary: CheneThompson@paveselaw.com
    Secondary: KellyGermanis@paveselaw.com

    *Counsel for Plaintiff TB Food USA, LLC and Third-Party Defendant PB Legacy, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that in accordance with the Federal and Local rules the foregoing document is being filed on this 12th day of January 2022 via the Court's CM/ECF filing system, which will serve a copy electronically on all counsel of record.

*<u>/s/ Brian M. Gargano</u>*
Brian M. Gargano