IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TB FOOD USA, LLC, a Delaware
Limited Liability Company,

   Plaintiff,

v.                           CASE NO. 2:17-cv-9-FtM-29 NPM

AMERICAN MARICULTURE,
INC., a Florida Corporation, et al.,

   Defendants.

_____/

**DEFENDANTS AMERICAN MARICULTURE, INC.,
AMERICAN PENAEID, INC. AND ROBIN PEARL'S
<u>MOTION TO AMEND JUDGMENT PURSUANT TO RULE 59(e)</u>**

Pursuant to Rule 59(e), Defendants American Mariculture, Inc. ("AMI"),

American Peneaid, Inc. ("API"), and Robin Pearl respectfully submit this motion

to alter or amend the Judgment (Doc. #500), and state the following in support

thereof:

**LEGAL STANDARD**

Rule 59(e) provides that "[a] motion to alter or amend a judgment must be

filed no later than 28 days after the entry of the judgment." Fed.R.Civ.P. 59. "Such

motions will only be granted where (1) an intervening change in the law has

occurred, (2) new evidence not previously available has emerged, or (3) the need

to correct a clear error of law or prevent a manifest injustice arises." <u>Gutierrez v.</u>

<u>Ashcroft</u>, 289 F. Supp. 2d 555, 561 (D.N.J. 2003), <u>aff'd on other grounds sub</u>

nom. Gutierrez v. Gonzales, 125 Fed. Appx. 406 (3d Cir. 2005) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir.1995)); see also Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) ("The only grounds for granting [a Rule 59(e)] motion are newly-discovered evidence or manifest errors of law or fact."). "The decision to alter or amend judgment is committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." Lawson v. Singletary, 85 F.3d 502, 507 (11th Cir. 1996).

## ARGUMENT

**I.    The Judgment as to Trade Secret Claims Must Be Overturned to Prevent Manifest Injustice Resulting from Plaintiff's Intentional Concealment of Material Evidence and Repeated Perjury.**

The Judgment must be altered to prevent manifest injustice where Plaintiff intentionally concealed material facts and committed perjury in attempting to suppress evidence to demonstrate that Plaintiff did not own the alleged trade secrets at issue.

As argued in more detail in Defendants' Motion for New Trial Pursuant to Rule 59 (Doc. #483), Plaintiff deliberately withheld crucial information relating specifically to the development and ownership of the shrimp broodstock that forms the basis of Plaintiff's claims. In direct and egregious violation of its obligations in this proceeding, Plaintiff deliberately withheld identification of Mr. Henry Uy, the owner and operator of Feedmix Specialist Inc. II ("Feedmix"), the

leading integrated aquaculture company in the Philippines, who contracted and paid for the identification, purchase, development, transport, testing, and export of the all pathogen exposed ("APE") shrimp from Ecuador. Plaintiff failed to identify Feedmix as an interested person in violation of this Court's Order, dated January 13, 2017. (Doc. #23). Plaintiff's failure also constitutes a violation of the requirements of Rule 26 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 26.[1] Plaintiff further failed to produce a plethora of relevant documents relating to Feedmix despite direct and repeated request for same. (See Doc. #483-1 at Request Nos. 20, 21, 24, 29, and 44). And Plaintiff's principal witness, Ken Gervais, provided false deposition testimony more than two and a half years ago with respect to the origin of Primo's founding stocks, intentionally excluding any mention of Mr. Uy and Feedmix or the project that they had funded, and precluding Defendants from taking any discovery on that issue. (Doc. #483-3 at 28:8-29:25).

The reason for this concealment is evident: Feedmix was the owner of the stock acquired by Neil Gervais in Ecuador, Ken Gervais falsely represented to

---

[1] After giving false testimony to the Court and jury, Plaintiff's witness, Ken Gervais, explicitly utilized an alleged "joint venture" with Mr. Uy and Feedmix to bolster Primo's claims of ownership of broodstock imported from Ecuador. Trial Tr., Day 10, 67:9-68:6. As discussed below, this too appears to be a fabrication where Mr. Uy has disavowed any such joint venture and stated unequivocally that Primo's founding stocks rightfully belonged to Feedmix.

