IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TB FOOD USA, LLC, a Delaware Limited
Liability Company, et al.,

  Plaintiff,

v.

CASE NO.: 2: 17-cv-9-FtM-29CM

AMERICAN MARICULTURE, INC., a
Florida Corporation, et al.,

  Defendants.
_____/

AMERICAN MARICULTURE, INC., a
Florida Corporation,

  Counter-Plaintiff,

v

PB LEGACY, INC., a Texas Corporation, et al.,

  Counter- and Third-Party Defendants.
_____/

## DEFENDANTS', AMERICAN MARICULTURE, INC., AMERICAN PENAEID, INC., AND ROBIN PEARL, RESPONSE TO PLAINTIFF'S MOTION FOR ENHANCED/ EXEMPLARY DAMAGES, PRE AND POST-JUDGMENT INTEREST, AND DISGORGEMENT WITH INCORPORATED MEMORANDUM OF LAW (DOC. #488)

COME NOW the Defendants AMERICAN MARICULTURE, INC. ("AMI") AMERICAN PENAEID, INC. ("API"), and ROBIN PEARL ("Pearl") by and through their undersigned counsel hereby respond to Plaintiff's Motion for Enhanced/Exemplary Damages, Pre and Post-Judgment Interest, and Disgorgement with Incorporated Memorandum of Law (Doc. #488) and would say:

1.    The Motion requests Enhanced/Exemplary Damages Enhanced/Exemplary Damages, Pre and Post-Judgment Interest, and Disgorgement

{00074794.DOC}

TB Food USA, LLC, et al. v. American Mariculture, Inc., et al.
Response to Plaintiff's Motion for Enhanced/Exemplary Damages, Pre and Post-Judgment Interest, and Disgorgement with Incorporated Memorandum of Law
Case No. 2:17-cv-9-FtM-29CM
Page 2

## The Jury's Verdict Specifically Determined That The Defendants' Actions Were Neither Malicious Nor Willful

2. The Plaintiff's argument for enhanced/exemplary damages appears to be based upon an assumption that the jury's determination in this matter included a finding that the supposed misappropriation of trade secrets by the Defendants API and PEARL was "willfully and maliciously" done. In fact, there is no such evidence and the jury's verdict clearly indicates the contrary. Interestingly, Plaintiff argues that it is for the jury to determine whether misappropriation is willful and malicious and that the jury's verdict should not be disturbed, and then asks this Court to do exactly that.

3. The Court's Jury Instructions regarding trade secret misappropriation claims included an instruction on exemplary damages. (Doc. #456, page 34). In the Exemplary Damages instruction, the Court instructed the jury that if they found Defendants to have engaged in willful and malicious misappropriation of the trade secrets, they could award "exemplary" damages, that is damages meant to make an example of the Defendants.

4. It should also be noted that the jury's verdict found in favor of Defendant AMI and against the Plaintiff on the trade secret claims (Doc. #465). As of April 30, 2016, the date on which Primo departed the shrimp farm, abandoning their shrimp and leaving them in the possession of the Defendant AMI, AMI was the party operating the shrimp farm. Presumably had the jury found malice or willfulness in the Defendant's actions they would have included AMI in their verdict in favor of the Plaintiff but they chose not to do so.

Case 2:17-cv-00009-JES-NPM   Document 540   Filed 02/09/22   Page 3 of 11 PageID 14917

TB Food USA, LLC, et al. v. American Mariculture, Inc., et al.
Response to Plaintiff's Motion for Enhanced/Exemplary Damages, Pre and Post-Judgment Interest, and Disgorgement with Incorporated Memorandum of Law
Case No. 2:17-cv-9-FtM-29CM
Page 3

5.   In the verdict rendered by the jury (Doc. #465), the jury specifically found in favor of the Plaintiff on the Federal and the State misappropriation of trade secrets claims, and specifically awarded compensatory damages but not exemplary damages. In other words, a clear reading of the jury's verdict is that they specifically found the Defendants API and PEARL did not engage in willful and malicious misappropriation. The Plaintiff's argument asks the Court to completely disregard this finding by the jury and to impose exemplary damages anyway.

