```
              UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION
```

TB FOOD USA, LLC, a
Delaware Limited Liability
Company,

        Plaintiff,

v.                        CASE NO. 2:17-cv-9-FtM-29NPM

AMERICAN MARICULTURE, INC.,
a Florida Corporation,
AMERICAN PENAEID, INC., a
Florida Corporation, and
ROBIN PEARL,

        Defendants.
_____

AMERICAN MARICULTURE, INC.,
a Florida Corporation,

        Third-Party Plaintiff,
v.

PB LEGACY, INC. a Texas
Corporation,

        Third-Party Defendant.
_____

## OPINION AND ORDER

    This matter comes before the Court on review of the following eight post-trial motions: (1) Defendants American Mariculture, Inc., American Penaeid, Inc., and Robin Pearl's Motion For a New Trial Pursuant to Rule 59 (Doc. #483); (2) Defendants American Penaeid, Inc. and Robin Pearl's Renewed Motion for Judgment As a Matter Of Law (Doc. #484); (3) Plaintiff TB Food USA, LLC's Motion

For Permanent Injunction (Doc. #485); (4) Plaintiff TB Food USA, LLC's Renewed Motion for Judgment As a Matter Of Law (Doc. #486); (5) Defendants American Mariculture, Inc., American Penaeid, Inc., and Robin Pearl's Renewed Motion for Sanctions (Doc. #487); (6) Plaintiff TB Food USA, LLC's Motion For Enhanced/Exemplary Damages, Pre and Post Judgment Interest, and Disgorgement (Docs. ##488, 529); (7) Defendants American Mariculture, Inc., American Penaeid, Inc., and Robin Pearl's Motion to Amend Judgment Pursuant To Rule 59 (Docs. ##530, 531, 544); and (8) Defendants American Mariculture, Inc., American Penaeid, Inc., and Robin Pearl's Motion To Dismiss Count IV of the Amended Complaint For Lack of Subject Matter Jurisdiction (Doc. #543).  The parties have filed Responses in Opposition and Replies to each other's motions. (Docs. ##489, 502, 504-505, 509-510, 526-528, 534, 540, 542, 546-547.) The Court heard oral arguments on the motions on May 23, 2022. With leave of court, the parties filed supplemental memorandum thereafter.  (Docs. ##551, 552.)

## I. Jury Verdicts

On November 1, 2021, a jury trial began on the claims set forth in Plaintiff's Amended Complaint (Doc. #20) and in third-party Plaintiff's Counterclaim (Doc. #80) which had not been resolved prior to trial.  The jury rendered its verdicts on November 19, 2021 (Doc. #465) as follows:

### A. Amended Complaint

#### (1)  Count I — Breach of Contract

The jury found that TB Food USA, LLC (TB Food) had proven American Mariculture, Inc. (AMI) (the only defendant) breached the Nondisclosure Agreement (NDA) and the Grow-Out Agreement (GOA). The jury rejected two equitable estoppel affirmative defenses by AMI, but found that AMI had proven its affirmative defense that the breach of contract claim was barred by the *in pari delicto* defense. Therefore, TB Food was not awarded any damages as to Count I. (Doc. #465, ¶¶ 1-13; Doc. #500.)

#### (2)  Count III — Defamation

The jury found that TB Food had not proven its defamation claim against AMI or American Penaeid, Inc. (API), but had proven the defamation claim against defendant Robin Pearl (Mr. Pearl). The jury awarded TB Food $500,000 in compensatory damages against Mr. Pearl.  (Doc. #465, ¶¶ 14-18; Doc. #500.)

#### (3)  Count IV — Federal Defend Trade Secrets Act

The jury found that TB Food had not proven its federal Defend Trade Secrets Act (DTSA) claim against AMI, but had proven the claim against API and Mr. Pearl.  The jury awarded TB Food $4,950,000.00 in compensatory damages. (Doc. #465, ¶¶ 19-30; Doc. #500.)  The jury also found that TB Food had proven that Mr. Pearl and API had willfully and maliciously misappropriated one or more of Primo's trade secrets, but awarded no exemplary damages.  (Id.)

### (4)   Count V — Florida Uniform Trade Secrets Act

The jury found that TB Food had not proven its Florida Uniform Trade Secrets Act (FUTSA) claim against AMI, but had proven the claim against API and Mr. Pearl. The jury awarded TB Food $4,950,000.00 in compensatory damages and no exemplary damages. (Doc. #465, ¶¶ 31-40; Doc. #500.)

### (5)   Count VI — Lanham Act False Advertising Claim

The jury found that TB Food had not proven its Lanham Act False Advertising claim against AMI, but had proven the claim against API and Mr. Pearl.  The jury awarded TB Food compensatory damages of $100,000.00 and no exemplary damages. (Doc. #465, ¶¶ 41-50; Doc. #500.)

### (6)   Counts VII and VIII — Florida Unfair Competition

The jury found that TB Food had not proven its Unfair Competition claims against AMI, API, or Mr. Pearl.  (Doc. #465, ¶¶ 51-53; Doc. #500.)

## B.  Counterclaim

The jury found that AMI had proven that PB Legacy, Inc. (PB Legacy) breached the Grow-Out Agreement.  The jury also found, however, that PB Legacy had proven its affirmative defenses of equitable estoppel and ratification, but not its waiver defense. Therefore, AMI was not awarded any damages. (Doc. #465, ¶¶ 61-66; Doc. #500.)

## II. Renewed Motions For Judgment As Matter of Law

All parties made oral and/or written motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) at the appropriate times during trial.  The Court took some issues under advisement, while denying the other portions of the motions.  After the trial, the Court issued an Opinion and Order (Doc. #499) denying the outstanding portions of the motions.  All parties now renew their motions for judgment as a matter of law.

Federal Rule of Civil Procedure 50(b) allows a party to renew a motion for judgment as a matter of law made pursuant to Rule 50(a) following entry of a jury verdict. See Fed. R. Civ. P. 50(b). Rule 50(b) provides, in pertinent part:

> (b) If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. . . . In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).

A renewed motion under Rule 50(b) must be based on the same grounds as the earlier Rule 50(a) motion.  Connelly v. Metro. Atlanta Rapid Transit Auth., 764 F.3d 1358, 1363 (11th Cir. 2014). When considering a Rule 50(b) motion, the court determines whether the record — viewed in the light most favorable to the prevailing

party — points so overwhelmingly in favor of the opposing side that the jury's verdict cannot stand.  Yates v. Pinellas Hematology & Oncology, P.A., 21 F.4th 1288, 1298 (11th Cir. 2021).  "Stated differently, the verdict will be set aside only if no reasonable jury could have arrived at it."  Id.  Where there is substantial evidence in the trial record that would allow reasonable minds to reach different conclusions, judgment as a matter of law is not appropriate.  Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1211 (11th Cir. 2010).  The Court does not weigh the evidence or make credibility determinations in determining such a renewed motion. Brown v. Ala. Dept. of Transp., 597 F.3d 1160, 1173 (11th Cir. 2010).

### A. Defendants API and Mr. Pearl's Renewed Motion for Judgment As a Matter Of Law

Defendants API and Mr. Pearl renew their request that the Court enter judgment in their favor as a matter of law on Plaintiff's defamation claim (Count III), Defend Trade Secrets Act (DTSA) claim (Count IV), the Florida Uniform Trade Secrets Act (FUTSA) claim (Count V), and the federal unfair competition claim (Count VI). (Doc. #484.) For the reasons discussed below, the motion is denied. Any argument not specifically discussed is denied as without merit.

**(1)  Sufficiency Of Trade Secret Evidence**

Defendants API and Mr. Pearl argue that TB Food failed to introduce legally sufficient evidence that bred shrimp constitute a valid trade secret under either the federal or Florida trade secret statutes. (Doc. #484, p. 3.)  Defendants argue that while the DTSA defines a trade secret to include "forms and types of . . . information" that the owner endeavors to keep secret, and the FUTSA protects "information" which has been subject to efforts to maintain secrecy, neither statute references protection of bred animals, genetics, or selective breeding. (Id., pp. 3-5.) Defendants further assert that both the Amended Complaint and the Plaintiff's position at trial was that the trade secret at issue was both the genetic information about the shrimp and the shrimp themselves. The evidence fails to support either theory, Defendants argue, because (1) Primo never had knowledge of the information about "underlying Primo shrimp genetics" since no genetics analysis of its shrimp was ever conducted by Primo, and none of the so-called "information" was ever disclosed to or received by AMI (Id., p. 6); and (2) no court in the United States has ever found that the genetics of bred animals constitute a trade secret under the DTSA or the FUTSA. (Id., p. 7.)  In sum, Defendants argue that TB Food failed to adduce legally sufficient evidence to prove that its bred shrimp constituted valid trade secrets under either the DTSA or FUTSA and, while information can be a trade

secret, TB Food failed to present any evidence at trial of any information that was known to TB Food and misappropriated by Defendants.  (Id., pp. 8-9.)

TB Food responds that a trade secret under both federal and Florida statutes consists of certain "information."  (Doc. #489, p. 4 n.3.)  TB Food asserts that the trade secrets in this case were twofold: (1) the "biologic information and markers of animals including genetic information" (Id., p. 4), and (2) "the underlying knowledge as to which Primo shrimp belonged to which Primo families."  (Id.)

The Court previously stated that Primo's alleged trade secrets may qualify as trade secrets if the finder of fact determined they met the statutory criteria in the DTSA and/or FUTSA.  (Doc. #306, pp. 37-38.)  The jury was instructed in large part by tracking the language of the statutes.  (Doc. #456, pp. 26-38.)  The jury found that the credible evidence supported the existence of a trade secret within the meaning of the federal and Florida trade secret statutes.  Despite the respective spins placed by the parties, no new law was created by the verdicts.  The jury simply applied the trade secrets statutes to the facts it determined to be supported by the evidence.  There was sufficient evidence admitted at trial from which a reasonable jury could find that there was "information" in this case which qualified as a trade secret under both federal and Florida law (see Doc. #489, p.

6, n. 5, 7) and that Plaintiff had knowledge of underlying genetics from the many thousands of breeding records received as exhibits and the testimony of certain witnesses.  While much of the evidence was disputed, Rule 50(b) requires the evidence and reasonable inferences from the evidence to be viewed in the light most favorable to the non-moving party – TB Food in these counts.  Since a reasonable jury could have arrived at the verdicts on the trade secrets claims, this portion of the motion is denied.

**(2)  Sufficient Evidence Of Ownership Of Trade Secrets**

Defendants API and Mr. Pearl argue that TB Food failed to submit legally sufficient evidence that it owned any alleged trade secret, as required by the DTSA, or "possessed" a trade secret, as required by the FUTSA. (Doc. #484, p. 9.)  Indeed, Defendants assert that the evidence established that the shrimp broodstock that constituted TB Food's founding broodstock was owned by an unrelated company, Feedmix Specialists, Inc. (Feedmix). (Id., pp. 9-12.)  Defendants assert that "[o]ther than the false testimony provided by" two witnesses, there is no evidence of TB Food's ownership of the alleged trade secrets.  (Id., p. 12.)

