**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

TB FOOD USA, LLC, a Delaware
limited liability company,

Plaintiff,

v.   CASE NO. 2:17-cv-00009-FtM-JES-UAM

AMERICAN MARICULTURE, INC., a
Florida corporation, AMERICAN PENAEID,
INC., a Florida corporation, and ROBIN
PEARL,

Defendants.
_____/

AMERICAN MARICULTURE, INC., a
Florida corporation, Counter Plaintiff,

v.

PB LEGACY, INC., a Texas
corporation.

Counter and Third-Party Defendant.
_____/

**PLAINTIFF TB FOOD USA, LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR DETERMINATION OF ENTITLEMENT TO ATTORNEYS' FEES AND COSTS AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff TB Food USA, LLC ("TB Food") files this Response in Opposition to Defendants American Mariculture, Inc. ("AMI"), American Penaeid, Inc. ("API"), and Robin Pearl's ("Pearl") Renewed Motion for Determination of Entitlement to Attorneys' Fees and Costs and Incorporated Memorandum of Law, and would respectfully show the Court as follows:

1

**INTRODUCTION**

It is beyond dispute the jury found that Defendants API and Pearl willfully and maliciously misappropriated TB Food's trade secrets under both the Federal Defend Trade Secrets Act ("DTSA") and Florida's Uniform Trade Secret Act ("FUTSA"). Similarly, the jury found that TB Food prevailed on the merits of its false advertising claims against API and Pearl under the Lanham Act. The jury also found that AMI breached both the NDA and the GOA. Equally beyond dispute is that the Court determined and ruled that TB Food: 1) did not willfully disobey its orders; 2) did not act in bad faith, namely as to the feigned Feedmix issue; and 3) did not act fraudulently in these proceedings. As such, Defendants cannot demonstrate that this was an exceptional case in their favor. Moreover, the equities here weigh in favor of the Court exercising its discretion to deny Defendants' request for an award of attorney's fees and costs, especially given the jury's findings that AMI breached both the NDA and GOA, and because API and Pearl willfully and maliciously misappropriated TB Food's trade secrets. Accordingly, and as demonstrated further below, the Court should deny Defendants' instant motion in its entirety.

**ARGUMENT**

A.  **LEGAL STANDARD-ENTITLEMENT TO ATTORNEY'S FEES**

The prevailing party for purposes of attorney fees is a party that the trial court determines prevailed on significant issues in the litigation." *McGriff Ins. Services, Inc. v. Littlestone*, No. 2:21-CV-480-JES-NPM, 2021 WL 6197378, at *3 (M.D. Fla. Dec. 30, 2021) (J. Steele) (internal citations omitted). In short, prevailing party status requires that a party "received a judgment on the merits, or obtained a court-ordered consent decree" that creates a "material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604-605 (2001). Under the "American Rule," litigants generally are

not entitled to an award of attorney's fees for prevailing in litigation unless provided by statute or contract. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010) (citations omitted); *In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005) (prevailing litigants are generally not entitled to an award of attorneys' fees unless provided by statute or contract).

> *i.     Breach of Contract Claims*

Under Florida law, unless a contract or statute otherwise provides, each party pays its own attorney's fees. *See Price v. Tyler*, 890 So. 2d 246, 251 (Fla. 2004). Section 7 of Florida Statute 57.105 provides: "[i]f a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract. This subsection applies to any contract entered into on or after October 1, 1988." FLA. STAT. § 57.105(7).

> *ii.    DTSA and FUTSA Claims*

Both the DTSA and the FUTSA provide that a prevailing defendant may be awarded attorney's fees only when the Court finds that the claim of misappropriation was made in bad faith. 18 U.S.C. § 1836(b)(3)(D); FLA. STAT. 688.05. Neither statute defines "bad faith". *See K3 Enterprises, Inc. v. Sasowski*, No. 20-24441-CIV, 2022 WL 3345327, at *4 (S.D. Fla. June 13, 2022), report and recommendation adopted, No. 20-24441-CIV, 2022 WL 3351990 (S.D. Fla. Aug. 12, 2022); *Kipu Sys. LLC v. Zencharts LLC*, No. 17-24733-CIV, 2021 WL 1891710, at *7 (S.D. Fla. Apr. 6, 2021), report and recommendation adopted, No. 17-CV-24733, 2021 WL 4505527 (S.D. Fla. Sept. 30, 2021).