Feedmix that it had received all such animals, and Ken Gervais proceeded to convert the Feedmix animals to the use of Primo without the knowledge or permission of Feedmix. Trial Tr., Day 10, 67:9-16, 74:19-75:20, 77:4-24, 78:16-18, 80:23-81:6, 81:22-85:17, 90:3-91:14, 94:20-95:10; Defendants' Trial Exhibit JJJ, KKK, LLL, MMM, NNN, OOO, PPP, QQQ. Primo did not own the shrimp broodstock that constituted its founding stocks, and TB Food does not own the "germplasm" or "genetics" that it claims were misappropriated by Defendants. This fact is crucial where a demonstration of ownership of the alleged trade secret at issue is an essential element of any claim for misappropriation under both the Defend Trade Secrets Act ("DTSA") and the Florida Uniform Trade Secrets Act ("FUTSA"). 18 U.S.C.A. § 1836; Yellowfin Yachts, Inc. v. Barker Boatworks, LLC, 898 F.3d 1279, 1297 (11th Cir. 2018) ("a plaintiff must demonstrate that … it possessed a trade secret" under FUTSA); see also It Works Mktg., Inc. v. Melaleuca, Inc., 8:20-CV-1743 TKKMTGW, 2021 WL 1650266, at *7 (M.D. Fla. Apr. 27, 2021).

In addition to a judgment entered against him for the creation of a fraudulent contract in California,[2] as stated in Defendants' closing statement, Mr.

---

[2] At trial, the Court twice denied Defendants the opportunity to cross examine Ken Gervais on the prior judgment for fraud against Mr. Gervais in California. Trial Tr., Day 4, 104:2-109:4. Consistent with Mr. Gervais' established character for untruthfulness, he continued to make false representations to the Court and the jury on relevant matters. See Fed.R.Evid. 609.

Gervais has been accused of making false statements by multiple persons involved in this case, including (1) his cousin, Neil Gervais (relating to unauthorized sale and theft of Neil's interest in Primo), (2) Henry Uy of Feedmix (relating to theft of Feedmix's broodstock), (3) Haimao (relating to the loan of $2.1 million to Primo in order to pay for broodstock at AMI), and (4) Robin Pearl (relating to the GOA and the handwritten agreement). Trial Tr., Day 10, 216:23-217:8, 231:2-12, 219:14-20, 219:20-220:2. In addition, the evidence adduced at trial demonstrated that Ken Gervais violated a temporary injunction obtained by his cousin, Neil, by shipping animals to China, and falsified government documents by stating that shrimp originating in Florida originated in Texas. Trial Tr., Day 5, 95:17-97:10, 109:17-110:18.

Consistent with these facts, there is no dispute that Ken Gervais directly provided false testimony on a material matter in this matter. Specifically, on Day 4 of the trial, Ken Gervais testified that Primo itself purchased the animals that became its founding stocks in Ecuador, and paid for the further development and testing of those stocks in the United States. Trial Tr., Day 4, 110:10-111:11. Approximately one week later, when confronted with the correspondence between him and Mr. Uy, Ken Gervais admitted that his original testimony had been false. Trial Tr., Day 10, 67:9-68:6. When confronted with documents provided by Feedmix, Mr. Gervais admitted that, in fact, it was Feedmix and not Primo that

paid for the purchase, development, cleaning, transport, and testing of Primo's founding stocks. Trial Tr., Day 10, 75:10-20, 80:23-81:6, 90:16-91:14. Similar misrepresentations were made by Plaintiff's witness and co-owner of Primo, Neil Gervais. Trial Tr., Day 2, 157:10-14, 182:19-183:1. Thus, it is clear that both Ken Gervais and Neil Gervais, the two principal witnesses regarding the facts underlying Plaintiff's claims for misappropriation of trade secrets, intentionally and knowingly lied to both the Court and the jury regarding the origin and ownership of Primo's founding stocks.