## The Defendants Could Not Have Known Their Actions Could Be Considered Misappropriation of Trade Secrets

6.   As the Defendants have discussed extensively in their Renewed Motion for Judgment as a Matter of Law (Doc. #484), should the jury's verdict be allowed to stand, such would constitute the creation of new law in the United States never before existing to the effect that the genetics embodied in a bred animal can constitute a trade secret under the State and the Federal Statute involved. There is nothing in the Congressional Record either at the State or Federal level indicating that such was ever the intent of either Legislative body. *See* FUTSA Cong. Rec. Vol. 162, No. 50, Cong. Rec. Vol 162, No. 62 (a copy of which was previously filed as Doc. # 509-1); H.R. Rep No. 114-529 (2016); S. Rep No. 114-220 (2016); *M.C. Dean*, *199 F. Supp. 3d at 1356*. It is difficult to see, therefore, how the Defendants could have known in 2016 that they were taking actions in violation of these two trade secret statutes which, prior to the jury's verdict, if allowed to stand, were not prohibited by either statute.

{00074794.DOC}

TB Food USA, LLC, et al. v. American Mariculture, Inc., et al.
Response to Plaintiff's Motion for Enhanced/Exemplary Damages, Pre and Post-Judgment Interest, and Disgorgement with Incorporated Memorandum of Law
Case No. 2:17-cv-9-FtM-29CM
Page 4

7. It is further very clear that the Defendants' actions in having the shrimp abandoned on their farm examined by Franklin Perez was nothing more than reverse engineering, both clearly by the nature of reverse engineering and the actions of the Defendants as described in testimony, and as admitted to by the Plaintiff's witnesses who testified that reverse engineering is what the Defendants engaged in. *See* Transcript of Trial Proceedings, November 9, 2021 (Doc. #468), pp. 43:22-44:2.

8. Florida and Federal Law exclude reverse engineering, independent derivation, or any other lawful means of acquisition from the definition of "improper means". *See Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 (11th Cir. 2020) (citing 18 U.S.C. §1839(6)) (emphasis added). "Reverse engineering" is the process of discovery how an invention works by inspection and studying it, such as by taking it apart in order to learn how it works and how to copy it and improve it. DThis is exactly what Dr. Franklyn Perez did in testing the abandoned shrimp. Reverse engineering is a proper means of discovery trade secrets and is a defense against a suit for misappropriation of trade secrets. *See* REVERSE ENGINEERING, Black's Law Dictionary (11th ed. 2019). *See also* specifically argument set forth in Defendants' AMERICAN PENAEID, INC. and ROBIN PEARL's Renewed Motion for Judgment as a Matter of Law (Doc. #484, pages 12 through 16).

9. There was, therefore, no reason for Defendants to anticipate that Plaintiff had intellectual property rights in the bred animals Primo had abandoned on the Defendants' shrimp farm. It is difficult to see how the actions of API and PEARL could have been characterized as willful or malicious when at the time, specifically 2016, they had every

{00074794.DOC}

Case 2:17-cv-00009-JES-NPM   Document 540   Filed 02/09/22   Page 5 of 11 PageID 14919

TB Food USA, LLC, et al. v. American Mariculture, Inc., et al.
Response to Plaintiff's Motion for Enhanced/Exemplary Damages, Pre and Post-Judgment Interest, and Disgorgement
with Incorporated Memorandum of Law
Case No. 2:17-cv-9-FtM-29CM
Page 5

reason to believe their actions were lawful and were an appropriate way to attempt to mitigate the significant damages they had suffered from Plaintiff's breach of the grow out agreement.

10. As PEARL testified at trial:

Q. "Okay. Did you, after April 30, 2016, did you sell to historical Primo Broodstock Customers?"
A. "A couple, yes."
Q. "Okay. What were you hoping to accomplish by selling to those customers?"
A. "I was hoping to mitigate my losses, my damages."
Q. "Okay. Was Primo Broodstock selling to those customers at the time?"
A. "No, they were not."
Q. "And why is this?"
A. "Because they were exclusive to Haimao. They were not selling to anybody."
Q. "Okay."