As discussed in more detail below in connection with the Motion for Sanctions, there was indeed evidence that the founding broodstock was owned by Feedmix.  But there was also substantial evidence to refute this assertion.  (See summary at Doc. #489, p. 9.)  As with many aspects of this case, the testimony was

contradictory on a variety of issues, and the jury was instructed to determine credibility utilizing well-established principles. (Doc. #456, pp. 3-5.)   Nothing required the jury to accept the Feedmix ownership theory, and the jury's credibility choice to the contrary is certainly supported by evidence the jury was entitled to rely upon.   Viewing the evidence as required in a Rule 50(b) motion, there was sufficient evidence that TB Food both owned and possessed the trade secrets at issue.   This portion of the motion is therefore denied.

**(3) Sufficient Evidence Of "Improper Means" - Reverse Engineering**

Defendants API and Mr. Pearl correctly point out that misappropriation of a trade secret by acquisition under both federal and Florida law requires a showing that a trade secret was acquired by "improper means." Defendants also correctly assert that both federal and state law specifically exclude reverse engineering from the definition of "improper means." (Doc. #484, p. 12, citing Compulife Software Inc. v. Newman, 959 F.3d 1288, 1311 (11th Cir. 2020)).   TB Food agrees that reverse engineering is not an "improper means" under either the federal or Florida trade secret statutes.   (Doc. #489, pp. 11-12, also citing Compulife Software Inc., 959 F.3d at 1311-13).   Defendants argue that TB Food and its witnesses repeatedly stated that the genetic analysis of the shrimp at issue was "reverse engineering," and

therefore was a *proper* means which did not violate either the federal or state trade secret statutes.  (Doc. #484, pp. 12-16.)

TB Food responds that "Defendants acquired Plaintiff's trade secrets by improper means by breaching their duty to maintain secrecy and not to use Plaintiff's trade secrets under the Mutual Non-Disclosure Agreement and the Grow-Out Agreement and then exploited it for Defendants' enrichment and to Plaintiff's detriment."  (Doc. #489, p. 12.)   Thus, TB Food argues, a trade secret is acquired by an "improper means" when it is reverse engineered contrary to contractual agreements such as contained in the NDA and GOA. (Id.) TB Food argues there was sufficient evidence presented that Defendants were prohibited from using Primo shrimp and its underlying genetics for anything other than being sold as table shrimp; were prohibited from unlocking the genetics to separate live Primo shrimp AMI kept after April 30, 2016, into families; and were prohibited from disclosure of live Primo shrimp to third parties.  Therefore, TB Food argues, the evidence shows conduct which was not merely "reverse engineering."  (Doc. #489, p. 13.)

The evidence was sufficient to allow the jury to determine Defendants used "improper means" not authorized by TB Food or the law as to the misappropriation of trade secrets claims.  (Doc. #456, pp. 29-30.) The jury was instructed that "improper means" did not include "reverse engineering" and was provided a definition

of both terms. (Id., pp. 30, 37-38.) Upon consideration of the law and the evidence, the jury determined that API and Mr. Pearl misappropriated one or more of TB Food's trade secrets through "improper means." There was sufficient evidence admitted at trial from which reasonable jurors could find defendants API and Mr. Pearl engaged in "improper means" to acquire trade secrets, as defined by the proper instructions. Therefore this portion of the motion is denied pursuant to Rule 50(b).

> **(4) Sufficient Evidence Of Trade Secret Misappropriation By Robin Pearl**

Mr. Pearl contends that TB Food conceded at trial that its DTSA and FUTSA claims against him were brought on a theory of piercing the corporate veil (or alter ego). (Doc. #484, p. 16.) Mr. Pearl argues that TB Food never set forth such a claim or theory in its Amended Complaint, and therefore could not properly assert a "piercing the veil" claim at trial. (Id., pp. 16-17.) Additionally, Mr. Pearl argues that TB Food adduced no evidence showing Mr. Pearl individually (as opposed to when acting in his capacity as a corporate officer) misappropriated any trade secret. (Id., p. 17.) Based on the pleading deficiency and the lack of evidentiary support, Mr. Pearl asserts that the Court should issue judgment in his favor as to Claims IV and V of the Amended Complaint. (Id.)

TB Food responds that it did not have to pierce the corporate veil to impose individual tort liability on Mr. Pearl because the DTSA, FUTSA, and Lanham Act provide for liability based on a corporate officer's own torts. (Doc. #489, p. 15.) Thus, TB Food argues that Mr. Pearl is not shielded from individual liability even if he acted as an agent and corporate representative of a defendant corporation, since he was the moving force behind misappropriation of trade secrets and false advertising. (Id., pp. 16-17.)

Florida law provides that "[a] corporate officer may be individually liable for torts committed even while acting as the representative of the corporate entity." Roth v. Nautical Eng'g Corp., 654 So. 2d 978, 979-80 (Fla. 4th DCA 1995)(citations omitted). See also Littman v. Commercial Bank & Tr. Co., 425 So.2d 636, 640 (Fla. 3d DCA 1983); Scutieri v. Miller, 605 So. 2d 972, 973 (Fla. 3d DCA 1992). "Misappropriation of trade secrets is an intentional tort in the state of Florida." Bovie Med. Corp. v. Livneh, No. 8:10-CV-1527-T-24EAJ, 2010 U.S. Dist. LEXIS 134490, 2010 WL 5297172, at *6 (M.D. Fla. Dec. 20, 2010) (citing Vance v. Tire Eng'g and Distribution, LLC, 32 So.3d 774, 776 (Fla. 2d DCA 2010)). Likewise, the DTSA provides for individual liability. 18 U.S.C. § 1839.

Additionally, individual liability is also available under the Lanham Act. Chanel, Inc. v. Italian Activewear of Fla., Inc.,

931 F.2d 1472, 1477 (11th Cir. 1991)("If an individual actively and knowingly caused the infringement, he is personally liable [for trademark infringement]."). "Specifically, a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1184 (11th Cir.1994). See also ADT LLC v. Alarm Prot. Tech. Fla., LLC, 646 Fed. Appx. 781, 787-88 (11th Cir. 2016); Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 851 (11th Cir. 1988) (finding it unnecessary to pierce the corporate veil to hold individuals liable for Lanham Act violations where the "[i]ndividual [d]efendants actively and knowingly directed the false advertising.").

The jury heard testimony directly from Mr. Pearl (and other witnesses) about his interaction with Plaintiff and the conduct underlying the trade secret misappropriation and unfair competition claims brought against him. The jury was instructed on the applicable law for each claim, and that TB Food asserted these claims against all three defendants. The jury verdicts made distinctions between the parties and, based on testimony and evidence it determined to be credible, found that Mr. Pearl was personally liable for participation in the misappropriation of trade secrets and unfair competition. While Defendants argue that

no evidence showed Mr. Pearl, individually, engaged in such activities, the jury reasonably concluded otherwise.  Viewing the evidence and inferences in a light most favorable to TB Food in accordance with Rule 50(b), the Court denies this portion of the motion.

**(5)   Interference with Chinese Sovereignty**

Defendants API and Mr. Pearl argue that the Lanham Act confers jurisdiction over extraterritorial disputes involving unfair competition only when there is a showing that (1) defendant is a United States corporation, (2) the foreign activity had substantial effects in the United States, and (3) exercising jurisdiction would not interfere with the sovereignty of another nation.  (Doc. #484, p. 18, citing Steele v. Bulova Watch Co., 344 U.S. 280 (1952).)  Defendants assert that TB Food failed to present any evidence of the second and third requirements. (Id.)

In Steele v. Bulova Watch Co. the Supreme Court considered the extraterritorial application of a Lanham Act claim, concluding that a United States company could sue a United States citizen for trademark infringement occurring in Mexico under the Lanham Act when: (1) defendant is a United States corporation; (2) the foreign activity had substantial effects in the United States; and (3) exercising jurisdiction would not interfere with the sovereignty of another nation.  Steele, 344 U.S. at 286-89.  See also Int'l

Cafe, S.A.L. v. Hard Rock Cafe Int'l., 252 F.3d 1274, 1278 (11th Cir. 2001).

The evidence, viewed under the Rule 50(b) prism, established false statements made by Defendants in China.  TB Food argues that it introduced substantial evidence that Defendants' false statements and advertising in China had substantial effects in the United States. (Doc. #489, p. 18.)  This included the dissemination in the United States of the false statements in both English-language publications and dual-language materials designed to help API sell shrimp around the world, and that the falsities harmed TB Food's reputation and good will.  (Id.)  Viewing the evidence as required by Rule 50(b), there is sufficient evidence to support plaintiff's claim of false advertising and substantial effect in the United States.

TB Food also argues that the verdict on the Lanham Act claim has no conceivable impact on China's sovereignty because it does not concern a trademark, which is the nature of the ongoing litigation in China.  (Doc. #489, pp. 18-19.)  TB Food argues that the Lanham Act liability does not turn on whether Defendants have a valid mark in China, but on whether they made misrepresentations about the shrimp.  (Id.)  The evidence establishes that the trademark litigation in China is not and will not be impacted by the verdict in this case, and therefore this case will not interfere with the sovereignty of China.

**(6)  Evidence Of Damages Resulting From Defamation**

Defendants argue that TB Food's Count III defamation claim attempted to state a claim for slander of title, but TB Food failed to provide any credible evidence demonstrating that any alleged statements made by Defendants had any effect upon TB Food in China. (Doc. #484, pp. 19-20.)  Defendants further argue that the testimony of Teng Zhou and Yijun Zhang is insufficient to establish damages to a reasonable degree of certainty, (Id., p. 21), and that there cannot be damages because TB Food does not compete with AMI or API.  (Id.)

TB Food responds that it produced sufficient evidence for all of its damages. (Doc. #489, p. 19.) As to TB Food's damages for defamation, Plaintiff asserts that Florida law permits lost profits to be recovered if the loss can be proven with reasonable certainty, and that Mr. Lei Zhao's and Mr. Teng Zhao's testimony made clear that Defendants' defamatory statements affected TB Food's profits. (Id., pp. 23-25.)  TB Food further asserts that Defendants' argument that they are immune from defamation damages because API and TB Food are not direct competitors is unavailing because the key inquiry is whether Defendants' false statements damaged TB Food. (Id., p. 25.)

The Court finds no reason to set aside the jury's verdict as to damages related to defamation.  The jury heard testimony from various witnesses about TB Food's business dealings, the value of

the Primo shrimp, and lost profits (Doc. #473, pp. 12-13, 32-33, 143-45; Doc. #409, pp. 36-37), and was well able to make credibility determinations and draw reasonable inferences as to what, if any, damages TB Food suffered. The jury was properly instructed on TB Food's defamation claim, including damages. (Doc. #456, pp. 22-24.)  More specifically, the jury was informed that damages are "any injury to business or reputation in the past or to be experienced in the future" and that there "is no exact standard for fixing the compensation to be awarded . . . Any award should be fair and just in the light of the evidence." (Id., p. 24.) Despite the parties' disagreements, the jury's determination was sufficient under the Rule 50(b) standard.  There is no evidence that points "'so overwhelmingly in favor of' [Defendants] that the jury's verdict cannot stand." Yates, 21 F.4th at 1298.