"Although the DTSA does not provide a definition of bad faith in the context of trade secret misappropriation, 'courts [have] generally adopt[ed] a two-pronged standard for the evaluation of

such claims.'" *Kipu Sys. LLC*, at *7 (internal citations omitted). "That is, '[t]he party seeking an award of attorney's fees must show (1) the objective speciousness of [an] opposing party's claim, and (2) the subjective bad faith of the opposing party in bringing or maintaining the action for an improper purpose.'" *Id.* "'Objective speciousness exists where there is a complete lack of evidence supporting Plaintiff's claims.'" *Id.* at *8. "[S]ubjective bad faith, is satisfied when it may be inferred from the evidence that a party "intended to cause unnecessary delay, filed the action to harass [the opposing party], or harbored an improper motive.'" *Id.* "That question 'involves a factual inquiry into the plaintiff's subjective state of mind: Did he or she believe the action was valid? What was his or her intent or purpose in pursuing it?'" *Id.*

As for the FUTSA, "[t]he majority of courts interpreting the 'bad faith' language of the attorney fees provision of the Uniform Trade Secrets Act in other states require something more than an objectively frivolous claim and generally require proof of subjective misconduct." *Sasowski*, at *4 (citing *Healthcare Res. Mgmt. Grp., LLC v. EcoNatura All Healthy World, LLC*, No. 20-81501-cv, 2022 WL 1537757, at *10 (S.D. Fla. May 12, 2022)). "To support a finding of subjective misconduct, a plaintiff must "know[ ] or is reckless in not knowing that its claim for trade secret misappropriation has no merit", which may be proven "by direct evidence of actual knowledge or may be inferred from the speciousness of plaintiff's trade secret claim and its conduct during litigation.'" *Id.* "Section 688.005 vests a trial court with discretion to award attorney's fees notwithstanding a finding of 'willful and malicious appropriation." *Id.* (citing *Chetu, Inc. v. Salihu*, No. 09-60588-CIV, 2010 WL 2680088, at *2 (S.D. Fla. Jul. 6, 2010). "In determining the propriety of a bad faith award, 'the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case.'" *Mar. Mgmt., Inc. v. United States*, 242 F.3d 1326, 1333 (11th Cir. 2001) (per curiam)

4

### iii. *Lanham Act Claims*

Parties who prevail on claims under the Lanham Act may recover their reasonable attorney's fees "in exceptional cases." 15 U.S.C. § 1117(a). "[A]n exceptional case is one that can be characterized as malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith exists." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (quotation marks and citations omitted). The Eleventh Circuit has interpreted this language to mean that an award of attorney's fees should only be made "on evidence of fraud or bad faith." *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1169 (11th Cir.1982). Even if a court finds that the circumstances of the case are exceptional, the decision whether to award attorneys' fees is discretionary. *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir.1989).

### iv. *Defamation Claims*

The only applicable Florida statutory authority that AMI could possibly seek attorney's fees as the prevailing party to TB Food's defamation claim would be under section 57.105 of the Florida Statutes.[1] That statute permits attorney's fees to be awarded only if "[t]he [trial] court determines if the party or its counsel knew or should have known that the claim or defense asserted was not supported by the facts or an application of existing law." *Wendy's of N.E. Florida, Inc. v. Vandergriff*, 865 So.2d 520, 523 (Fla. 1st DCA 2003). A case is "frivolous," justifying the award of fees, when it can be said to be "completely without merit in law" or "contradicted by overwhelming evidence". *See Visoly v. Sec. Pac. Credit Corp.*, 768 So.2d 482, 491 (Fla. 3d DCA 2000).

---

[1] In its motion, AMI did not specifically ask for an award of attorney's fees under 57.105. As such, the Court should find that AMI waived its right to seek attorney's fees under 57.105.