It is now also clear that Ken Gervais' revised testimony was as false as his original testimony. As conclusively demonstrated by the Affidavit of Henry Uy (Doc. #483-4), no joint venture was ever established between Feedmix and Primo, Primo had no right to convert Feedmix's shrimp broodstock to its own use, and Ken Gervais intentionally and surreptitiously misrepresented the fate of that shrimp broodstock to the owner, Feedmix. (Doc. #483-4 at ¶¶10-14); Trial Exhibit LLL.

As stated above, Primo and its successor, TB Food, failed to comply with their discovery obligations in this proceeding in at least three separate respects. Likewise, Ken Gervais and Neil Gervais thus gave false testimony on the same issue before the Court and the jury on at least three separate occasions. When given the opportunity to testify truthfully, Ken Gervais continued to fabricate self-

serving testimony as is consistent with his history of fraudulent behavior. Under these circumstances, the Judgment should be altered to overturn the jury's Verdict finding liability against API and Robin Pearl on Plaintiff's twin claims of trade secret misappropriation in order to avoid a manifest injustice. Gutierrez, 289 F. Supp. 2d at 561; North River Ins. Co., 52 F.3d at 1218.

## II. The Judgment Must Be Amended to Preclude Duplicative Recovery on Plaintiff's Twin Trade Secret Claims, which Constitutes a Manifest Error of Law.

The Judgment contains manifest legal error in that it fails to account for the duplicative recovery occasioned by the jury's identical award of damages on each of Plaintiff's twin trade secret claims. (Doc. #500 at 6). The law is clear that "the courts can and should preclude double recovery …." St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1203 (11th Cir. 2009) (citing Gen. Tel. Co. v. EEOC, 446 U.S. 318, 333 (1980)). Furthermore, "[i]t is clear that no duplicating recovery of damages for the same injury may be had." White v. United States, 507 F.2d 1101, 1103 (5th Cir. 1975); see also Finch v. City of Vernon, 877 F.2d 1497 (11th Cir. 1989) (holding that a plaintiff cannot recover twice for the same injury.).

"Where a plaintiff seeks recovery for the same damages under different legal theories, only a single recovery is allowed." Conway v. Icahn & Co., 16 F.3d 504, 511 (2d Cir. 1994). The Conway case is instructive in the instant case, particularly as to the jury's identical awards for trade secret misappropriation

under two different legal theories. In <u>Conway</u>, unlike the case at bar, the jury expressed an intention to award the plaintiff separate damages for negligence and breach of fiduciary duty; however, the Second Circuit agreed with the trial court that "the separate awards were duplicative and therefore impermissible as a double recovery." <u>Conway v. Icahn & Co., Inc.</u>, 16 F.3d 504, 511 (2d Cir. 1994). The Second Circuit's decision was subsequently approvingly cited by the Eleventh Circuit. <u>Sanderson</u>, 573 F.3d at 1203; <u>see also</u> <u>Kadiyala v. Pupke</u>, 17-80732-CIV-KAM, 2021 WL 6750792, at *2 (S.D. Fla. Dec. 17, 2021) (citing <u>Conway</u> and multiple cases under federal and Florida law prohibiting double recovery by two similar claims); <u>Barrow v. Bristol-Myers Squibb</u>, 96-689-CIV-ORL-19B, 1998 WL 812318, at *46 (M.D. Fla. Oct. 29, 1998), <u>aff'd sub nom.</u> <u>Barrow v. Bristol Meyers Squibb</u>, 190 F.3d 541 (11th Cir. 1999) ("Although Plaintiff has met the elements for recovery of damages under theories of strict liability, negligence, and fraud/negligent misrepresentation, no double recovery for the same injury shall be allowed.").