*See* Jury Trial Proceedings November 9, 2021, pp.21:21-25 and 22:1-8.

## No Evidence of Willful or Maliciousness Misappropriation When Co-Founder and "Chief Science Officer" Neil Gervais Participated In And Directed The Reverse Engineering Engaged in By the Defendants

11. As the Court may recall, Primo Broodstock, Inc. was co-founded by Neil Gervais and Kenneth Gervais. Neil Gervais has been repeatedly identified as the "Chief Science Officer" for Primo who did the actual scientific work selecting and cleaning the shrimp in Ecuador and having them imported into the United States. When the relationship between AMI and Primo terminated, Neil Gervais was still a co-owner and "Chief Science Officer" for Primo.

12. Neil Gervais brought Dr. Franklin Perez from Ecuador and worked with Dr. Perez in testing the shrimp left on the Defendants' farm for the purposes of setting up what became API's founding stocks. *See* Transcript of Trial Proceedings, November 9, 2021

{00074794.DOC}

TB Food USA, LLC, et al. v. American Mariculture, Inc., et al.
Response to Plaintiff's Motion for Enhanced/Exemplary Damages, Pre and Post-Judgment Interest, and Disgorgement with Incorporated Memorandum of Law
Case No. 2:17-cv-9-FtM-29CM
Page 6

(Doc. #472), pp. 38:3-13 and Defendants' Response in Opposition to Plaintiff TB FOOD's Renewed Motion for Judgment as a Matter of Law (Doc. #505), page 5.

13. In addition, contrary to Plaintiff's repeated statements that this genetic analysis was nefariously orchestrated by AMI, the Court will remember that it was Neil Gervais, Chief Science Officer for Primo that presented Dr. Perez to API for the subject analysis and gave his (and Primo's) approval for same (Doc. #472 at 38:24-39:18. *See* Defendants' Response in Opposition to Plaintiff TB FOOD's Renewed Motion for Judgment as a Matter of Law (Doc. #505, Page 5, Footnote 2).

## Prejudgment Interest

14. Plaintiff requests prejudgment interest to the various awards made by the jury. It is certainly feasible that the Plaintiff might be entitled to prejudgment interest on any award that survives the various post-trial motions; however, in order to obtain prejudgment interest, the Plaintiff would have to show a specific date when damage occurred. The Plaintiff has utterly failed to do so as Plaintiff is alleging actions taken over a period of many years without any specific date of injury tied to any specific loss.

15. The only specific date which might possibly serve as a basis for calculating pre-judgment interest for the misappropriation of trade secrets claim would be April 30, 2016, which was the deadline in the handwritten agreement for Primo's departure form the shrimp farm, upon which the shrimp remaining on the farm were abandoned by Primo and became the property of AMI. *See* Handwritten Agreement, Defendants' Exhibit "C" introduced at trial. It should be noted that this date precedes the effective date of the Defense

{00074794.DOC}

Case 2:17-cv-00009-JES-NPM   Document 540   Filed 02/09/22   Page 7 of 11 PageID 14921

TB Food USA, LLC, et al. v. American Mariculture, Inc., et al.
Response to Plaintiff's Motion for Enhanced/Exemplary Damages, Pre and Post-Judgment Interest, and Disgorgement
with Incorporated Memorandum of Law
Case No. 2:17-cv-9-FtM-29CM
Page 7

of Trade Secrets Act, which was May 11, 2016. The Defense of Trade Secrets Act is not retroactive. See *JTH Tax, Inc. v. Freedom Tax, Inc.*, No. 3:19-CV-0085-RGJ, 2019 WL 2062519, at *11 (W.D. Ky. May 9, 2019).

16. Indeed, if the Court determines that the effective date of the supposed "misappropriation" is April 30, 2016, the entire award by the jury for misappropriation of **trade secrets should be struck.**

> "There is no provision for retroactive application of the DTSA to misappropriations committed before the effective date. When Congress does not clearly indicate its intention to apply a civil statute retroactively, courts apply a presumption against retroactive application. *Christian. V. Lannett Co., Inc.* No. CV 16-963, 2018 SL 1532849, at *4 (E.D. Pa. Mar. 29, 2018)".