### (7)  Sufficient Evidence Of Damages Under The DTSA, FUTSA, Or The Lanham Act

Defendants argue that TB Food failed to provide sufficient evidence to support any finding of damages under the DTSA, FUTSA, or the Lanham Act. (Doc. #484, p. 21.)  Defendants take issue with the jury's award of compensatory damages in the amount of $4.95 million on TB Food's federal and state claims for misappropriation of trade secrets, $500,000 for TB Food's defamation claim, and $100,000 for TB Food's Lanham Act claim. (Id., p. 22.)  Defendants assert that TB Food did not ask for, nor did it provide any evidence

to support, an award for any of the compensatory damages.  (Id.)
As such, Defendants argue that the Court should vacate or reverse
the jury's verdict for each such award. (Id., p. 24.)

TB Food responds that the jury's trade secrets damage award
is the combined verdict amount of $9.9 million, and that sufficient
evidence supported this amount of damages (and more).  (Doc. #489,
pp. 19-25.)  With respect to damages for DTSA and FUTSA claims, TB
Food argues that the record supports the amount of damages based
on either unjust enrichment or lost profits. (Id., p. 20.) TB Food
asserts that it has met the "liberal" burden of proof for unjust
enrichment by providing two reasonable bases from which the amount
of damages can be inferred or approximated: (1) financial
statements showing Defendants' profits from broodstock sales; and
(2) expert testimony as to the value of the "head start" Defendants
received. (Id.)

TB Food argues that the record evidence showed that from 2016
through 2019, API derived revenues from breeder sales that came
from Primo genetics, and that API was paying AMI for "broodstock
grow-out services." (Id., pp. 20-21.)  According to TB Food,
Defendants therefore were unjustly enriched by an amount equal to
API's gross profits, plus internal transfers between API and AMI
for grow-out services, which it estimates to be over $10.8 million.
(Id.) TB Food also argues that it is due at least another $1.2
million for profits Defendants received from 2019 through 2021 due

to API's sales of the high-vigor shrimp-descendants from Primo. (Id., p. 21.)   TB Food contends that there was substantial testimony to prove that Defendants profited millions of dollars from the "head start" they obtained by misappropriating Primo's trade secrets, eliminating development time and millions of dollars in investment costs to develop high-disease resistant shrimp. (Id., p. 22.)

TB Food also argues that lost profits were shown by applying the "yardstick test" which demonstrated that the only possible yardstick to estimate its lost profits was API. (Id., pp. 23-24.) TB Food asserts that API's inventory spreadsheet shows that in mid-May 2016, AMI had 652,214 Primo shrimp but by February 2017, only half may have been salable (approx. 326,107). (Id., p. 24.) Based on testimony, TB Food argues that it would have made approximately $20 per shrimp, and therefore lost $6,522,140. (Id.)

As typical in this case, the evidence was contradictory, requiring the jury to make factual determinations to resolve the differing evidence.   Applying the Rule 50(b) standard, the Court finds that the evidence was sufficient to support the jury's award of damages as to all the claims.   The Court therefore denies this portion of the motion.

**B.  Plaintiff TB Food USA, LLC's Renewed Motion For Judgment As A Matter Of Law**

Pursuant to Rule 50(b), TB Food renews its request that the Court render judgment in favor of TB Food as a matter of law as to all the claims which the jury resolved against it, specifically its (1) breach of contract claim against all Defendants; (2) Defend Trade Secrets Act (DTSA) claim against AMI; (3) Florida Uniform Trade Secrets Act (FUTSA) claim against AMI; (4) the unfair competition claims under Florida common law against all Defendants; (5) Florida Unfair & Deceptive Trade Practices Act (FUDTPA) against all Defendants; and (6) Defendants' *in pari delicto* affirmative defense. (Doc. #486.) The jury's verdicts on each issue were against TB Food.  For the reasons set forth below, the motion is denied.

The Court applies the same Rule 50 standard of review as summarized earlier.  As stated in Pinnacle Advert. & Mktg. Group, Inc. v. Pinnacle Advert. & Mktg. Group, LLC, 7 F.4th 989, 1001 (11th Cir. 2021):

> Under Rule 50, a district court can overturn a jury's finding on an issue if the court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue[.]" Fed. R. Civ. P. 50(a)(1). To overturn a jury's finding, a district court must "examine the entire record in the light most favorable to [the party that prevailed at trial] ... and ask whether the evidence nonetheless points 'so overwhelmingly in favor of' [the movant] that the jury's verdict cannot stand." Royal Palm

Props., LLC v. Pink Palm Props., LLC, 950 F.3d
776, 782 (11th Cir. 2020) (quoting Richardson
v. Leeds Police Dep't, 71 F.3d 801, 805 (11th
Cir. 1995)).

All aspects of the renewed motion are denied. The Court
discusses only the specific points set forth in the motion. Any
argument not specifically discussed is denied as without merit.

### (1) AMI Liability For API And Mr. Pearl's Unlawful Conduct

TB Food maintains that the jury correctly found that API and
Mr. Pearl were liable for trade secret misappropriation under the
FUTSA and the DTSA. Given these determinations, TB Food asserts
that it is "axiomatic" that no reasonable jury could have found
that AMI was not also liable for the conduct. (Doc. #486, p. 3.)
TB Food reasons that the jury found AMI breached the NDA and GOA,
and that the testimony at trial made clear AMI and Mr. Pearl — as
president/CEO of AMI - facilitated API's misappropriation of trade
secrets. (Id., pp. 3-4.) Thus, because Mr. Pearl ran and dominated
AMI and API, TB Food asserts that it logically follows AMI knew
that API was going to misappropriate Primo's trade secrets and
acted in concert with API and Mr. Pearl. (Id.) TB Food therefore
concludes that the jury could not have found that API and AMI
breach its duty to maintain secrecy without also finding AMI
breached that duty. (Id., p. 4.) TB Food argues that Florida's
agency law dictates the same conclusion under the doctrine of
respondeat superior. (Id.) "Thus, it logically follows that AMI

is liable for those torts that the jury found Pearl liable for." (<u>Id.</u>, p. 5.)

The jury obviously distinguished between the liability of Mr. Pearl and his new corporation API and the non-liability of the original corporation AMI.  Given the conflicting nature of the testimony and the numerous credibility determinations which were made by the jury, there is no basis for TB Food to prevail on the argument that the jury <u>had</u> to find liability by AMI.  Assuming that this issue was raised in the original Rule 50 motion at trial and was timely renewed after trial (both of which Defendants contest), the Court denies this portion of TB Food's motion.

**(2)  AMI Liability As Alter-Ego As A Matter Of Law**

TB Food argues that AMI is liable as a matter of law as the alter-ego of API and by piercing the corporate veil.  (Doc. #486, pp. 5-6.)  TB Food asserts that API was a mere instrumentality of AMI, and that API was organized or used by AMI to mislead or perpetrate a fraud upon Primo.  (<u>Id.</u>, p.6.)  TB Food points to evidence of a lack of separateness between AMI and API, and AMI's use of API to misappropriate Primo's trade secrets and insulate AMI from liability for contract breaches, which it asserts was the proximate cause of TB Food's losses.  (<u>Id.</u>, pp. 5-11.)

"In order to establish that a subsidiary is the mere instrumentality of its parent, three elements must be proved: control by the parent to such a degree that the subsidiary has

become its mere instrumentality; fraud or wrong by the parent through its subsidiary, e.g., torts, violation of a statute or stripping the subsidiary of its assets; and unjust loss or injury to the claimant, such as insolvency of the subsidiary." Vantage View v. Bali E. Dev. Corp., 421 So. 2d 728, 735 (Fla. 4th DCA 1982). In Turner v. Homestead Police Dep't, 828 F. App'x 541, 544 (11th Cir. 2020) the Eleventh Circuit stated:

> [U]nder Florida law a parent company and its subsidiaries "are separate and distinct legal entities." See Am. Int'l Grp. v. Cornerstone Bus., 872 So. 2d 333, 336 (Fla. Dist. Ct. App. 2004). A parent company is not liable for the wrongful actions of a subsidiary absent a showing that the corporate veil should be pierced. Peacock v. Gen. Motors Acceptance Corp., 432 So. 2d 142, 143 (Fla. Dist. Ct. App. 1983). A party seeking to pierce the corporate veil must prove that "the subsidiary was a 'mere instrumentality' of the parent" and that "the parent engaged in 'improper conduct' through its organization or use of the subsidiary." Johnson Enters. of Jacksonville, Inc., v. FPL Grp., 162 F.3d 1290, 1320 (11th Cir. 1998) (quoting Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1117-21 (Fla. 1984)). Such improper conduct occurs only where the subsidiary is "a mere device or sham to accomplish some ulterior purpose" or "where the purpose is to evade some statute or to accomplish some fraud or [**6] illegal purpose." Id. (quoting Dania, 450 So. 2d at 1117).

As noted previously, few of the material facts were undisputed, and the jury was required to make numerous credibility determinations. Nothing in the record required a reasonable jury to determine that AMI was liable for the conduct of API or Mr.

Pearl.  After viewing the evidence as required by Rule 50(b), the Court finds that the motion must be denied.

### (3)  *In Pari Delicto* Defense

The jury determined that TB Food had established its breach of contract claim against AMI in Count One, but determined that the claim was barred by AMI's *in pari delicto* defense. (Doc. #465, pp. 1-4.)  TB Food argues that the jury's verdict on its breach of contract claim was purely advisory as to the *in pari delicto* defense, and that the Court should reject the defense and find that AMI breached the contracts. (Doc. #486, p. 11.)

TB Food contends that the equitable defense of *in pari delicto* is not entitled to trial by jury and that TB Food never consented to try this defense to the jury.  TB Food asserts that the jury's verdict as to this defense is therefore advisory under Fed. R. Civ. P. 39(c), and the Court can independently reassess whether the requirements of this defense have been met. (Id., p. 12.)  TB Food asserts that the Court should find that the *in pari delicto* defense cannot excuse AMI's breach of the Nondisclosure Agreement (NDA) and the Grow-out Agreement (GOA), and that as a matter of law TB Food prevailed on its breach of contract claims against AMI. (Id., pp. 12-15.)  Assuming it prevails on the argument, TB Food also argues that AMI's breach of the NDA demonstrates that it should prevail on its unfair competition claims against Defendants under Florida law. (Id., pp. 16-19.)

At oral argument it was noted that the jury had also made determinations as to other equitable defenses.  The parties were permitted to submit supplemental memoranda on the issue as it related to all the equitable defenses.  In its supplemental Memorandum (Doc. #552), TB Food asserts that pursuant to Fed. R. Civ. P. 39, the jury's determinations of all equitable defenses are advisory because TB Food did not otherwise consent, and that the Court should make independent determinations in its favor on all equitable defenses.  In their supplemental Memorandum (Doc. # 551), Defendants assert that the Court should accept the jury's determination as to the *in pari delicto* defense and reject the jury's determinations as to the other equitable defenses.  (Id., pp. 8-9.)