5

There is no federal statute governing TB Food's defamation claim. Nonetheless, AMI asks the Court for an award of attorney's fees related to the defamation claim anyway. TB Food agrees that the Court has inherent authority to award fees to a prevailing party if the Court finds that the losing party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc.*, 417 U.S. 116, 129 (1974). However, such authority is to be used only in exceptional cases. *See Newton v. Suntrust Bank*, No. 6:05-CV-604ORL18DAB, 2006 WL 4826363, at *2 (M.D. Fla. Aug. 4, 2006) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("Indeed, "[t]here are ample grounds for recognizing ... that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel," [citation omitted], even though the so-called "American Rule" prohibits fee shifting in most cases."); *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986) ("To ensure, however, that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both" 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of specificity in the factual findings of [the] lower courts." [citations omitted])).

"Merely losing the case due to a lack of sufficient evidence does not, however, equal bad faith." *Newton*, 2006 WL 4826363, at *2. "Thus, it is clear that in this circuit, a finding of bad faith requires more than just an objective determination that the claim is without legal merit." *Id.* at *3.

> v.     *Florida Unfair Competition Claims*

Like prevailing parties under the Lanham Act, the prevailing party in an action under the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA") may, according to the court's discretion, recover reasonable attorney's fees. FLA. STAT. § 501.2105; *Humane Soc'y of Broward*

6

*Cnty., Inc. v. Fla. Humane Soc'y*, 951 So.2d 966, 971 (Fla. 4th DCA 2007). However, fees and costs under FDUTPA **cannot be awarded now** because FDUPTA requires the exhaustion of all appeals. *Kipu Sys.* LLC, 2021 WL 1891710, at * 7-8 (citing FLA. STAT. § 501.2105(1): "In any civil litigation resulting from an act or practice involving a violation of this part ... the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.") (emphasis added). Thus, FDUTPA "contemplate[s] that the motion [for fees and costs] be filed after the expiration of the appeal period." *Am. Registry, LLC v. Hanaw*, 2015 WL 5687693 (M.D. Fla. Sept. 25, 2015) (emphasis supplied). Accordingly, **the Court must stay the disposition of Defendants' motion for fees and costs under FDUTPA pending the exhaustion of all appeals**. *Procaps S.A. v. Patheon Inc.*, 157 F. Supp. 3d 1199, 1200 (S.D. Fla. 2016); *Citibank (S. Dakota) N.A. v. Nat'l Arbitration Council, Inc.*, 2006 WL 2691528, at *7 (M.D. Fla. Sept. 19, 2006) (denying without prejudice a FDUTPA -based motion for fees and costs, subject to renewal after either the expiration of the time to appeal or the conclusion of an appeal) (emphasis added).

Additionally, a prevailing defendant under FDUTPA must also satisfy Florida's "net judgment rule" to qualify as a prevailing party. *See Chow v. Chak Yam Chau*, 640 Fed. Appx. 834, 839-840 (11th Cir. 2015). "The policy concern motivating the net judgment rule is to prevent a defendant who is liable to a plaintiff on some theory from recovering attorney's fees simply because the plaintiff did not prevail on the specific statutory claim for which attorney's fees may be awarded—that is, a mechanic's lien or FDUTPA claim." *Id.* at 840. "Thus, for the net judgment rule to apply, the plaintiff must have prevailed on some other theory against the defendant." *Id.* at 842.

Nonetheless, once a trial court has determined that a party is a prevailing party under FDUTPA, it then has discretion to award attorney's fees and costs after considering various equitable factors, including: (i) the scope and history of the litigation; (ii) the ability of the opposing party to satisfy an award of fees; (iii) whether an award of fees against the opposing party would deter others from acting in similar circumstances; (iv) the merits of the respective positions, including the degree of the opposing party's culpability or bad faith; (v) whether the claim brought was not in subjective bad faith but [was] frivolous, unreasonable, groundless; (vi) whether the defense raised a defense mainly to frustrate or stall; and (vii) whether the claim brought was to resolve a significant legal question under FDUTPA law. *AMG Trade & Distribution, LLC v. Nissan N. Am.*, Inc., No. 18-CV-60062, 2021 WL 1146607, at *2 (S.D. Fla. Feb. 26, 2021), report and recommendation adopted, No. 18-CV-60062, 2021 WL 1146352 (S.D. Fla. Mar. 25, 2021). This list is non-exhaustive. *Humane Soc.*, 951 So. 2d at 971-972).