In this case, the jury expressed no intention whatsoever to award separate damages under DTSA and FUTSA; even if it had, its identical award of damages for violation of DTSA and FUTSA would constitutes an impermissible double recovery under both federal and Florida law. As such, in the event that the Court allows the jury's Verdict as to Plaintiff's trade secret claims to stand, the Judgment

should be altered to state a single award of $4,950,000.00 for the single injury occasioned by API and Robin Pearl's alleged misappropriation of trade secrets.

## III. The Judgment Must Be Amended to Correct Various Manifest Errors of Fact.

The Judgment misstates the Court's determination of claims in favor of Defendants and against one-time Plaintiff PB Legacy, Inc. ("PB Legacy"). Specifically, the second paragraph under the heading "Non-Jury" on page 5,[3] states "On April 10, 2020, an Opinion an Order (Doc. #306) was entered granting summary judgment as to PB Legacy, Inc., which was dismissed without prejudice as plaintiff in all counts in the Amended Complaint." (Doc. #500 at 5). A factually-correct statement of that decision, and one that is consistent with other decisional statements contained in the same section, would state, "On April 10, 2020, an Opinion and Order (Doc. #306) was entered granting summary judgment in favor of defendants as to Counts III through VIII of the Amended Complaint (Doc. #20) as brought by plaintiff PB Legacy, Inc."

The Judgment also misstates the Court's determination of claims in favor of Third-party Defendants Kenneth Gervais and Randall Aungst and against Counter- and Third-party Plaintiff American Mariculture, Inc.("AMI"). Specifically, the third paragraph under the heading "Non-Jury" on page 5, states

---

[3] Defendants note that the four-page Judgment itself is numbered page 4 through page 7, which appears to be an additional error.

"On May 5, 2020, an Opinion and Order (Doc. #307) was entered granting summary judgment in favor of third-party defendants Kenneth Gervais and Randall Aungst as to all counts in the Amended Complaint ((Doc. #20) against them." (Doc. #500 at 5). A factually correct statement of that decision would state, "On May 5, 2020, an Opinion and Order (Doc. #307) was entered granting summary judgment in favor of third-party defendants Kenneth Gervais and Randall Aungst as to <u>Counts II and III of the Counterclaim brought by third-party Plaintiff American Mariculture, Inc. (Doc. #80)</u>."

The aforementioned factual errors have likewise been incorporated into the Judgment itself.  Specifically, the Judgment reads as follows:

> (a) Judgment is entered in favor of American Mariculture, Inc., American Peneaid, Inc. and Robin Pearl as to Count II and Count IX of the Amended Complaint (Doc. #20) and plaintiff TB Food USA, LLC shall take nothing as to these counts.

> (b) Judgment is entered dismissing without prejudice PB Legacy, Inc. as plaintiff in all counts in the Amended Complaint (Doc. #20).

> (c) Judgment is entered in favor of Kenneth Gervais and Randall Aungst as to all counts against them in the Amended Complaint (Doc. #20), and plaintiff TB Food USA, LLC shall take nothing as to these defendants.

A factually correct statement of the Court's prior decisions as incorporated into the Judgment, would read as follows:

> (a) Judgment is entered in favor of American Mariculture, Inc., American Peneaid, Inc. and Robin Pearl as to Count II and Count IX of the Amended Complaint (Doc. #20) and plaintiffs TB Food USA, LLC <u>and PB Legacy, Inc.</u> shall take nothing as to these counts.

(b) Judgment is entered <u>in favor of American Mariculture, Inc., American Peneaid, Inc. and Robin Pearl as to Count III through Count VIII of the Amended Complaint (Doc. #20) and plaintiff PB Legacy, Inc. shall take nothing as to these counts</u>.

(c) Judgment is entered in favor of Kenneth Gervais and Randall Aungst <u>as to Count II and Count III of the Counterclaim (Doc. #80) and counter- and third-party plaintiff American Mariculture, Inc. shall take nothing as to these third-party defendants</u>.