17. It should also be noted that claiming that ongoing use is a basis for a claim of misappropriation sufficient to allow a pre-Defensive Trade Secret Act "misappropriation" to extend past the effective date of the Act. There is one case that suggested this might be appropriate. See *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.,* No. CV 16-2499, 2017 WL 1105648, at *4 (E.D. Pa. Mar. 24, 2017).

18. However, the *Brand Energy* decision was soundly rejected by many other courts. The Eastern District of Texas, both rejected the reasoning of the *Brand Energy* ruling and distinguished it:

> "In support of its argument, ESPOT cites *Brand Energy & Infrastructure Services v. Irex Contracting Group* for the proposition that continuing use of a trade secret is

{00074794.DOC}

Case 2:17-cv-00009-JES-NPM   Document 540   Filed 02/09/22   Page 8 of 11 PageID 14922

TB Food USA, LLC, et al. v. American Mariculture, Inc., et al.
Response to Plaintiff's Motion for Enhanced/Exemplary Damages, Pre and Post-Judgment Interest, and Disgorgement
with Incorporated Memorandum of Law
Case No. 2:17-cv-9-FtM-29CM
Page 8

sufficient to threaten repetition of the *697 criminal conduct alleged.[7] "*See* No. 16-2499, 2017 WL 1105648, at *12-14 (E.D. Pa. Mar 24, 2017). In *Brand Energy* several employees left the plaintiff company to join the defendant, taking with them equipment and trade secrets, which they used while employed with the defendant company. *Id.* at *1. The plaintiff claimed that the ex-employees' misappropriation of trade secrets "continues to this day." *Id.* at *2. The *Brand Energy* court found that allegations of continuing use of trade secrets along were "sufficient to constitute a 'pattern of racketeering activity' under RIC." *Id. at *12.*

19. Other courts have expressed doubt that this is the type of "ongoing use" activity, absent other acts of racketeering, that involves an open-ended pattern. *See, e.g. Mgmt. Comput. Servs, Inc. v. Hawkins, Ash, Baptie & Co.*, 883 F.2d f8, 51 (7th Cir. 1989) (holding that allegations that defendants copied software and then used it did not "involve [] long-term criminal conduct or activity that could, in common sense, be called a pattern of racketeering."); *Attia v. Google LLC,* No. 17-cv-06037-BLF, *2018 WL* 2971049, at *18 n. 15 (N.D. Cal. June 13, 2018) ("Plaintiffs' theory that 'ongoing use' of trade secrets can somehow constitute two predicate acts of under RICO is entirely unsupported and illogical…Accepting Plaintiffs' theory would turn a single trade secret misappropriation into a RICO offense every time a defendant violated the DTSA and then did not immediately stop their allegedly unlawful use of the trade secrets."), *Binary Semantics LTD. V. Minitab, Inc.,* No. 4:07-CV-1750, 2008 WL 763575, at *4 (M.D. Pa. Mar. 20, 2008) ("[T]he use of trade secrets is quite

Case 2:17-cv-00009-JES-NPM   Document 540   Filed 02/09/22   Page 9 of 11 PageID 14923

TB Food USA, LLC, et al. v. American Mariculture, Inc., et al.
Response to Plaintiff's Motion for Enhanced/Exemplary Damages, Pre and Post-Judgment Interest, and Disgorgement
with Incorporated Memorandum of Law
Case No. 2:17-cv-9-FtM-29CM
Page 9

different from the initial act of stealing them…If plaintiff's complaint were to allege that defendants would continue to steal plaintiff's trade secrets, as opposed to use those which have already been stolen, then there may well be a threat of continuity, but that is not the case here."). *See ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672, 696-97 (E.D. Tex. 2020)

20.   In a footnote, the *ESPOT* Court notes that *Brand Energy* is the only case in which the court found continued use in the absence of continued theft to constitute a continuing misappropriation.