All parties rely on Fed. R. Civ. P. 39.  Rule 39(c) provides, "In an action not triable of right by a jury, the court, on motion or on its own: (1) may try any issue with an advisory jury; or (2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right."  FED. R. CIV. P. 39(c).

Rule 39(c) on its face applies only to "an action" which is not "triable of right by a jury."  (Id.)  There is "[o]ne form of action – the civil action."  Fed. R. Civ. P. 2.  All claims set forth in the action, i.e., the Amended Complaint and Counterclaim – are legal claims to which a constitutional right to a jury trial

attached.  See Hargrove v. Am. Cent. Ins. Co., 125 F.2d 225, 228 (10th Cir. 1942)("If the issues tendered by the pleadings are purely legal, the parties are entitled to jury as of right . . . .").  Thus, Rule 39(c)'s option of an advisory jury was not available in this case.

It is correct that there is no constitutional right to a jury trial on questions of fact relating to equitable defenses.  Burch v. P.J. Chase, Inc., 861 F.3d 1338, 1347 (11th Cir. 2017).  The Court has not found, and the parties have not cited, any authority for the proposition that there is a statutory right to a jury trial to claims or defenses under the Defense Trade Secrets Act, 18 U.S.C. § 1836, Florida's Uniform Trade Secret Act, Fla. Stat. § 688.001 et seq., the Lanham Act, 15 U.S.C. §1125(a), or the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. §§ 501.201 et seq.  However, at no point during the pre-trial proceedings or the trial did any party object to submitting the equitable defenses to the jury, or suggest that such defenses were to be resolved by the Court, or were to be the subject of an advisory jury verdict.  The Court finds that the parties have forfeited their ability to object to the jury's verdicts as to the equitable defenses.  See, e.g., Bereda v. Pickering Creek Indus. Park, Inc., 865 F.2d 49, 52 (3d Cir. 1989) (holding that where both parties "requested a jury trial and the subject of an advisory jury was never mentioned at any time during the proceedings, [the plaintiff] and [the defendant]

must be deemed to have consented to a trial by a nonadvisory jury under Rule 39(c)"); Thompson v. Parkes, 963 F.2d 885, 886, 888, 890 (6th Cir. 1992) (finding that although Rule 39(c) allows a court to submit equitable issues to an advisory jury, the court must give "full effect" to a jury verdict if the court did not specify it was an advisory jury prior to trial.  The Court also found there was consent to try equitable claims to a jury under Rule 39(c) where parties' course of conduct and pretrial order indicated trial by jury, and noted that "the language of Rule 39(c), . . . permits the district court to try a case 'with an advisory jury,' not to have the case tried by a jury and essentially exercise a veto power."); Broadnax v. City of New Haven, 415 F.3d 265, 272 (2d Cir. 2005) ("I further 'find sensible the proposition that where a party requests a jury determination of an issue requiring no special competence or authority belonging solely to the court, and the other party or parties fail to object, such silence may be deemed 'consent' under Rule 39(c).'"); O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 399 F. Supp. 2d 1064, 1087 (N.D. Cal. 2005) (citing Rule 39(c) for the proposition that court lacked power to treat jury's verdict on patent issues as advisory after case was submitted to a jury, stating this Court does not have "the power to transform a jury verdict into an advisory finding after the verdict is returned.").

Alternatively, if the jury's verdict is simply advisory on the equitable defenses, the jury's findings of fact are not binding, and the Court is free to adopt the jury's findings in whole or in part or to disregard them altogether.  See <u>Wilson v. City of Aliceville</u>, 779 F.2d 631, 635–36 (11th Cir. 1986); <u>Sheila Shine Products, Inc. v. Sheila's Shine, Inc.,</u> 486 F.2d 114, 122 (5th Cir.1973).  If the parties have not forfeited the issue, the Court alternatively would adopt the findings and conclusions of the jury with regard to all equitable defenses.  Specifically, the Court would find that evidence it found credible establishes that:

1. AMI did not prove by a preponderance of the evidence its two equitable estoppel defenses to the claim in Count I, but did prove by a preponderance of the evidence its *in pari delicto* defense to the claim in Count I;

2. AMI did not prove by a preponderance of the evidence its equitable estoppel defense or its *in pari delicto* defense to the claims in Counts IV, V, VI; and

3. PB Legacy did not prove by a preponderance of the evidence its equitable estoppel defense to its breach of contract claim.

## III. Defendants API And Mr. Pearl's Motion For A New Trial Pursuant To Rule 59

Defendants API and Mr. Pearl request a new trial limited to liability and damages on Count IV — the Defend Trade Secrets Act

- and Count V — the Florida Uniform Trade Secrets Act. (Doc. #483.) Defendants assert that evidence was concealed, Plaintiff's witnesses presented false testimony, and the jury's damages award on these counts was excessive. (Id., p. 1.) For the reasons set forth below, the motion is denied.  Any argument not specifically discussed is denied as without merit.

A Rule 59 motion for a new jury trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Such reasons include that "'the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair ... and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.'" McGinnis v. Am. Home Mortg. Serv., Inc., 817 F.3d 1241, 1254 (11th Cir. 2016) (quoting Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940)) (alteration in original). "Thus, under Rule 59(a), a district court may, in its discretion, grant a new trial if in the court's opinion, the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Id. (cleaned up). See also Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186, 1189 (11th Cir. 2001) (quotation omitted) ("[N]ew trials should not be granted on

evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence."). The remedy of granting a motion for new trial "is sparingly used." Thomas v. Broward Cnty. Sherriff's Office, No. 19-61324-CIV-DIMITROULEAS, 2022 WL 1284095, 2022 U.S. Dist. LEXIS 79485, at *4 (S.D. Fla. Mar. 25, 2022) (quoting Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 375 (1st Cir. 2004)).

Defendants argue that they are entitled to a new trial because their substantial rights were adversely impacted by the withholding of certain information and false testimony in the trial with regards to a prior dispute with a third party (Feedmix Specialist, Inc.) about the ownership of the alleged trade secrets. (Doc. #483, p. 4.) More specifically, Defendants argue that TB Food failed to identify Feedmix as an interested person in violation of this Court's January 13, 2017 Order and did not provide relevant documents relating to Feedmix despite requests for the same, and that Ken Gervais and Neil Gervais provided false testimony with respect to the origin of Primo's founding shrimp broodstock. (Id., pp. 5-6.) According to Defendants, the reason for the concealment of this information was to suppress information showing that Primo did not own the founding shrimp broodstock, and thus TB Food does not own the "germplasm or genetics" that it claims Defendants misappropriated. (Id., pp. 6-7.) Defendants assert that they were unable to properly address the false evidence

at trial due to intentional concealment of the same, which adversely affected their substantive rights and warrant a new trial to prevent manifest miscarriage of justice under Rule 59(a). (Id., pp. 13-14 n.6.)

The Court is satisfied that no material information was withheld from required court filings or disclosures, and that the prior dispute with Feedmix was adequately explored at trial. As was the norm for this trial, many "facts" were disputed and witnesses impeached, creating cries of "false testimony" from both sides and credibility issues for the jury. At the trial, Defendants cross-examined Ken Gervais about Feedmix and Primo's interactions with it and the shrimp broodstock. (Doc. #479, pp. 67-96, 103-07, 215-16.) The jury was able to draw reasonable factual and credibility determinations about the ownership of the shrimp broodstock and any related misappropriation of trade secrets. The Court is not persuaded that Defendants were unable to properly address the false evidence at trial. The Court finds that a new trial is not warranted under Rule 59 based on the Feedmix theory.

Defendants also seek a new trial as to Counts IV and V or remittitur because the jury's damages award was clearly excessive. (Doc. #483, pp. 15-16.) Defendants argue that it is beyond dispute that TB Food did not ask for, nor did it provide evidence in support of an award for $4.95 million in compensatory damages for trademark misappropriation as to actual loss, unjust enrichment,

32

or any reasonable royalty. (Id., p. 16.) Defendants further assert that the jury implicitly recognized the lack of evidentiary support for damages in asking the Court for guidance on how to calculate damages. (Id., p. 17.)

TB Food Plaintiff's responds that the jury's award for its DTSA and FUTSA claims is the combined verdict amount of $9.9 million, and that it was reasonable based on the evidence presented at trial. (Doc. #502, pp. 12-13.) TB Food reiterates its arguments, discussed supra, in support of the damages awarded as set forth in its Response to Defendants' Renewed Motion for Judgment As a Matter Of Law. TB Food argues that the record supports the amount of damages based on either unjust enrichment or a reasonable royalty calculation. (Id., pp. 13-17.) TB Food again asserts that it has met the "liberal" burden of proof for unjust enrichment by providing two reasonable bases from which the amount of damages can be inferred or approximated: (1) financial statements showing Defendants' profits from broodstock sales; and (2) expert testimony as to the value of the "head start" Defendants received. (Id., p. 13.)

TB Food argues that the record evidence showed that from 2016 through 2019, API derived revenues from breeder sales that came from Primo genetics, and that API was paying AMI for "broodstock grow-out services." (Id., p. 14.) According to TB Food, Defendants therefore were unjustly enriched by an amount equal to API's gross

profits, plus internal transfers between API and AMI for grow-out services, which it estimates to be over $10.8 million. (Id.) TB Food also argues that it is due at least another $1.2 million for profits Defendants received from 2019 through 2021 due to API's sales of the high-vigor shrimp-descendants from Primo. (Id., pp. 14-15.) TB Food contends that there was substantial testimony to prove that Defendants profited millions of dollars from the "head start" they obtained by misappropriating Primo's trade secrets, eliminating development time and millions of dollars in investment costs to develop high-disease resistant shrimp. (Id., pp. 15-16.)

TB Food further argues that evidence was adduced at trial that provided a clear indication of what a reasonable royalty would be. (Id., p. 16.) TB Food asserts that API itself licensed the use of the shrimp genetics it derived from Primo and granted a one-year license to another company for $1.5 million. (Id.) Applying this licensing rate retroactively to the date of Defendants' misappropriation, May 1, 2016, and the need for 15 to 18 years to develop disease resistant shrimp like that of Primo's, TB Food argues the jury could have easily entered an award for $22.5 to $27 million. (Id., pp. 16-17.)