### B. LEGAL STANDARD-ENTITLEMENT TO COSTS

Under Federal Rule of Civil Procedure 54, unless a federal statute, the federal rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party. FED. R. CIV. P. 54. Although the Court has the discretion to award those costs specifically enumerated in 28 U.S.C. § 1920, the Court may not tax as costs items not authorized by the statute. *See*, *e.g.*, *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).

### C. DEFENDANTS API AND PEARL ARE NOT PREVAILING PARTIES

As the jury found against API and Pearl as to TB Food's defamation, DTSA, FUTSA, and Lanham Act claims, it is beyond dispute that API and Pearl did not prevail as to most of TB Food's claims. Indeed, API and Pearl only prevailed on a narrow issue: TB Food's claims of unfair competition under Florida law. Thus, while API and Pearl prevailed on the Florida unfair

8

competition claims there was no material alteration of the legal relationship of the parties, especially given that API and Pearl lost on the Lanham Act claim which is the federal analogue to Florida's unfair competition law. Moreover, Florida's net judgment rule applies and precludes API and Pearl's entitlement to attorney's fees as TB Food clearly prevailed on its defamation, DTSA, FUTSA, and Lanham Act claims against them.

### D. THE COURT ALREADY DETERMINED THAT TB FOOD DID NOT WILLFULLY DISOBEY THE COURT, ACT IN BAD FAITH, OR ACT FRAUDULENTLY

Defendants merely recycle and repackage their unavailing arguments in their failed post-trial motions that TB Food willfully disobeyed the Court and acted in bad faith in deliberately withholding critical information (referenced herein as the "Feedmix issue"). For the reasons TB Food articulated in its prior filings, which TB Food hereby fully incorporates into this opposition including by reference hereto, Defendants' claims of bad faith and fraud lack merit. [Doc. #s 489, 502, 504]. Indeed, the Court outright rejected Defendants' arguments, most notably in its recent decision denying Defendants' post-trial motions. [Doc. # 553]. In its decision, the Court ruled that TB Food: 1) did not willfully disobey its orders; 2) did not act in bad faith, namely as to the feigned Feedmix issue; and 3) did not act fraudulently in these proceedings.[2] [*Id.* at pp. 10-11, 29-32, 35-38]. Notably, the Court highlighted the fact that the jury rejected Defendants' contention and mischaracterization regarding the Feedmix issue as the jury clearly found in favor of TB Food as to TB Food's trade secret misappropriation, Lanham Act, and defamation claims against API and Pearl. [*Id.*]. The jury also found that AMI breached both the NDA and GOA. [Doc. # 465]. As the Court's recent findings and decision are the law of the case, collateral estoppel bars Defendants' regurgitated and unavailing claim that TB Food acted in bad faith or fraudulently in

---

[2] Defendants never made the claim in their motions that TB Food acted vexatiously and as such, this argument is waived. In any event, Defendants contention of vexatious behavior is risible and is easily refuted by both the evidence presented at trial and the jury's verdict against Defendants API and Pearl.

9

this proceeding. *See Goines v. Lee Mem'l Health Sys.*, No. 217CV656FTM29NPM, 2020 WL 1512100 (M.D. Fla. Mar. 30, 2020) (J. Steele) ("Collateral estoppel, also known as estoppel by judgment, serves as a bar to relitigation of an issue which has already been determined by a valid judgment.)

Given the jury's findings, Defendants have no basis to colorably claim that TB Food acted in bad faith by prosecuting its claims against the Defendants. Indeed, the jury's findings alone demonstrate that TB Food's claims against Defendants were meritorious and that the claims were brought and prosecuted to protect and vindicate TB Food's rights. [*See* Doc. # 465].