The Judgment, as currently drafted, also suffers from an apparent drafting bias in favor of plaintiff TB Food USA, LLC, and plaintiff and counter-defendant PB Legacy, Inc. Specifically, the judgment arising from the jury's verdict in favor of defendant American Mariculture, Inc. on Count I of the Amended Complaint (Doc. #20) relating to breach of contract is stated in terms decidedly more favorable to plaintiff TB Food USA, LLC than the Verdict warrants,[4] while the jury's verdict in favor of plaintiff and counter-defendant PB Legacy, Inc. on Count IV of the Counterclaim (Doc. #80), which relates to breach of the same contract. As currently stated, the relevant provision reads as follows:

**Count I:**  Judgment is entered in favor of American Mariculture, Inc. as to the breach of contract claim relating to the Nondisclosure Agreement and

---

[4] Plaintiff and its counsel have repeatedly sought to rely upon an alleged breach of the underlying agreements between the parties to undermine, *inter alia*, Defendants' argument that Plaintiff's twin claims for misappropriation of trade secrets are prohibited where the alleged misappropriation was conducted by "reverse engineering," as repeatedly admitted by Plaintiff and its counsel at trial. Plaintiff has failed to present the Court with any case law suggesting that a breach of contract claim decided in favor of the defendant may (contrary to the explicit verdict of the jury) be used to bolster other claims at issue. Plaintiff has likewise failed to present any case law that would permit it to utilize the exonerated breach of one party (AMI) against two separate parties (API and Robin Pearl) who were not parties to the underlying agreement.

the Grow-Out Agreement based on the jury findings that while American Mariculture, Inc. had breached the contracts, American Mariculture, Inc. had proven that the breach of contract claim was barred by the *in pari delicto* defense. TB Food USA, LLC shall take nothing as to this claim.

A non-biased statement of the jury's Verdict as to Count I of the Amended Complaint (Doc. #20), and one that is substantially equivalent to the existing statement of the jury's Verdict as to Count IV of the Counterclaim (Doc. #80), would read as follows:

**Count I:**  Judgment is entered in favor of American Mariculture, Inc. as to the breach of contract claim relating to the Nondisclosure Agreement and the Grow-Out Agreement and TB Food USA, LLC shall take nothing as to this claim based on the jury finding that American Mariculture, Inc. had proven its defense of in pari delicto and that TB Food USA, LLC was precluded from bringing this claim.

## CONCLUSION

Wherefore, for the foregoing reasons, the Judgment (Doc. #500) should be altered and amended as specified herein.

Respectfully submitted this 3rd day of February 2022.

/s/Patrick J. O'Connor
Patrick J. O'Connor
Florida Bar No. 0715778
**O'CONNOR HERNANDEZ
& ASSOCIATES, P.A.**
999 Brickell Avenue, Suite 740
Miami, Florida 33131
Telephone:  786.628.7541
poconnor@oconnorhernandez.com

/s/Melville G. Brinson
Melville G. Brinson Ill
Florida Bar No. 494003
**MELVILLE G. BRINSON Ill, P.A.**
8359 Stringfellow Road
St. James City, Florida 33956
Telephone: 239.282.0551
brinson@afblaw.com

*Counsel for AMI, API, and Robin Pearl*

## **LOCAL RULE 3.01(g) CERTIFICATION**

The undersigned conferred by electronic mail with counsel for Plaintiff and Counter-Defendant in an effort to resolve the issues raised herein. Counsel for the Plaintiff has indicated that Plaintiff opposes the relief sought herein.

/s/ Patrick J. O'Connor

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that in accordance with the federal and local rules the foregoing document is being filed on this 3rd day of February 2022, via the Court's CM/ECF filing system, which will serve a copy electronically on all counsel of record.

/s/ Patrick J. O'Connor

13