"Though *ESPOT* cites to multiple cases in support of this proposition. (Dkt. #35 at *Brand Energy* is the only one on point. All the other cases involve either additional allegations that the defendant(s) threatened to continue the actual theft of additional trade secret information of the allegations include predicate acts for a significantly longer period of time." *See* ESPOT, Inc. v. MyVue Media, LLC. , 492 F. Supp. 3d 672, n.7 (EE.D. Tex. 2020).

### No Showing of Damages

21.   Plaintiff in fact failed to show any actual damages at trial. At most, they claim that some loss of sales may have occurred with their owner Haimao, which could possibly in the future have some impact to TB FOOD's sales to Haimao. There was no evidence of any actual such impact had ever occurred. As PEARL testified at trial, API does not compete with Primo and API sells broodstock in China, it does not take anything away from TB FOOD. *See* Defendants' AMI and ROBIN PEARL'S Response To TB FOOD USA

{00074794.DOC}

TB Food USA, LLC, et al. v. American Mariculture, Inc., et al.
Response to Plaintiff's Motion for Enhanced/Exemplary Damages, Pre and Post-Judgment Interest, and Disgorgement with Incorporated Memorandum of Law
Case No. 2:17-cv-9-FtM-29CM
Page 10

LLC'S Motion For Injunctive Relief Including Permanent Injunction and Incorporated Memorandum of Law (Doc. #510), Page 4, Paragraph 10 and Paragraph 11. *See also* Transcript Jury Trial Proceedings November 9, 2021, pp. 26:5-10 (Doc. #472).

22. As was argued in Defendant AMERICAN PENAEID, INC., and ROBIN PEARL's Response to TB FOOD USA LLC's Motion for Injunctive Relief Including Permanent Injunction and Incorporated Memorandum of Law (Doc. #510), it is not necessarily the case that the jury awarded any actual damages in the form of a loss by TB FOOD. It is at least equally possible that the award represents what they felt to be an appropriate royalty. *See* Court's Jury Instructions (Doc. #456), Page 2. In the absence of any evidence of actual damages, it is difficult to determine what the Court might choose to "enhance". In addition, the Plaintiff's argument is founded upon an assertion that API and PEARL willfully and maliciously misappropriated the alleged trade secret, which is clearly not the case given the jury's finding in this matter. (*See* above).

23. Much of the Plaintiff's argument in their said Motion consists of assertions and "deductions" utterly unsupported by any evidence of record and utterly unsupported by any finding by the jury. Since the jury found that the Defendants' actions were neither willful nor malicious, these arguments should carry no weight whatsoever with the Court as Plaintiff's counsel appears to be making them up entirely out of speculation and, perhaps, a wish for a different verdict or a different set of facts than that which was presented to the jury and to the Court.

{00074794.DOC}

TB Food USA, LLC, et al. v. American Mariculture, Inc., et al.
Response to Plaintiff's Motion for Enhanced/Exemplary Damages, Pre and Post-Judgment Interest, and Disgorgement with Incorporated Memorandum of Law
Case No. 2:17-cv-9-FtM-29CM
Page 11

WHEREFORE, Defendants ask this Honorable Court to deny the Plaintiff's said Motion.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that in accordance with the Federal and Local Rules, the foregoing document is being filed on this 9th day of February 2022 via the Court's CM/ECF filing system, which will serve a copy electronically on all counsel of record.

Melville G. Brinson III Florida Bar No. 494003
**MELVILLE G. BRINSON III, P.A.**
8359 Stringfellow Road
St. James City, Florida 33956 Telephone: 239.282.0551
Facsimile 239.282.0515 Email: brinson@afblaw.com

/s/ Patrick J. O'Connor
Patrick J. O'Connor Florida Bar No. 0715778
**O'CONNOR HERNANDEZ & ASSOCIATES**
999 Brickell Avenue, Suite 740
Miami, Florida 33131, Telephone: 786.628.7541
poconnodr@oconnodrhernandez.com;
litgroup@oconnorhernandez.com
Trial Counsel for AMI, API and Robin Pearl

{00074794.DOC}