The Court concludes the jury's verdict is not against the great weight of the evidence and does not result in a miscarriage of justice. The damages awarded for these counts were not clearly excessive given the evidence presented and the credibility choices

made by the jury, and therefore do not warrant either a new trial or remittitur.  See Walls v. Button Gwinnett Bancorp, Inc., 1 F.3d 1198, 1200 (11th Cir. 1993)("the district judge should not substitute [his] own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury."). This portion of the motion is denied.[1]

## IV.  Defendants AMI, API, And Mr. Pearl's Renewed Motion For Sanctions

Defendants AMI, API, and Mr. Pearl urge the Court to impose sanctions against plaintiff TB Food and third-party defendant PB Legacy, Inc. under Federal Rule of Civil Procedure Rule 37. (Doc. #487, p. 1.) The crux of Defendants' motion is that TB Food failed to disclose in discovery or at trial facts that were central to its liability claims (1) that TB Food, who claimed to be the sole owner of the shrimp and its genetics during and after its contractual agreement with AMI, never owned the shrimp that became the founding stocks for Primo Broodstock, Inc.; and (2) that Primo, Neil Gervais, and Kenneth Gervais did not pay for costs associated with obtaining the broodstock from Ecuador, cleaning them of diseases, importing them to the United States, or having them tested at the University of Arizona. (Id., pp. 1-10.)  Rather, Defendants argue that unbeknownst to them, Feedmix Specialist,

---

[1] The Court has not considered the post-trial affidavits of Robin Pearl or Henry Uy, to which TB Food had objected (Doc. #501).

Inc. (Feedmix), the leading integrated aquaculture company in the
Philippines, paid all such expenses for the shrimp that were used
to form the founding families of Primo Broodstock, Inc. (Id., pp.
4-5.) Defendants argue that Feedmix and its principals would
potentially have knowledge of issues regarding the underlying
claims in this case, which could have significantly changed the
entire trial and possibly lead to early dismissal of this entire
lawsuit. (Id., pp. 7-8.)  Defendants seek sanctions pursuant to
Rule 37(c)(1)(C), and argue that because this information was not
known to defense counsel until the end of trial, the only
appropriate sanction would be striking Plaintiff's pleadings,
setting aside the jury's verdict, dismissing the action with
prejudice, and awarding Defendants all reasonable attorney's fees
and costs incurred in this matter. (Id., p. 9.)

     The Court does not find that Defendants have established a
basis for its requested sanctions.  For the reasons set forth
below, the motion is denied.

     Rule 37 permits a district court to impose sanctions on a
party that "fails to obey an order to provide or permit discovery."
Fed. R. Civ. P. 37(b)(2)(A). Such sanctions include "striking
pleadings in whole or in part" or "rendering a default judgment
against the disobedient party." Id. 37(b)(2)(A)(iii), (vi).
"Entering a default judgment as a discovery sanction 'is
appropriate only as a last resort' and requires a finding of

willfulness or bad faith on the part of the offending party."
Axiom Worldwide, Inc. v. Excite Med. Corp., 591 F. App'x 767, 774
(11th Cir. 2014) (quoting Malautea v. Suzuki Motor Co., Ltd., 987
F.2d 1536, 1542 (11th Cir. 1993)).  The "outright dismissal of a
lawsuit" is a "particularly severe sanction[,]" Chambers v. Nasco,
Inc., 501 U.S. 32 (1991) (citing Roadway Express, Inc. v. Piper,
447 U.S. 752 (1980)), and is not favored. Mene v. Marriott Int'l,
Inc., 238 F. App'x 579, 582 (11th Cir. 2007).

Plaintiff maintains that it complied with discovery requests
by disclosing information that it may use to support its claims or
defenses, and that it did not disclose Feedmix as an "interested
person" since Feedmix had no entitlement to any recovery from this
action and was not an active participant in the litigation. (Doc.
#504, pp. 7-13.) Plaintiff further asserts that it did not fail to
produce any documents since the requests related to documents
generated on or after January 1, 2013, which did not include
documents at issue dating from 2011 to 2012. (Id., p. 11.)

The evidence establishes that in 2011 and 2012, Plaintiff's
predecessor had a business relationship with Feedmix involving
certain broodstock shrimp that were shipped from Ecuador to the
United States. The details and import of the conduct was the
subject of conflicting trial testimony.  However, there is no
evidence that TB Food failed to disclose, in discovery or at trial,
facts that were central to its liability claims regarding ownership

of the broodstock. While Feedmix may have been involved in initially transporting shrimp broodstock from Ecuador, there is no indication that Feedmix pursued any legal action ever asserting ownership over Primo's broodstock. The Court finds that the record does not establish a sufficient basis for the various sanctions sought by Defendants. There is no evidence TB Food failed to obey discovery orders, that it acted in bad faith or to the extent warranting outright dismissal of its lawsuit. Therefore, Defendants' motion is denied.

## V. Plaintiff TB Food's Motion For Permanent Injunction

In addition to the substantial damages awarded by the jury, TB Food seeks permanent injunctive relief. (Doc. #485.) Specifically, TB Food asserts that it has and will continue to suffer irreparable harm and it has no adequate remedy at law to prevent further: (a) misappropriation of its trade secrets; (b) harm from false advertising; and (c) continuing breaches of the restrictive covenants set forth in the NDA and GOA. TB Food asserts that this necessitates the requested injunctive relief. (Id., p. 2.)

At the Court's request (Doc. #503), TB Food submitted a draft-version of the permanent injunction it seeks. (Doc. #516.) In brief, TB Food seeks:

1. A seven-year, worldwide injunction against all defendants and others precluding disclosure, transfer or use of its trade secrets; marketing or sale of any size or age live shrimp

containing Primo genetics; and use of any information or knowledge of its genetics.

2. A three-year, worldwide injunction against all defendants and others from breeding, selling, producing, or transferring live shrimp of any age or size containing any amount of Primo genetics.

3. A requirement that API and Pearl submit proposed press releases for publication in the United States and China, specifically stating that API and Mr. Pearl did not have the right to use Primo genetics, and will refrain from marketing or selling shrimp with Primo genetics.

4. The appointment of an independent auditor TB Food selects to review API's books and records and to test all shrimp at API's facility and to report to the Court, which shall then enter an order controlling the disposition of the shrimp.

(Id., pp. 3-5.)

To obtain a permanent injunction, TB Food must succeed on the merits and make the traditional showings necessary for preliminary injunctive relief. Siegel v Lepore, 234 F.3d 1163, 1213 (11th Cir. 2000); Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008). Specifically, TB Food must establish that: "(1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." Angel Flight of Ga., Inc., 522 F.3d at 1208 (citing eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)). "The decision to grant or deny permanent injunctive relief

is an act of equitable discretion by the district court . . . ."
eBay, 547 U.S. at 391.

TB Food has not succeeded on the merits with regard to AMI,
and is therefore not entitled to a permanent injunction as to AMI.
Plaintiff has succeeded on the merits of a portion of its claims
in the Amended Complaint against API and Mr. Pearl, and therefore
may be entitled to a permanent injunction as to those claims.

Defendants argue, however, that TB Food has completely failed
to demonstrate irreparable injury; the jury awarded monetary
damages which were more than adequate compensation; the balance of
hardships posed by the specifics of the permanent injunction sought
by TB Food favors defendants; and the public interest weighs
against the injunction sought. (Doc. #510, pp. 4-12.) Defendants
also assert that an injunction should be denied because TB Food
came before the court with unclean hands and has no knowledge of
its trade secrets. (Id., pp. 15-18.)[2]

In the exercise of its discretion, the Court declines to enter
the permanent injunction sought by TB Food. The Court will briefly
discuss the eBay factors identified above.

---

[2] Defendants do not object to a permanent injunction
continuing the prohibition in the preliminary injunction
precluding defendants from utilizing the Primo name. (Doc. #510,
p. 15 n. 2.)

### (1)   Irreparable Harm and Adequate Remedies At Law

Irreparable harm "focuses on the traditional limitation that equitable relief is available only if there is no adequate legal remedy available to the plaintiff. A showing of irreparable harm is the *sine qua non* of injunctive relief." Northeastern Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990) (citation and internal quotation omitted). See also Barrett v. Walker Cnty. Sch. Dist., 872 F.3d 1209, 1229 (11th Cir. 2017) (Generally, where a party suffers irreparable harm, remedies at law are inadequate.) Deerfield Med. Ctr. v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. 1981)("An injury is 'irreparable' only if it cannot be undone through monetary remedies."). The irreparable injury claimed, "must be neither remote nor speculative, but actual and imminent." Winmark Corp. v. Brenoby Sports, Inc., 32 F. Supp. 3d 1206, 1223 (S.D. Fla. 2014)(citation omitted). "When an injury is compensable through money damages, the harm is, by definition, not irreparable." Id.

TB Food claims it has been irreparably harmed due to loss of control of the Primo shrimp genetics, loss of trade, goodwill and reputation, and confusion in the Chinese shrimp market. The jury's verdict demonstrates that TB Food has adequate legal remedies which are sufficient, and that TB Food has not suffered irreparable injuries. The jury considered Plaintiff's misappropriation of

trade secrets injuries and awarded TB Food monetary damages in excess of $9 million.  Moreover, Defendants have ceased using the Primo name, which diminishes any effect on TB Food's goodwill and reputation, as well as the confusion in the Chinese shrimp market. Therefore, TB Food has not shown that any continuing harm was irreparable in nature.

### (2)   Balance Of Hardships Between The Plaintiff And Defendant and Service Of Public Interest

In the Court's view, both the balance of the hardships and the public interest weigh in favor of denying the permanent injunction requested in this case, or a permanent injunction premised on less restrictive terms.  As discussed above, the proposed "permanent" injunction seeks to impose restrictions for seven years on all worldwide sales of shrimp of any age or size that contains any Primo genetics (no matter how minute), which includes shrimp that is sold by API and Mr. Pearl and any affiliated entities, like AMI.  (Doc. #516, pp. 3-4.)  TB Food further proposes that the Court appoint an auditor to review API's books and records and test all shrimp to determine which shrimp contain or may be derived from Primo genetics. (Id., p. 4.)

The proposed permanent injunction is seriously overbroad and unduly onerous, and would effectively put API out of business based on non-broodstock shrimp which are generations removed from the original Primo broodstock.  To impose a worldwide ban on its shrimp

sales, along with seven years of genetic testing, is not justified. See Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist., 280 F.3d 1364, 1371 (11th Cir. 2002) (quoting Truly v. Wanzer, 46 U.S. (5 How.) 141, 142, 12 L. Ed. 88 (1847)(The United States Supreme Court warns "there is no power, the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [sic] an injunction.")). TB Food sells its broodstock to a single Chinese company – Haimao. The proposed permanent injunction would affect all worldwide sales of non-broodstock shrimp not just by API, but entities like AMI, which was not found liable for trade secret misappropriation and which grows and sells fresh-killed table shrimp.

Additionally, the imposition of costs to genetically test all the shrimp, as well as the breadth of the audit – requiring API to surrender its "books and records" for review for the next seven years - is overly broad and burdensome.  The proposed permanent injunction does not specify what portions of API's "books and records" would be subject to review or the parameters of the review.

Further, requiring API to test all of its shrimp is excessive. It has been over seven years since AMI gained possession of Primo's broodstock, and the life cycle of shrimp is approximately nine months.  Thus, the shrimp to be tested are at least nine

generations beyond the misappropriation of broodstock shrimp which was found by the jury.