Accordingly, Defendants cannot demonstrate as a matter of law that TB Food acted in bad faith or that this is an exceptional case in Defendants' favor. On the other hand, the jury's findings amply demonstrate that API and Pearl's willful acts of trade secret misappropriation and defamation make this an exceptional case in TB Food's favor warranting an award of attorney's fees for TB Food under the DTSA, FUTSA, and Lanham Act. [*See* Doc. # 558].

### E. WHILE AMI IS TECHNICALLY, BUT ERRONEOUSLY, A PREVAILING PARTY, AMI IS NOT ENTITLED TO ATTORNEY FEES

First, it is beyond dispute that the jury found that AMI breached both the NDA and GOA.[3] While the jury erroneously excused the breaches under the *in pari delicto* doctrine, which has caused prejudice to TB Food,[4] it is clear that TB Food's breach of contract claim was meritorious, and that AMI has unclean hands.[5]

---

[3] The evidence adduced at trial shows that given AMI's relationship with API and Pearl AMI should be held responsible for API and Pearl's actions, especially given the fact that Pearl as both CEO of AMI and API used TB Food's trade secrets to benefit both companies as Defendants' financials clearly showed at trial.
[4] [*See* Doc. #s 485, at pp. 17-20; 486, at pp. 11-15; 528, at pp. 4-6; and 552]. Primo/PB Legacy could not stand *in pari delicto* regarding the NDA. TB Food has filed a cross-appeal to reverse this clearly erroneous finding by the Court and the jury. [Doc. # 561].
[5] [Doc. #s 465]; *see also* [Doc. # 488, at pp. 5-8].

Second, neither the plain language of the NDA nor the GOA permits an award of attorney fees to the prevailing party pertaining to a dispute arising under either agreement.

Third, the circumstances here are clearly not exceptional in AMI's favor as the jury found that: 1) AMI breached both the NDA and GOA; and 2) AMI's CEO and AMI's subsidiary API willfully and maliciously misappropriated TB Food's trade secrets, unfairly competed against TB Food, and defamed TB Food.  As such, AMI has no legitimate basis for being awarded its attorney's fees as the prevailing party pertaining to TB Food's breach of contract, defamation, DTSA, FUTSA, and Lanham Act claims.  Indeed, all of the claims TB Food brought against AMI are meritorious especially considering the evidence adduced at trial demonstrating that AMI was API's alter-ego and that AMI controlled and dominated API's actions via the directives of Pearl who is the CEO of both AMI and API. [*See* Doc. #s 485, at pp. 24-25; 486, at pp. 3-11; 528, at pp. 2-4].  TB Food has filed a cross-appeal to reverse the clearly erroneous finding by the Court and the jury that AMI is separate from and is not liable for the acts of API and/or its CEO Pearl. [Doc. # 561].

The mere fact that TB Food did not prevail in its claims against AMI, most notably due to an illogical and unsupportable finding by the jury that TB Food stood *in pari delicto* with AMI pertaining to AMI's breach of the NDA, does not and cannot equal bad faith. *See Newton*, 2006 WL 4826363, at *2. As such, AMI is not entitled to an award for its attorney's fees, and the Court should exercise its discretion and deny AMI's motion for such fees.

Fourth, just like in *AMG Trade & Distribution, LLC*, the various equitable factors here clearly balance in favor of the Court using its discretion to not award AMI its attorney's fees as the prevailing party pertaining to TB Food's Florida unfair competition claims, namely the FDUTPA claim. 2021 WL 1146607, at *3-5.

First, this was a highly complex and factually intensive matter that involved TB Food's claims for trade secret misappropriation, breach of restrictive covenants contained in the parties' written agreements, and false advertising against the Defendants, including AMI. As the jury instructions amply demonstrate, the federal and Florida unfair competition claims along with the breach of contract claims against AMI involved a common nucleus of operative facts. [*See* Doc. 456]. The Court's mistaken decision to not include TB Food's requested jury instruction that the U.S. Supreme Court's zone of interest standard set forth in the *Lexmark* case[6] applied to TB Food's Florida unfair competition claims is the only plausible reason Defendants escaped liability on said claims.[7] As such, TB Food has filed a cross-appeal to reverse this error, and as such, the cross-appeal stays the disposition of Defendants' motion for fees and costs under FDUTPA pending the exhaustion of all appeals. *See Citibank (S. Dakota) N.A.*, 2006 WL 2691528, at *7. As such, **TB Food respectfully requests the Court stay the disposition of Defendants' motion for fees and costs under FDUTPA pending the exhaustion of all appeals**. Given the scope and history of the litigation in this matter, TB Food respectfully submits that this *Humane Society* factor weighs in favor of the Court not awarding AMI fees under FDUTPA.