The Court is not persuaded that a permanent injunction would serve the public interest. Plaintiff sells its shrimp broodstock exclusively to Haimao, which only makes sales in China. Plaintiff's proposed permanent injunction, however, seeks to limit sales both domestically and internationally. This case has already demonstrated how attempting to enforce a less restrictive preliminary injunction in China was both fraught with legal issues and impractical. See MacDougall v. Green, 335 U.S. 281, 290 (1948) (Douglas, J., dissenting)("The equity court . . . must always be alert in the exercise of its discretion to make sure that its decree will not be a futile and ineffective thing."). Additionally, the public interest would not be served by stifling companies which sell table shrimp, like AMI. Accordingly, the public interest considerations weigh against entry of a permanent injunction. The Court, in the exercise of its discretion, denies TB Foods motion for a permanent injunction.

### VI.  Plaintiff TB Food's Motion For Enhanced/Exemplary Damages, Pre- And Post-Judgment Interest, And Disgorgement

Plaintiff TB Food requests enhanced/exemplary damages, pre- and post-judgment interest, and disgorgement based on the jury verdicts against defendants API and Mr. Pearl for willful and malicious misappropriation of TB Food's trade secrets under

federal and state law, unfair competition under the Lanham Act, and defamation. (Doc. #488.) For the reasons discussed below, the motion is granted in part and denied in part.

**(1)   Enhanced/Exemplary Damages**

Plaintiff TB Food seeks enhanced/exemplary damages under the Defend Trade Secrets Act (DTSA), the Florida Uniform Trade Secrets Act (FUTSA) and the Lanham Act. (Id., pp. 2-3.)  The DTSA provides, "if the trade secret is willfully and maliciously misappropriated, award exemplary damages in an amount not more than 2 times the amount of the damages awarded under subparagraph (B) . . . ."  18 U.S.C. § 1836(b)(3)(C)).  Similarly, the FUTSA states: "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (1)." Fla. Stat. § 688.004(2).  The Lanham Act permits a Court "in its discretion, reduce or enhance the resulting award up to three times the amount of profits or damages, whichever is greater, as justice shall require." Optimum Techs., Inc. v. Home Depot U.S.A., Inc., 217 F. App'x 899, 904 (11th Cir. 2007) (citing 15 U.S.C. § 1117(a)). "Such an award is discretionary, but it may not be punitive, and must be based on a showing of actual harm." Id. (quoting Babbit Elecs. Inc. v. Dynascan Corp., 38 F.3d 1161, 1183 (11th Cir. 1994) (per curiam)).

As to the federal trade secret claim in Count IV, the jury found that API and Mr. Pearl had willfully and maliciously

misappropriated one or more of Primo's trade secrets, but awarded no exemplary damages. (Doc. #465, Questions 29, 30.) As to the Florida trade secret claim in Count V, the jury found that that TB Food was entitled to compensatory but not exemplary damages. (Id., Question 39.) As to the federal false advertising claim in Count VI, the jury found that TB Food was entitled to compensatory but not exemplary damages. (Id., Question 49.)

The Court finds no reason to disagree with the jury as to these determinations. See Fin. Info. Techs., LLC v. Icontrol Sys. USA, LLC, 21 F.4th 1267, 1275 (11th Cir. 2021) ("It is for the jury to determine whether a misappropriation was willful and malicious."). Given the facts and circumstances of the case as they relate to these claims, the Court in the exercise of its discretion declines to award enhanced or exemplary damages on any of the claims. This portion of the motion is denied.

### (2)   Pre- And Post-Judgment Interest

Plaintiff TB Food also seeks prejudgment interest pursuant to the Lanham Act. (Doc. #488, p. 3.) In Lanham Act cases, prejudgment interest is available in the Court's discretion to successful plaintiffs. Babbit Elecs., Inc., 38 F.3d at 1183 ("The Court may, in its discretion, award prejudgment interest on the total amount of the damages award."). "The purpose of prejudgment interest is to compensate the plaintiff for 'the foregone use of the money between the time of infringement and the date of the judgment,"

Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 656 (1983), and to place the plaintiff "in the situation [it] would have occupied if the wrong had not been committed." Fromson v. W. Litho Plate and Supply Co., 853 F.2d 1568, 1574 (Fed. Cir. 1988) (patent case).

Likewise, Plaintiff moves this Court to award prejudgment interest with respect to its Florida state law claims. (Doc. #488, p. 4.) Under Florida law, which has adopted the "loss theory," "prejudgment interest is merely another element of pecuniary damages." Argonaut Ins. Co. v. May Plumbing Co., 474 So. 2d 212, 214 (Fla. 1985). A plaintiff is entitled to prejudgment interest as a matter of law; the computation of prejudgment interest is a mathematical computation and a purely ministerial duty; and no finding of fact is needed and no discretion is permitted. Seb S.A. v. Sunbeam Corp., 476 F.3d 1317, 1320 (11th Cir. 2007) (citing Argonaut Ins. Co., 474 So.2d at 215). The "plaintiff is to be made whole from the date of the loss once a finder of fact has determined the amount of damages and defendant's liability therefor." Argonaut Ins. Co., 474 So.2d at 215. As to the rate, TB Food suggests that the Court apply the Florida prejudgment interest rate (4.25 % per annum) to both its Florida and federal claims. (Doc. #488, pp. 4-5, 10.) TB Food argues that the beginning date for the prejudgment interest is May 1, 2016, the date on which Defendants took possession of the Primo shrimp remaining on the property. (Doc. #488, p. 9.)

The law is clear that TB Food is entitled to prejudgment interest on its Florida claim, and the Court will therefore grant this portion of the motion. The Court awards prejudgment interest on the Florida claims at the rate of 4.25%. For the defamation claim in Count II, prejudgment interest shall begin on November 3, 2016. For the Florida trade secret claim in Count V, prejudgment interest shall begin on May 1, 2016.

The Court will exercise its discretion and award prejudgment interest on the federal claims. Prejudgment interest on the federal trade secret claim in Count IV shall begin on May 11, 2016, the effective date of the federal statute. Prejudgment interest on the federal claim in Count VI shall begin on May 1, 2016. The prejudgment interest rate will be 0.37% pursuant to 28 U.S.C. § 1961(a).

### (3) Disgorgement

Plaintiff seeks disgorgement under the FUTSA, DTSA, and the Lanham Act. Disgorgement is an equitable remedy that is intended to prevent unjust enrichment and is measured by a defendant's ill-gotten profits or gains rather than a plaintiff's losses. S.E.C. v. Monterosso, 756 F.3d 1326, 1337 (11th Cir. 2014). Disgorgement is available under the FUTSA and DTSA. Advantor Sys. Corp. v. DRS Tech. Servs., Inc., 678 F. App'x 839, 857 (11th Cir. 2017). Additionally, the Lanham Act provides that, upon establishing a false advertising violation, "the plaintiff shall be entitled, .

. . subject to the principles of equity, to recover . . . defendant's profits[.]" 15 U.S.C. § 1117(a). The primary limiting principle is that the damages may not be "speculative." Hard Candy, Ltd. Liab. Co. v. Anastasia Beverly Hills, Inc., 921 F.3d 1343, 1353 (11th Cir. 2019); Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1564 (11th Cir. 1986) ("The partners stress that a trademark infringement award must be based on proof of actual damages and that some evidence of harm arising from the violation must exist. . . ." With respect to disgorgement, the Eleventh Circuit has explained

> The Lanham Act permits recovery of profits because actual damages are often difficult to prove. It "shifts the burden of proving economic injury off the innocent party, and places the hardship of disproving economic gain onto the infringer." George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532, 1539 (2d Cir. 1992); Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc., 833 F.2d 1484, 1487-88 (11th Cir. 1987). The statute does so by expressly providing that "the plaintiff shall be required to prove defendant's sales only," while the "defendant must prove all elements of cost or deduction claimed" against its profits. 15 U.S.C. § 1117(a). So, when a plaintiff seeks an accounting and disgorgement of profits as a remedy for trademark infringement, the focus is entirely on the alleged infringer's gain; the plaintiff is not required to present any evidence of particular financial harm that it suffered so as to justify legal redress.

Hard Candy, 921 F.3d at 1353-54.

TB Food seeks disgorgement of the "ill-gotten gains" by Defendants, which it asserts amounts to over $12.1 million. (Doc. #488, pp. 10-14.) Specifically, TB Food asserts that disgorgement

is appropriate based on API's gross profits from breeder sales from 2016 to 2019 in the amount of $10.8 million, AMI and API's combined profits of approximately $1.2 million from breeder sales for the time period of August 2019 to July 2020, as well as at least $22 million for the "head start" benefit Defendants received by misappropriating Plaintiff's trade secrets. (Id.)

The Court finds disgorgement is not appropriate as to any claim. See SEC v. K.W. Brown & Co., 555 F. Supp. 2d 1275, 1312 (S.D. Fla. 2007) (quoting SEC v. First Jersey Sec. Inc., 101 F.3d 1450, 1474-75 (2d Cir. 1996)("The District Court has broad discretion . . . in determining whether or not to order disgorgement . . . ."). The jury awarded substantial damages, which appear to include the amounts now claimed by TB Food under its disgorgement theory. Contrary to TB Food's calculation, the Court finds that attempting to compute an amount to be disgorged is speculative under the facts of this case. This portion of the motion is denied.

## VII. Defendants AMI, API, and Mr. Pearl's Motion to Amend Judgment Pursuant To Rule 59

Pursuant to Federal Rule of Civil Procedure Rule 59(e), Defendants AMI, API and Mr. Pearl request that the Court Amend the Judgment (Doc. #500) rendered in this case. (Doc. # 530.) More specifically, Defendants seek to amend the judgment as to TB Food's trade secret claims in order to prevent manifest injustice

resulting from TB Food's intentional concealment of material evidence and repeated perjury. (Doc. #530, p. 2.) Defendants further argue that the judgment must be amended to preclude duplicative recovery on TB Food's "twin trade secret claims," which constitutes manifest error of law. (Id., p. 7.) Lastly, Defendants state that the judgment must be amended to correct various manifest errors of fact. (Id., p. 9.) For the reasons set forth, the motion is granted in part and denied in part.

Federal Rule of Civil Procedure 59(e) allows the court to alter or amend a judgment. Fed. R. Civ. P. 59(e). The only grounds for altering or amending judgment are newly-discovered evidence and manifest errors of law or fact. Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007). An order amending or altering judgment entered according to a jury verdict is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Rodriguez v. Miami-Dade Cnty, 339 F. Supp. 3d 1279, 1288 (M.D. Fla. 2018). The party requesting relief under Rule 59(e) must demonstrate strongly convincing reasons to reverse the judgment entered according to a jury verdict. Liese v. Delio, No. 6:14-CV-1788-Orl-40DAB, 2016 WL 7325649, at *2 (M.D. Fla. May 26, 2016).

**(1)  TB Food's Intentional Concealment Of Material Evidence and Perjury**

Defendants argues that TB Food deliberately withheld crucial information relating to the development and ownership of the shrimp broodstock that forms the basis of its claims.  (Doc. #530, p. 2.) Defendants assert that TB Food purposefully withheld the identification of Mr. Henry Uy, the owner and operator of Feedmix Specialist Inc., which paid for the purchase, development, transport, testing, and export of the all pathogen exposed (APE) shrimp from Ecuador. (Id., p. 3.)  Defendants argue that TB Food failed to identify Feedmix as an interested person in violation of this Court's January 13, 2017 Order, they did not provide relevant documents relating to Feedmix despite requests for the same, and Ken Gervais and Neil Gervais provided false testimony with respect to the origin of Primo's founding shrimp broodstock. (Id.) According to Defendants, the reason for the concealment of this information was to suppress information showing that Primo did not own the founding shrimp broodstock, and thus TB Food does not own the "germplasm or genetics" that it claims Defendants misappropriated. (Id., pp. 3-4.)