Second, an important consequence of awarding AMI its fees here is that it will have chilling effect on small companies like Primo/PB Legacy that are victims of unfair and anti-competitive acts committed by a competitor (such as trade secret theft and making false statements to steal

---

[6] *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).

[7] [*See* Doc. # 486, at pp. 6-10; 528, at pp. 6-7]. The only possible basis for the jury to have not found for TB Food on its Florida unfair competition claims was that it erroneously found that Defendants are not a competitor of TB Food. [*Compare* Doc. # 465, Q.51, Q.52, Q.53 with Doc. # 456, at pp. 46-47). The law in the Eleventh Circuit as it pertains to unfair competition under the Lanham Act and Florida law is the law of unfair competition is not limited to protecting only direct competitors, and instead, the law of unfair competition protects anyone who falls within the zone of interest of being unfairly competed against. The requested instruction was necessary due to Defendants' attempts to confuse the jury as to what the law of unfair competition actually requires, and as such, TB Food respectfully requested an instruction to the jury articulating the zone interest test as enunciated by the U.S. Supreme Court that a plaintiff must prove an injury to a commercial interest in sales or business reputation and not that it is a direct competitor.

market share and customers from filing suit to protect both its and the public's interests. As such, it is critical to avoid deterring plaintiffs from filing meritorious FDUTPA claims, which TB Food did here especially because TB Food's FDUTPA claim went to the jury.  As such, TB Food respectfully submits that this *Humane Society* factor weighs in favor of the Court not awarding AMI fees under FDUTPA.

Third, the fourth and fifth *Humane Society* factors focus on the merits of the parties' litigation position, including whether TB Food's claim was frivolous, unreasonable, or groundless. Here, given the evidence adduced at trial and the jury's findings it is clear that the FDUTPA claims were not frivolous or brought in bad faith. Indeed, TB Food's success on its Lanham Act claim along with the fact the jury found that AMI was guilty of breaching both the NDA and the GOA militates against the Florida unfair competition claims being frivolous or brought in bad faith. Moreover, these *Humane Society* factors should also be measured against the filings in the case. Nothing in the District Court's record supports a finding that Plaintiff's claims were in bad faith or frivolous as to weigh in favor of an award of attorneys' fees against Plaintiff. *See*, *e.g.*, *Hard Rock Cafe Int'l USA, Inc. v. RockStar Hotels, Inc.*, No. 17-CV-62013, 2019 WL 3412155, at *10 (S.D. Fla. May 20, 2019), report and recommendation adopted, No. 17-CV-62013, 2019 WL 3408888 (S.D. Fla. June 4, 2019) (concluding that there was no evidence that plaintiff's claims were unreasonable, frivolous, or groundless or that defendant raised a defense to delay the case).  As such, TB Food respectfully submits that these *Humane Society* factors weigh in favor of the Court not awarding AMI fees under FDUTPA.

Fourth, the final *Humane Society* factor concerns whether the claim resolved a significant legal question under the FDUTPA.  It is beyond dispute that AMI's activities (either directly or using API as its instrumentality) were clearly within the reach of the FDUTPA and involved trade

or commerce. Moreover, as stated above, whether and as to how the U.S. Supreme Court's zone of interest standard in *Lexmark* applied to the FDUTPA is a significant legal question posed in this matter. As such, TB Food respectfully submits that this *Humane Society* factor weighs in favor of the Court not awarding AMI fees under FDUTPA.

In sum, the Court should find that the *Humane Society* factors do not weigh in favor of a fee award to AMI.