The Court has addressed these claims in conjunction with other motions. Given that Defendants were able to cross-examine Ken Gervais about Feedmix and Primo's interactions and the shrimp broodstock (Doc. #479, pp. 67-96, 103-07, 215-16), and the jury

was able to draw reasonable factual and credibility determinations about the ownership of the shrimp broodstock and any related misappropriation of trade secrets, the Court does not find that there are any convincing reasons to amend the judgement entered according to the jury verdict.  The Court finds no basis to amend the judgment pursuant to Rule 59(e).

### (2)  Duplicative Recovery on TB Food's Trade Secret Claims

Defendants argue that the judgment in this case contains manifest legal error in that if fails to account for the duplicative recovery occasioned by the jury's identical award of damages on Plaintiff's "twin trade secret claims." (Doc. #500, p. 6; Doc. #530, p. 7.)  Relying upon Conway v. Icahn & Co., 16 F.3d 504, 511 (2d Cir. 1994), Defendants argue that the jury in this case did not express the intent to award TB Food separate damages for two different causes of action.  (Id., pp. 7-8.) Rather, Defendants assert that the jury's identical award of damages for violation of the DTSA and FUTSA constitutes an impermissible double recovery under both federal and Florida law for two similar claims. (Doc. #530, p. 8.) Defendants therefore contend that if the Court allows the jury's verdict as to Plaintiff's trade secret claim to stand, the judgment should be amended to state a single award of $4,950,000 for the single injury occasioned by API and Mr. Pearl's misappropriation of trade secrets. (Id., pp. 8-9.)

TB Food responds that the jury's award for damages under the DTSA and FUTSA are not duplicative because the $9.9 million award was well within the total damages proven at trial.  (Doc. #542, p. 8, citing Coquina Investments v. Rothstein, No. 10-69786-Civ, 2012 WL 4479057, 2012 U.S. Dist. LEXIS 139947 (S.D. Fla. Sept. 28, 2012)).

It is axiomatic that "no duplicating recovery of damages for the same injury may be had." St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1203 (11th Cir. 2009) (citing White v. United States, 507 F.2d 1101, 1103 (5th Cir. 1975). A double recovery occurs when the damages awarded on two or more claims stemming from the same conduct exceeds the actual damages proven by the plaintiff at trial. See Democratic Republic of the Congo v. Air Capital Group, LLC, 614 F. App'x 460, 474 (11th Cir. 2015).  Thus, "a plaintiff may recover damages on two claims stemming from the same conduct if the total does not exceed actual damages." Id.

While the award of damages stems from the same conduct (defendants API and Mr. Pearl's misappropriation of trade secrets), the Court finds that the award for compensatory damages under the DTSA and FUTSA is not duplicative because the damages awarded do not exceed actual damages. The jury was instructed that to the extent they are not duplicative, the jury could award actual damages (i.e., lost revenue, profits, sales, customers, and profit

shares) and unjust enrichment, or reasonable royalties. (Doc. #456, pp. 31-34, 38-39.) The jury found that TB Food proved by a preponderance of the evidence that it was entitled to $4,950,000 in compensatory damages for its DTSA claim and $4,950,000 for its FUTSA claim, for a total of $9.9 million.

A review of the record demonstrates that the $9.9 million award does not exceed TB Food's actual loss and is within the total damages proven at trial. As to damages for unjust enrichment, TB Food provided two bases from which the amount of damages could be inferred: (1) financial statements showing Defendants' profits from broodstock sales; and (2) expert testimony as to the value of the "head start" Defendants received. At trial TB Food presented sufficient evidence showing that from 2016 through 2019, API derived revenues from breeder sales that came from Primo genetics, and that API was paying AMI for "broodstock grow-out services." (Docs. ## 236-239; Doc. #471, pp. 86, 98-99, 102-03, 110.) TB Food estimated that Defendants were unjustly enriched by an amount equal to API's gross profits, plus internal transfers between API and AMI for grow-out services, which totals over $10.8 million and is broken down as follows:

| Year | API Gross Income | API Growout Services Payments | Annual Total |
|---|---|---|---|
| 2016 | $346,977.85 | 421,784.00 | $768,761.85 |
| 2017 | 64,643.42 | 1,087,511.00 | $1,152,154.42 |
| 2018 | $2,287,655.79 | 3,399,297.39 | $5,686,953.18 |
| 1H2019 | $1,599,515.52 | 1,646,224.46 | $3,245,739.98 |
| **Total** | $4,298,792.58 | $6,554,816.85 | **$10,853,609.43** |

(Docs. ##236-239.)  TB Food also presented evidence that it is due at least another $1.2 million for profits Defendants received from 2019 through 2021 due to API's sales of the high-vigor shrimp-descendants from Primo. (Docs. ##415-416; Doc. #471, pp. 112-19, 120-22.)

Finally, as to unjust enrichment from the "head start" Defendants obtained through misappropriating TB Food's trade secrets, there was testimony that supported TB Food's contention that Defendants profited millions of dollars by eliminating development time (i.e., approximately 15 to 18 years) and millions of dollars in investment costs (i.e., annual costs of $1.5 million and $200,000 to $300,000 for genetic testing) to develop high-disease resistant shrimp, as well as maintaining or improving resistance. (Docs. ##41, 219, 265; Doc. #467, pp. 20-23, 194-95, 203; Doc. #468, pp. 12, 153; Doc. #471, pp. 29, 45-49, 53-54; Doc. #473, pp. 111-112, 117, 125-126, 131-134, 139, 143-144, 165; Doc. #474, pp. 14-16, 21, 27-29, 33-39, 41-49, 51, 64-65, 80, 83, 87-89, 92, 116, 127-128, 177, 211-213, 215-216, 218-219.)

Based on the foregoing, the record before the Court demonstrates that TB Food presented sufficient evidence at trial from which the jury determined that $9.9 million was adequate compensatory damages for defendant API and Mr. Pearl's

misappropriation of trade secrets, and which falls well below the actual damages.

### (3)   Manifest Errors of Fact

Defendants argue that the judgment: (a) misstates the Court's determination of claims in favor of Defendants and against one-time plaintiff PB Legacy, Inc.; (b) misstates the Court's determination of claims in favor of third-party defendants Kenneth Gervais and Randall Aungst and against Counter/Third-party Plaintiff AMI; and (c) suffers from an apparent drafting bias in favor of plaintiff TB Food and plaintiff/counter-defendant PB Legacy, Inc. (Doc. #530, pp. 9-12.)   The Court will address Defendants' arguments below.

#### (a)   Determination Of Claims In Favor Of Defendants And Against PB Legacy, Inc.

Defendants contend that the final judgment misstates the Court's determination of claims in favor of Defendants and against PB Legacy, Inc. (PB Legacy). (Doc. #530, p. 9.) Specifically, Defendants assert that the judgment states that "On April 10, 2020, an Opinion and Order (Doc. #306) was entered granting summary judgment as to PB Legacy, Inc., which was dismissed without prejudice as plaintiff in all counts in the Amended Complaint." (Doc. #500, p. 5.) Defendants, however, contend that a factually correct statement of that decision, and one that is consistent with other decisional statements contained in the same section,

would state, "On April 10, 2020, an Opinion and Order (Doc. #306) was entered granting summary judgment <u>in favor of defendants as to Counts III through VIII of the Amended Complaint (Doc. #20) as brought by plaintiff PB Legacy, Inc.</u>" (Doc. #530, p. 9)(proposed changes underlined).

Plaintiff responds that given the Court's denying Defendants' motion for summary judgment for lack of standing, in which the Court dismissed PB Legacy claims without prejudice, Defendants present request invites the Court to misstate its prior ruling and the jury's findings in Defendants' favor to aide their appeal (most likely in challenging the Court's ruling as to standing).

Upon review of the April 10, 2020 Opinion and Order, the Court agrees that this portion of the judgment entitled "non-jury" is more properly stated as follows:

> On April 10, 2020, an Opinion and Order (Doc. #306) was entered granting Defendants' motion for final summary judgment as to PB Legacy, Inc., which was dismissed without prejudice as a plaintiff as to all counts in the Amended Complaint (Doc. #20), but was otherwise denied.

### (b) Determination Of Claims In Favor Of Third-Party Defendants Kenneth Gervais And Randall Aungst And Against Counter/Third-Party Plaintiff AMI

Defendants also argue that the judgment misstates the Court's determination in favor of third-party defendants Kenneth Gervais and Randall Aungst and against counter/third-party plaintiff AMI. (Doc. #530, p. 9.) Defendants assert that the third paragraph of the judgment under the heading "Non-Jury" states, "On May 5, 2020,

an Opinion and Order (Doc. #307) was entered granting summary judgment in favor of third-party defendants Kenneth Gervais and Randall Aungst as to all counts in the Amended Complaint (Doc. #20) against them." (Doc. #500, p. 2.) Defendants, however, suggest that a factually correct statement of that decision would state, "On May 5, 2020, an Opinion and Order (Doc. #307) was entered granting summary judgment in favor of third-party defendants Kenneth Gervais and Randall Aungst as to <u>Counts II and III of the Counterclaim brought by third-party Plaintiff American Mariculture, Inc. (Doc. #80)</u>." (Doc. #530, p. 10)(proposed changes underlined).

The Court has reviewed the May 5, 2020 Opinion and Order, which only addresses Count III of the counterclaim brought by third-party AMI as to Mr. Aungst, and which only granted Mr. Aungst's motion for summary judgment as to Count III. (Doc. #307, p. 19.) On January 23, 2020, the Court issued an Opinion and Order granting in part and denying in part PB Legacy and Kenneth Gervais' motion for partial summary judgment. Specifically, the Order granted summary judgment in favor of Kenneth Gervais as to Counts I through III of the Counterclaim, and PB Legacy as to Count III.

Accordingly, the Court finds that amendment of the final judgment (in the section entitled "Non-Jury") is warranted and shall state as follows:

> "On January 23, 2020, an Opinion and Order (Doc. #285) was entered granting summary judgment in favor of third-party defendant Kenneth Gervais as to Counts I through III of the Counterclaim, and third-party defendant PB Legacy, Inc. as to Count III of the Counterclaim brought by third-party Plaintiff American Mariculture, Inc. (Doc. #80)."

> "On May 5, 2020, an Opinion and Order (Doc. #307) was entered granting summary judgment in favor of third-party defendant Randall Aungst as to Count III of the Counterclaim brought by third-party Plaintiff American Mariculture, Inc. (Doc. #80)."

(Docs. ## 285, 307.)