### F. DEFENDANTS ARE NOT ENTITLED TO FEES OR COSTS GIVEN THEIR UNCLEAN HANDS

The unclean hands doctrine operates to deny recovery to one who is tainted with inequitableness. *See Ocean View Towers, Inc. v. First Fid. Sav. & Loan Ass'n*, 521 So. 2d 325, 326 (Fla. 4th DCA 1988) (It is certainly beyond question that 'one who comes into equity must come with clean hands else all relief will be denied him regardless of the merits of his claim.'). Here, it is beyond dispute that API and Pearl have unclean hands given the jury's finding of willful and malicious trade secret misappropriation. As such their unclean hands serves to bar them from an award of attorney's fees and costs.

Despite the clear evidence, the Court and the jury erroneously failed to hold AMI responsible for its CEO (including under the doctrine of *respondeat superior*) and subsidiary's unlawful conduct with whom AMI acted in concert with. [Doc. # 486, at pp. 3-11]. Here, it is undisputed that Pearl is an employee of AMI and, as Mr. Beck testified, was at all times acting on behalf of AMI, not himself. See TRIAL TRANSCRIPT NOV. 15, 2021, pp. 129-130. In addition, as the testimony of Jerry Beck conclusively established, AMI was fully aware of and approved Pearl's actions in misappropriating trade secrets. See TRIAL EXHIBIT 373; TRIAL TRANSCRIPT NOV. 15, 2021, at pp. 122-123, 124-125, 144-150. As Trial Exhibit 397 unequivocally demonstrated, in December 2015, AMI and Pearl schemed up three ways to obtain and use Primo's trade secrets

and confidential information: Option 1- buy all of Primo's assets; Option 2-cancel the Primo contract and Primo pays for animals and API starts a new company with Neil Gervais; or Option 3-cancel the Primo contract and Primo defaults and API starts new company with Neil Gervais. As such, it logically follows that AMI is liable for those torts that the jury found Pearl liable for. As such AMI's unclean hands serves to bar it from an award of attorney's fees and costs.

Lastly, given AMI's position that it was entirely separate from API, it is clear that AMI can readily separate out its costs and fees from those that were incurred in defending API and Pearl. If this is not the case, then it is clear that Court and jury errored by not holding AMI responsible for the unlawful actions of its CEO and subsidiary. Indeed, AMI's defense that it merely grew out the shrimp and did not breed and sell them is distinct and separate from API and Pearl's defense that it was allowed to use and profit off of TB Food's trade secret. Equally distinct and separate is AMI's defense that it had no dealings in China while API and Pearl's defense is that they did nothing wrong in China.

As the party seeking an award of fees and costs has the burden to allocate them to the issues for which fees are awardable or to show that the issues were so intertwined that allocation is not feasible, it is clear AMI has not and cannot meet it burden. *See Durden, Durden v. Citicorp Tr. Bank, FSB*, 763 F. Supp. 2d 1299, 1307 (M.D. Fla. 2011). As such, should the Court be inclined to grant AMI any fees and costs, and it should not, it should order AMI to separate those fees and costs incurred from the fees and costs incurred in defending API and Pearl.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Renewed Motion for Determination of Entitlement to Attorneys' Fees and Costs.

 Dated: September 1, 2022

Respectfully submitted,

By: /s/ *Brian M. Gargano*
    Brian M. Gargano
    Jiangang Ou
    ARCHER & GREINER
    3040 Post Oak Blvd Suite 1800-150
    Houston, TX 77056
    Phone: (713)970-1066
    bgargano@archerlaw.com

    and
    Chené M. Thompson / FB# 541540
    PAVESE LAW FIRM
    Post Office Box 1507
    Fort Myers, Florida 33902-1507
    Telephone No.: (239) 334-2195
    Primary: CheneThompson@paveselaw.com
    Secondary: KellyGermanis@paveselaw.com

*Counsel for Plaintiff TB Food USA, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that in accordance with the Federal and Local rules the foregoing document is being filed on this 1st day of September, 2022 via the Court's CM/ECF filing system, which will serve a copy electronically on all counsel of record.

                                            */s/ Brian M. Gargano*
                                            Brian M. Gargano

225554164v1