Defendants maintain that there are additional factual errors in the judgment which states as follows:

(a)   Judgment is entered in favor of American Mariculture, Inc., American Peneaid, [sic] Inc. and Robin Pearl as to Count II and Count IX of the Amended Complaint (Doc. #20) and plaintiff TB Food USA, LLC shall take nothing as to these counts.

(b)   Judgment is entered dismissing without prejudice PB Legacy, Inc. as plaintiff in all counts in the Amended Complaint (Doc. #20).

(c)   Judgment is entered in favor of Kenneth Gervais and Randall Aungst as to all counts against them in the Amended Complaint (Doc. #20), and plaintiff TB Food USA, LLC shall take nothing as to these defendants.

(Doc. #500, p. 5.)

Defendants suggest that a factually correct statement of the Court's prior decisions incorporated into the judgment would read as follows:

(a)   Judgment is entered in favor of American Mariculture, Inc., American Peneaid, [sic] Inc. and Robin Pearl as to Count II and Count IX of the

Amended Complaint (Doc. #20) and plaintiffs TB Food USA, LLC <u>and PB Legacy, Inc.</u> shall take nothing as to these counts.

(b)   Judgment   is   entered   <u>in   favor   of   American Mariculture, Inc., American Peneaid, [sic] Inc. and Robin Pearl as to Count III through Count VIII of the Amended Complaint (Doc. #20) and plaintiff PB Legacy, Inc. shall take nothing as to these counts.</u>

(c)   Judgment is entered in favor of Kenneth Gervais and Randall Aungst <u>as to Count II and Count III of the Counterclaim (Doc. #80) and counter- and third-party plaintiff American Mariculture, Inc. shall take nothing as to these third-party defendants</u>.

(Doc. #530, pp. 10-11) (proposed changes underlined).

Plaintiff   responds,   stating   that   it   does   not   oppose Defendants' proposed language changes as stated above in Section (a). (Doc. #542, p. 11 n.11.) Likewise, Plaintiff does not object to Section (c), but suggests the following correction:

(c)   Judgment is entered in favor of Kenneth Gervais and Randall Aungst **as to all counts against them** in the Counterclaim (Doc. #80) and counter- and third-party plaintiff American Mariculture, Inc. shall take nothing as to these third-party defendants.

(<u>Id.</u>)(proposed changes in bold).

The Court finds that Defendants' proposed changes to Section (a) and (b) and Plaintiff's proposed version of Section (c) are appropriate.   The final judgment will therefore be amended to reflect such changes.

> **(c) Drafting Bias In Favor Of Plaintiff TB Food And Plaintiff/Counter-Defendant PB Legacy, Inc.**

Defendants argue that the judgment, as drafted, suffers from an apparent drafting bias in favor of Plaintiff TB Food, and plaintiff/counter-defendant PB Legacy. (Doc. #530, p. 11.) According to Defendants, the judgment arising from the jury's verdict in favor of defendant AMI on Count I of the Amended Complaint (for the breach of contract claim) is stated in terms decidedly more favorable to plaintiff TB Food than the verdict warrants, and when compared to the judgment arising from the jury's verdict on Count IV of the counterclaim in favor of plaintiff/counter-defendant PB Legacy, which states a breach of the same contract. (Id.) As currently stated, the judgment as to Count I, states

> **Count I:** Judgment is entered in favor of American Mariculture, Inc. as to the breach of contract claim relating to the Nondisclosure Agreement and the Grow-Out Agreement based on the jury findings that while American Mariculture, Inc. had breached the contracts, American Mariculture, Inc. had proven that the breach of contract claim was barred by the *in pari delicto* defense. TB Food USA, LLC shall take nothing as to this claim.

(Doc. #500, pp. 2-3) (emphasis in the original). Defendants propose that the judgment should read as follows as to Count I:

> **Count I:** Judgment is entered in favor of American Mariculture, Inc. as to the breach of contract claim relating to the Nondisclosure Agreement and the Grow-Out Agreement <u>and TB Food USA, LLC shall take nothing as to this claim</u> based on the jury finding that American Mariculture, Inc. <u>had proven its defense of *in pari*</u>

_delicto_ and that TB Food USA, LLC was precluded from bringing this claim.

(Doc. #530, p. 12)(proposed changes underlined).

Plaintiff responds that Defendants are asking the Court to remove the portion of the judgment that accurately reflects the jury's verdict that AMI breached both the NDA and the GOA, which will result in a judgment that is biased in Defendants' favor and aid Defendants in their appeal. (Doc. #542, p. 11.)

The Court is not persuaded by Defendants' argument and declines to amend this portion of the judgment.

## VIII. Defendants AMI, API, and Mr. Pearl's Motion To Dismiss Count IV of the Amended Complaint For Lack of Subject Matter Jurisdiction

Defendants AMI, API, and Mr. Pearl renew their Motion to Dismiss Count IV of the Amended Complaint For Lack of Subject Matter Jurisdiction. (Doc. #543.) Defendants note that in its Original Motion to Dismiss, they argued that TB Food's claim under the DTSA was premised on alleged misappropriation of trade secrets that occurred on or about April 30, 2016, and that the Court lacked subject matter jurisdiction because the DTSA became effective on May 16, 2016. (Doc. #543, p. 1-2.)  Defendants further note that as a facial challenge to subject matter jurisdiction, the Court was restricted to the four corners of the Amended Complaint when it concluded that Plaintiff had provided sufficient factual allegations to plausibly demonstrate misappropriation of trade

secrets on and after May 11, 2016. (Doc. #378, p. 8; Doc. #543, p. 2.) Defendants, however, argue that with the benefit of a jury trial it is now clear that any alleged misappropriation occurred on April 30, 2016, when Defendants took possession of the shrimp broodstock, and any subsequent act was not a separate act of misappropriation under the DTSA. (Doc. #543, pp. 2-3.) Therefore, Defendants conclude the Court lacks subject matter jurisdiction over TB Food's Count IV of the Amended Complaint. (Id., p. 3.)

While the Court understands Defendants' argument, the issue before the Court is not one of jurisdiction. The crux of Defendants' argument, whether any misappropriation of a trade secret occurred on or after May 11, 2016, is a merits question. Subject-matter jurisdiction, by contrast, "refers to a tribunal's power to hear a case." Union Pac. R. Co. v. Locomotive Engineers and Trainmen Gen. Comm. of Adjustment, Central Region, 558 U.S. 67, 81 (2009) (citation and quotations omitted). It presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief. See Bell v. Hood, 327 U.S. 678, 682 (1946)("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [a plaintiff] could actually recover."). Although a "suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose

of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous", Id. at 682-83, that is not the case here.  As the Court previously found, Plaintiff had alleged a plausible claim for misappropriation of trade secrets under the DTSA (over which this Court has jurisdiction), and as such, dismissal for lack of jurisdiction over this claim is not warranted.  See Perry v. MSPB, 137 S. Ct. 1975, 1984 (2017) (quoting Bell, 327 U.S. at 682-83) (To invoke federal-question jurisdiction, allegations in a complaint must simply be more than "insubstantial or frivolous," and "[i]f the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.")

Defendants' motion to dismiss Count IV of the Amended Complaint for lack of subject matter jurisdiction is therefore denied.

Accordingly, it is now

**ORDERED:**

1. Defendants American Mariculture, Inc., American Penaeid, Inc., and Robin Pearl's Motion For a New Trial Pursuant to Rule 59 (Doc. #483) is **DENIED.**

2. Defendants American Penaeid, Inc. and Robin Pearl's Renewed Motion for Judgment As a Matter Of Law (Doc. #484) is **DENIED.**

3. Plaintiff TB Food USA, LLC's Motion For Permanent Injunction (Doc. #485) is **DENIED.**

4. Plaintiff TB Food USA, LLC's Renewed Motion for Judgment As a Matter Of Law (Doc. #486) is **DENIED.**

5. Defendants American Mariculture, Inc., American Penaeid, Inc., and Robin Pearl's Renewed Motion for Sanctions (Doc. #487) is **DENIED.**

6. Plaintiff TB Food USA, LLC's Motion For Enhanced/Exemplary Damages, Pre- and Post-Judgment Interest, and Disgorgement (Doc. #488) is **GRANTED in part as follows, but is otherwise DENIED.**

    a. TB Food is awarded prejudgment interest on its Florida claims at a rate of 4.25%. For its defamation claim (Count II), prejudgment interest shall commence on November 3, 2016, and for its Florida trade secret claim (Count V), prejudgment interest shall commence on May 1, 2016.

    b. TB Food is awarded prejudgment interest on its federal claims at a rate of 0.37% pursuant to 28 U.S.C. § 1961(a). For its federal trade secret claim (Count IV), prejudgment interest shall commence on May 11, 2016, and for its federal unfair competition claim (Count VI), prejudgment interest shall commence on May 1, 2016.

7. Defendants American Mariculture, Inc., American Penaeid, Inc., and Robin Pearl's Motion to Amend Judgment Pursuant To Rule 59 (Doc. #530) is **GRANTED in part as follows, but is otherwise DENIED.**

   a. The "Non-Jury" section of the final judgment is amended to include the following:

   On January 23, 2020, an Opinion and Order (Doc. #285) was entered granting summary judgment in favor of third-party defendant Kenneth Gervais as to Counts I through III of the Counterclaim, and third-party defendant PB Legacy, Inc. as to Count III of the Counterclaim brought by third-party Plaintiff American Mariculture, Inc. (Doc. #80).

   On April 10, 2020, an Opinion and Order (Doc. #306) was entered granting Defendants' motion for final summary judgment as to PB Legacy, Inc., which was dismissed without prejudice as a plaintiff as to all counts in the Amended Complaint (Doc. #20), but was otherwise denied.

   On May 5, 2020, an Opinion and Order (Doc. #307) was entered granting summary judgment in favor of third-party defendant Randall Aungst as to Count III of the Counterclaim brought by third-party Plaintiff American Mariculture, Inc. (Doc. #80).

   b. Pursuant to the Court's prior Opinions and Orders, judgment is amended to include the following:

   (a) Judgment is entered in favor of American Mariculture, Inc., American Penaeid, Inc. and Robin Pearl as to Count II and Count IX of the Amended Complaint (Doc. #20) and plaintiffs TB Food USA, LLC and PB Legacy, Inc. shall take nothing as to these counts.

   (b) Judgment is entered in favor of American Mariculture, Inc., American Penaeid, Inc. and Robin Pearl as to Count III through Count VIII

of the Amended Complaint (Doc. #20) and plaintiff PB Legacy, Inc. shall take nothing as to these counts.

(c) Judgment is entered in favor of Kenneth Gervais and Randall Aungst as to all counts against them in the Counterclaim (Doc. #80) and counter- and third-party plaintiff American Mariculture, Inc. shall take nothing as to these third-party defendants.

8. Defendants American Mariculture, Inc., American Penaeid, Inc., and Robin Pearl's Motion To Dismiss Count IV of the Amended Complaint For Lack of Subject Matter Jurisdiction (Doc. #543) is **DENIED.**

9. The Clerk of the Court shall file an Amended Judgment consistent with this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this ___1st___ day of August, 2022.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record